FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (*pro hac vice* pending)
jrk@classactionlaw.com
William R. Restis, Esq. (*pro hac vice* pending)
wrr@classactionlaw.com
David J. Harris, Jr., Esq. (CA Bar #286204)
djh@classactionlaw.com
Trenton R. Kashima, Esq. (*pro hac vice* pending)
trk@classactionlaw.com
550 West C Street, Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

| | |
|---|---|
| MEREDITH D. DAWSON<br><br>         Plaintiff,<br><br>  v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., GREAT LAKES HIGHER EDUCATION CORPORATION, JILL LEITL, DAVID LENTZ, MICHAEL WALKER, THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF EDUCATION, and ARNE DUNCAN in his official capacity as United States Secretary of Education<br><br>         Defendants. | Case No. 15-cv-00475-bbc<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS GREAT LAKES DEFENDANTS' COUNTERCLAIM** |

## I.     INTRODUCTION

On July 31, 2015, Plaintiff Meredith Dawson brought this class action to remedy Great Lakes Defendants' illegal and systematic overcharges on billions of dollars worth of federal student loans. *See generally* Class Action Complaint (Dkt. 1) ("Complaint").[1] The Complaint asserts Classwide violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1964, as well as common law claims of negligence and negligent misrepresentation against Great Lakes Defendants in connection with their wrongful interest capitalizations on the Class's FFELP and Direct loans. *Id.* at ¶¶82-96. Remarkably, Great Lakes Defendants concede that the Complaint states proper claims for relief ***on all three Counts***.[2]

In their Answer and Counterclaim (Dkt. 24), Great Lakes Defendants admit that they have wrongfully capitalized interest against Plaintiff in connection with the B-9 Forbearances placed on her FFELP and Direct student loans. *E.g.,* Counterclaim, ¶122.[3] They dispute—however erroneously—the sums and causes of those wrongful capitalizations, while denying that anyone at Great Lakes had knowledge of such wrongdoing before this action commenced. *See Id.* at ¶¶111-126. Great Lakes Defendants seek extraordinary relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, asking this Court to proclaim the innocent states of their respective minds and to award them their costs in defending this action.

---

[1] Capitalized terms not defined herein have the same meaning as in the Complaint. Emphasis is added and internal quotations are omitted unless otherwise stated herein.

[2] Great Lakes Defendants have not moved to dismiss ***any*** of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b). Instead, they raise a lonely "affirmative defense" arguing that Plaintiff is undamaged because she has outstanding balances remaining on her loans. *See* Great Lakes Defendants' Answer and Counterclaim (Dkt. 24), ¶¶103-105, Second Affirmative Defense. This is no defense at all. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 651 (7th Cir. 2015) ("Of course [plaintiff] continues to owe money under her loan obligation. That does not mean she has not been damaged . . . .").

[3] Plaintiff refers to ¶¶1-105 of Great Lakes Defendants' Answer and Counterclaim as the "Answer," and to ¶¶106-139 and their prayer for relief as the "Counterclaim."

Great Lakes Defendants are entitled to no such relief. Courts in the Seventh Circuit have consistently held that counterclaims like the one asserted here should be dismissed through the exercise of sound jurisdictional discretion. Moreover, Great Lakes Defendants' Counterclaim improperly seeks a declaration of pure fact—not law—that cannot be made under § 2201. Yet *even if* this Court could properly exercise jurisdiction over the Counterclaim, and *even if* Great Lakes Defendants could concoct an apt legal declaration, Great Lakes Defendants could *never* obtain declaratory relief in this case because they are outside the zone of interests protected by the Declaratory Judgment Act. For each of these independent reasons, the Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), and if not, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  ARGUMENT

### A. The Court should not exercise jurisdiction over the Counterclaim because the Counterclaim merely rehashes issues already before the Court.

The Declaratory Judgment Act ("DJA") provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Supreme Court has described this as "an enabling Act, which confers a discretion upon courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Accordingly, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even [if] they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) (quoting *R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009)); *see also Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E.D. Wis. 2005)

3

("The Supreme Court has interpreted [the DJA] as granting district courts discretion as to whether to exercise jurisdiction under the statute.").

In exercising its jurisdictional discretion, "the court should consider matters of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. That is why "courts within the Seventh Circuit routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint." *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065-66 (N.D. Ill. 2012) (collecting cases).

Here, Great Lakes Defendants' Counterclaim seeks a declaration from the Court that their wrongful interest capitalizations were not done "knowingly or intentionally, and specifically not as part of a scheme to defraud." *See* Counterclaim, at pp. 30-31 (Great Lakes Defendants' prayer for relief). This is simply the opposite of Plaintiff's well-pleaded allegation that Great Lakes' improper capitalizations were in fact executed knowingly, intentionally, and as part of a scheme to defraud. *See, e.g.,* Complaint at ¶5 ("Great Lakes and its executives have ***knowingly*** continued to send borrowers and their lenders illegally inflated account statements and ***knowingly*** charge borrowers illegal interest on a daily basis: even to this day.") (emphasis in original); *id.* at ¶85 (alleging a scheme to defraud Plaintiff and the Class).

Similarly, the Counterclaim's allegation that Great Lakes' System "does not wrongfully capitalize noncappable interest accrued during the administrative forbearance period[s]" merely contradicts Plaintiff's allegation that Great Lakes' System routinely capitalizes ***all*** outstanding interest at the end of B-9 Forbearance periods. *Compare* Counterclaim at ¶113 ("Great Lakes has never pursued a policy of capitalizing interest accrued during an administrative forbearance

4

period.") *and* Counterclaim at ¶119 (alleging that Great Lakes' System "does not wrongfully capitalize noncappable interest accrued during the administrative forbearance period[s]"), *with* Complaint at ¶32, n.7 (defining "B-9 Interest" to include *all* interest outstanding at the end of a B-9 Forbearance period) *and* Complaint at ¶¶36-37 (alleging that Great Lakes' System was programmed to capitalize B-9 Interest, which includes Great Lakes Defendants' so-called "noncappable interest"). Such tit-for-tat counterclaims are not the proper subject of an action for declaratory relief. *See Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("[Where] the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose because the controversy has ripened and the uncertainty and anticipation of litigation are alleviated."); *U.S. v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (finding counterclaim for declaratory judgment repetitious and unnecessary because it merely restated an issue already before the court).[4]

In addition, Great Lakes Defendants' "Counterclaim" is nothing more than a repackaged version of their Answer to the Complaint's factual allegations. *See, e.g.,* Answer at ¶5 (denying allegations of fraudulent intent contained in ¶5 of the Complaint); Answer at ¶¶36-37 (denying allegations regarding automated capitalization contained in ¶¶36-37 of the Complaint). But "[t]he label counterclaim has no magic." *Tenneco, Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985). *"What is really an answer or defense to a suit does not become an independent piece of litigation because of its label." Id.* At bottom, Great Lakes Defendants'

---

[4] *See also Lincoln Nat'l Corp. v. Steadfast Ins. Co.*, No. 1:06-cv-00058, 2006 WL 1660591, at *4 (N.D. Ind. Jun. 9 , 2006) (striking counterclaim for declaratory relief because it "raise[d] the same issues as [defendant's] affirmative defenses" and "pursue[d] issues already being litigated in [plaintiff's] Complaint and [defendant's] Answer and affirmative defenses").

Counterclaim for declaratory relief only rehashes issues that are already before the Court via Plaintiff's Complaint and Great Lakes Defendants' Answer.[5]

For all of these reasons, the Court should decline jurisdiction over Great Lakes' Defendants' Counterclaim and dismiss it pursuant to Fed. R. Civ. P. 12(b)(1).[6]

### B. The Counterclaim fails to state a claim upon which relief may be granted because Great Lakes Defendants seek a declaration of pure fact.

The DJA allows courts to declare only "the *rights* and other *legal* relations of any interested party." 28 U.S.C. § 2201(a). By its terms, then, the statute empowers courts to answer disputed questions of *law*, not fact. *See Lawson v. FMR LLC*, 134 S.Ct. 1158, 1165 (2014) ("In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning.") *Moskal v. United States,* 498 U.S. 103, 108 (1990) (same). That is why proper declaratory relief is typically afforded to parties seeking a judicial word on issues

---

[5] Moreover, this Court has specifically held in the DJA context that "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Constar Int'l Inc. v. Ball Plastic Container Corp.*, No. 05-C-699-C, 2006 WL 6020946, at *3 (citing *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999)). In this case, once Plaintiff's claims are adjudicated on the merits (at summary judgment or trial) or otherwise resolved (through settlement), ***there will be no "actual controversy"*** regarding whether Great Lakes Defendants acted knowingly or intentionally. 28 U.S.C. § 2201(a). Thus, if the Court exercises jurisdiction over the Counterclaim at this pleading stage, the Court will be doing so despite the fact that it will lose jurisdiction over the Counterclaim at a later stage of this case. That would not comport with the "practicality and wise judicial administration" that should inform this Court's exercise of jurisdictional discretion. *Wilton*, 515 U.S. at 288.

[6] Plaintiff does not believe that the Court even has Article III jurisdiction over the Counterclaim, in part because Great Lakes Defendants have no "injury in fact" that is "fairly traceable" to Plaintiff's conduct and redressible by the Court's declaration. *Sprint Comm. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[Through the Declaratory Judgment Act,] Congress enlarged the range of remedies available in federal courts ***but did not extend their jurisdiction***."). Nevertheless, the Court need not reach the question of whether it has Article III jurisdiction over the Counterclaim (i.e., whether Great Lakes Defendants have Article III standing) because the Court can—and should—exercise its discretion to decline jurisdiction over the Counterclaim.

like the validity of a patent, the enforceability of a contract, or the constitutionality of certain government actions. *See, e.g., Pambello v. Hamilton Cosco, Inc.*, 377 F.2d 445, 447 (7th Cir. 1967) (affirming district court's declaration that patent claims were "vague and ambiguous"); *El Paso Building and Construction Trade Council v. El Paso Chapter Associated Contractors of America*, 376 F.2d 797 (5th Cir. 1967) (declaring the validity of a contractual provision under the Declaratory Judgment Act); *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11 (1st Cir. 2014) (answering questions of federal preemption in an action for declaratory relief).

Here, however, Great Lakes Defendants request from this Court an extraordinary, ***conclusive*** declaration of the supposed fact that their wrongful interest charges were never "made knowingly or intentionally [(presumably, by anyone at Great Lakes)], and specifically not as part of a scheme to defraud." Counterclaim at pp. 30-31 (Great Lakes Defendants' prayer for relief); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding that judicial decrees under the DJA must be "of a conclusive character"). That proposed declaration would ***not*** be a declaration of Great Lakes Defendants' "rights or legal relations" under the DJA. On the contrary, it would be a declaration of pure fact that would require practical omniscience on the Court's part. This is not the function of federal courts. *See Morissette v. United States*, 342 U.S. 246, 274 (1950) ("However clear the proof may be, or however inconstrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can ***never*** be ruled as a question of law, but must always be submitted to the jury."); *In re Entropin, Inc. Sec. Litig.*, 487 F. Supp. 2d 1141, 1148 (C.D. Cal. 2007) (holding that an intent to defraud is a fact-specific issue "that should ordinarily be left to the trier of fact").[7]

---

[7] If Great Lakes Defendants want the Court to speak about their respective states of mind, then they can ask the Court at summary judgment to ***opine*** about what a reasonable jury could or could not find in light of the available evidence. *E.g., CSX Transp., Inc. v. Chicago and North Western Transp. Co. Inc.*, 62 F.3d 185, 188 (7th Cir. 1985) (recognizing the "reasonable jury"

The Court should therefore dismiss Great Lakes Defendants' misplaced claim for declaratory relief pursuant to Fed. R. Civ. P. 12(b)(6).

### C. The Counterclaim fails to state a claim because Great Lakes Defendants are outside the "zone of interests" protected by the DJA.

Even if Great Lakes Defendants could transform their proposed factual declaration into an appropriate legal declaration, they would *still* be unable to state a claim under the DJA. That is because this Court would need to "determine, using traditional tools of statutory interpretation, whether [the] legislatively conferred cause of action encompasses [Great Lakes Defendants'] claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014). A unanimous Supreme Court recently explained that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* at 1388. This rule *"applies to all statutorily created causes of action,"* as "Congress is presumed to legislate against the background of the zone-of-interests limitation." *Id.* The zone-of-interests test asks—as a matter of statutory interpretation—whether a claimant is among the "particular class of persons [that have] a right to sue under [the] substantive statute." *Id.* at 1387 (citing *Association of Battery Recyclers, Inc.*, 716 F.3d 667, 675-76 (D.C. Cir. 2013)).

With respect to the DJA, Congress never intended the statute to protect corporate tortfeasors or accused fraudsters from adverse factual inferences about their respective states of mind. *Perez v. Ledesma*, 401 U.S. 82, 111-115 (1971) (Brennan, J., concurring in part and

---

standard for evaluating the evidence available at summary judgment). Great Lakes Defendants might also ask a jury to find in their favor with respect to Plaintiff's RICO claim. They cannot, however, ask this Court to ***conclusively*** declare their actual states of mind under the DJA. *See* 28 U.S.C. § 2201(a) (allowing courts to declare only "the ***rights*** and other ***legal*** relations" of parties); *MedImmune,* 549 U.S. at 127 (holding that judicial declarations under the DJA must be "of a conclusive character").

dissenting in part) (surveying the legislative history of the Declaratory Judgment Act to find that it was expressly intended as "a milder alternative to the injunction remedy" for testing the constitutionality or validity of statutes); *Steffel v. Thompson*, 415 U.S. 452, 466 (1974) ("Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes . . . ."). Indeed, "[t]he purpose of the Declaratory Judgment Act is to afford added remedy to one who is uncertain of his rights and who desires early adjudication thereof without having to wait until his adversary should decide to sue and to act at his peril in the interim." *Okpalobi v. Foster*, 190 F.3d 337, 347 (5th Cir. 1999) (citing *McGraw–Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339 (9th Cir.1966)).

In this case, Great Lakes Defendants face no uncertainty as to their rights or whether they will be sued by Plaintiff for fraudulent conduct. They have already been sued. Furthermore, with or without declaratory relief, the question of whether Great Lakes Defendants acted fraudulently will be litigated through the summary judgment or trial of Plaintiff's RICO claim. There is no indication whatsoever in the text or legislative history of the DJA that economic tortfeasors (at best) like Great Lakes are among the "particular class of persons [that have] a right to sue under this substantive statute." *Lexmark*, 134 S.Ct. at 1387. Great Lakes Defendants do not even arguably fall within the zone of interests protected by the DJA.

Therefore, the Court must dismiss Great Lakes Defendants' Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court dismiss Great Lakes Defendants' Counterclaim in its entirety and with prejudice.

Respectfully submitted,

FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (*pro hac vice* pending)
jrk@classactionlaw.com
William R. Restis, Esq. (*pro hac vice* pending)
wrr@classactionlaw.com
David J. Harris, Jr., Esq. (CA Bar #286204)
djh@classactionlaw.com
Trenton R. Kashima, Esq. (*pro hac vice* pending)
trk@classactionlaw.com

Dated: October 30, 2015          By:    s/ David J. Harris, Jr.
                                        David J. Harris, Jr., Esq.

                                        550 West C Street, Suite 1760
                                        San Diego, California 92101-3579
                                        Telephone: (619) 238-1333
                                        Facsimile: (619) 238-5425

                                        Counsel for Plaintiff