IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MEREDITH D. DAWSON,                                      OPINION AND ORDER

                Plaintiff,                          15-cv-475-bbc

      v.

GREAT LAKES EDUCATIONAL LOAN
SERVICES, INC., GREAT LAKES HIGHER
EDUCATION CORPORATION, JILL LEITL,
DAVID LENTZ, MICHAEL WALKER, THE
UNITED STATES OF AMERICA, THE UNITED
STATES DEPARTMENT OF EDUCATION and
ARNE DUNCAN, in his official capacity as United
States Secretary of Education,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Meredith D. Dawson took out student loans owned by defendant United

States Department of Education and serviced by defendant Great Lakes Higher Educational

Loan Services, Inc.  She contends that defendant Great Lakes Higher Educational Loan

Services violated both the terms of her loan agreements and federal regulations governing

the administration of her loans when it capitalized interest that accrued during a particular

type of administrative forbearance period.  She asserts that once this interest was capitalized

it began to accrue further interest at the rate of approximately $51.00 per week that she

1

should not have to pay.  She seeks to hold the Great Lakes defendants—Great Lakes Higher Educational Loan Services, its parent corporation and certain Great Lakes executives—liable for negligence, negligent misrepresentation and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1964.  She also contends that the Great Lakes defendants' improper capitalization of interest supports a breach of contract claim against the government defendants—the United States of America, the United States Department of Education and United States Secretary of Education Arne Duncan.

Presently before the court are three motions: the first is the government defendants' motion to dismiss plaintiff's breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the ground that the federal government is entitled to sovereign immunity with respect to this claim.  I agree with the government defendants on this point.  Neither the Little Tucker Act nor the Higher Education Act expressly waives the federal government's sovereign immunity with respect to claims for injunctive or declaratory relief, which are the only types of relief plaintiff is seeking.  I am not persuaded by plaintiff's characterization of her claim as one for monetary relief for which the government has waived its sovereign immunity.

Second, defendant Duncan has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that plaintiff's complaint does not contain any allegations that Duncan was personally involved in the misconduct at issue.  I am denying this motion as

2

moot because the federal government's sovereign immunity extends to both agencies and federal officers sued in their official capacity, such as defendant Duncan.

Third, plaintiff has moved to dismiss the Great Lakes defendants' counterclaim on the ground that they have not stated a proper claim under the Declaratory Judgment Act. Plaintiff asserts that the counterclaim merely seeks a declaration that these defendants did not engage in the misconduct alleged by plaintiff in her complaint. In other words, the Great Lakes defendants' counterclaim is merely the flip side of the allegations in the complaint. I agree with plaintiff that the Great Lakes defendants' counterclaim is improper. However, rather than dismissing it in its entirety, I will construe the allegations set forth therein as part of Great Lakes' answer, pursuant to Fed. R. Civ. P. 8(c)(2).

Plaintiff alleges the follows facts in her complaint, which I accept as true for the sole purpose of deciding the parties' pending motions.

ALLEGATIONS OF FACT

In 1965, Congress passed the Higher Education Act. In addition to insuring certain student loans issued by private sector lenders, the Higher Education Act contains four programs designed to assist borrowers with their repayment obligations. These programs include an income-driven repayment program, a loan deferment program, a loan forbearance program and a program that allows borrowers to consolidate their various student loans so

that they make a single monthly payment rather than separate payments for each of their loans. Borrowers can apply for these programs at any time during the life of their loan by completing an application and submitting it to their loan servicer.

When a borrower applies for any one of these four programs, Department of Education regulations require lenders and loan servicers to place the borrower's loans in an "administrative forbearance" status while the borrower's eligibility is assessed and their paperwork is processed. (This type of administrative forbearance is commonly referred to as a "B-9 Forbearance"). Pursuant to Department of Education regulations, interest that accrues during a B-9 Forbearance period is not capitalized. 34 C.F.R. § 682.11(f); 34 C.F.R. § 685.2015(b). Borrowers' Master Promissory Notes—the contracts setting forth the loan terms—similarly provide that interest accrued during a B-9 Forbearance is not to be capitalized.

Sometime between 2006 and 2012, plaintiff borrowed loans that were serviced by defendant Great Lakes Educational Loan Services. On October 3, 2013, plaintiff applied to be placed in an income-driven repayment plan. In connection with her application, plaintiff's loans were placed in B-9 Forbearance status while her paperwork was processed. Approximately two months after the application was submitted, Great Lakes approved it and placed plaintiff in an income-driven repayment plan. On November 28, 2013, the B-9 Forbearance period was terminated and plaintiff's loan status was updated to indicate that

4

she was again in a "repayment" period.

During plaintiff's B-9 Forbearance period, her loans accrued approximately $819.65 in interest. This interest was then capitalized, allegedly in violation of both the governing federal regulations and the terms of plaintiff's Master Promissory Note, both of which prohibit the capitalization of B-9 Forbearance interest. The improper capitalization of this interest has improperly increased the amount of interest accruing on plaintiff's loans by approximately 14 cents per day ($51 per year).

## OPINION

A. <u>Motion to Dismiss Breach of Contract Claim against Government Defendants</u>

Of the four counts set forth in plaintiff's complaint, the only count directed against the government defendants is count IV, which alleges a breach of contract based on their "failure to rectify" the Great Lakes defendants' practice of improperly capitalizing B-9 Forbearance interest. The government defendants have moved to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the ground that they are entitled to sovereign immunity.

One threshold issue in any suit against the federal government is whether the action is barred by the doctrine of sovereign immunity. Under this doctrine, the United States cannot be sued unless it gives express consent to the jurisdiction of the court in which it is

sued.  <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 422 (1996).  It is the plaintiff's burden to demonstrate that the federal government has waived its sovereign immunity and consented to suit.  <u>Macklin v. United States</u>, 300 F.3d 814, 819 (7th Cir. 2002); <u>Welch v. United States</u>, 409 F.3d 646, 650-51 (4th Cir. 2005); <u>Stockman v. Federal Election Commission</u>, 138 F.3d 144, 151 (5th Cir. 1998).  All purported waivers of sovereign immunity must be "strictly construed, in terms of [their] scope, in favor of the sovereign." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  If the plaintiff fails to meet its burden of establishing that the federal government waived its sovereign immunity, the case must be dismissed.  <u>Macklin</u>, 300 F.3d at 819.

In order to carry her burden of establishing that the federal government has consented to be sued, plaintiff must identify a federal statute in which "Congress has expressly and unequivocally waived [its] sovereign immunity."  <u>Barmes v. United States</u>, 199 F.3d 386, 388 (7th Cir. 1999).  Plaintiff relies on two statutes that she says waive the federal government's sovereign immunity: the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the Higher Education Act, 28 U.S.C. § 1082(a)(2).

1. <u>The Little Tucker Act</u>

Plaintiff's argument that the government defendants have waived their sovereign immunity is founded primarily upon the Little Tucker Act, which provides in relevant part:

6

> [T]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [any] . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1346(a)(2). Although the Little Tucker Act constitutes an express and unequivocal waiver of the federal government's sovereign immunity with respect to certain types of claims, United States v. Bormes, 133 S. Ct. 12, 16 (2012), I agree with the government defendants that the Little Tucker Act's waiver does not extend to the type of contract claims at issue here.

The Little Tucker Act has long been construed as waiving the federal government's sovereign immunity only with respect to claims that seek monetary relief in the form of "actual, presently due money damages." Bowen v. Massachusetts, 487 U.S. 879, 914-15 (1988); United States v. Testan, 424 U.S. 392, 398-99 (1976); United States v. King, 395 U.S. 1, 3 (1969); Todd v. United States, 386 F.3d 1091, 1093 (Fed. Cir. 2004). Claims for any type of equitable or nonmonetary relief, such as injunctive or declaratory relief, do not fall within the Little Tucker Act's ambit. Sharp v. Weinberger, 798 F.2d 1521, 1523-24 (D.C. Cir. 1986) ("We know of no case in which a court has asserted jurisdiction either to grant a declaration that the United States was in breach of its contractual obligations or to issue an injunction compelling the United States to fulfill its contractual obligations.").

7

Thus the question before the court boils down to whether plaintiff's breach of contract claim seeks monetary relief in the form of "actual, presently due money damages" from the government.

As an initial matter, I am disregarding both plaintiff's conclusory allegation that she has been "damaged by the [g]overnment [d]efendants' ongoing breach . . . in quantifiable dollar amounts to be proven at trial" and her request for an order "declaring" that the government defendants are "liable for compensatory damages." These allegations are irrelevant to the determination whether her claim seeks "monetary relief" for purposes of the Little Tucker Act.   In addressing whether the relief plaintiff is seeking is of the type authorized by the Little Tucker Act, the court is required to "look beyond the form of the pleadings to the substance of the claim." Gonzalez & Gonzalez Bonds and Insurance Agency, Inc. v. Department of Homeland Security, 490 F.3d 940, 944 (Fed. Cir. 2007). Plaintiff cannot invoke this court's jurisdiction under the Little Tucker Act through conclusory allegations and artful pleading. Brazos Electric Power Co-op., Inc. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998); National Center for Manufacturing Sciences v. United States, 114 F.3d 196, 199 (Fed. Cir. 1997) ("Notwithstanding the imprecision of the complaint, we therefore look to the true nature of the action in determining the existence or not of jurisdiction.").

Looking beyond the labels employed by plaintiff, it is clear that success on plaintiff's

8

breach of contract claim would not entitle her to "actual, presently due money damages" of the type required to bring her claim within the scope of the Little Tucker Act. At this point, the alleged breach at issue—the improper capitalization of plaintiff's B-9 Forbearance interest—is nothing more than an accounting error that has resulted in an allegedly incorrect loan balance. If plaintiff is successful in her claim against the government, all she will be entitled to is injunctive relief in the form of an order directing defendants to recalculate how much she owes. This court does not have jurisdiction under the Little Tucker Act to hear claims seeking this type of relief. <u>Gonzalez & Gonzalez Bonds</u>, 490 F.3d at 945 (finding that court did not have jurisdiction under Little Tucker Act to enter order enjoining government from collecting debt or declaring that disputed amount allegedly owed to government was improper). Had plaintiff made payments on her loan in excess of the amount she contends she actually owes, jurisdiction under the Little Tucker Act might be proper. <u>Brazos Elec. Power Co-op., Inc.</u>, 144 F.3d at 787 (plaintiff's claim for reimbursement of money wrongfully paid to federal government or for a set-off constituted monetary damages for purpose of invoking court's jurisdiction under Tucker Act and Little Tucker Act). However, plaintiff's complaint does not contain any allegations that would support her entitlement to such a reimbursement or to any other form of monetary relief, for that matter.

Plaintiff offers a variety of arguments in an effort to satisfy or otherwise circumvent

the Little Tucker Act's "monetary relief" requirement.  First, she argues that the Court of Appeals for the Seventh Circuit's holding in Bible v. United Student Aid Funds, 799 F.3d 633 (7th Cir. 2015), establishes that she is entitled to "monetary damages" simply because she has been *charged* improper interest, regardless whether she has actually *paid* the interest yet.  However, Bible is inapposite and plaintiff's reliance on it is misplaced.  Bible did not involve claims under the Little Tucker Act, sovereign immunity was not at issue and the federal government was not even a party to the suit.  Instead, Bible claimed that a *private* loan guarantor had improperly tacked on collection costs to her student loan.  Id. at 638. The court of appeals' holding that Bible plausibly alleged *damages* for purposes of pleading a "viable breach of contract claim under [Indiana] state law," id. at 651, has no bearing on whether the specific type of *relief* plaintiff is seeking brings her claim within the scope of the Little Tucker Act's waiver.  Plaintiff's contention that her claims fall within the purview of the Little Tucker Act "so long as [she] has demanded damages . . . and is entitled to damages as a matter of contract law" is simply incorrect.  For the purpose of deciding whether this court has jurisdiction under the Little Tucker Act, the question is whether plaintiff is entitled to "actual, presently due monetary relief" to remedy the harm she has alleged.

In addition to Bible, plaintiff relies on Pfeiffer v. Duncan, 659 F. Supp. 2d 160 (D.D.C. 2009), which involved a claim that was substantively similar to the one at issue in this case.  The plaintiff in Pfeiffer alleged that the government defendants capitalized interest

that accrued during certain periods of "negative-amortization" in violation of plaintiff's promissory note. Id. at 162. The government defendants' response had two prongs. First, they moved for summary judgment on the merits, arguing that the capitalization of the interest did not violate the applicable loan agreements. Id. at 169-71. Second, they argued that the district court did not have jurisdiction under the Little Tucker Act to grant plaintiff nonmonetary relief under the Little Tucker Act. Id. at 172. Plaintiff contends that by testing the merits of plaintiff's claim and challenging the court's jurisdiction with respect to only the nonmonetary remedies plaintiff sought in Pfeiffer, the government defendants implicitly conceded that claims such as hers must have a monetary component that falls within the scope of the Little Tucker Act.

Plaintiff's reliance on Pfeiffer is unconvincing. Simply put, the court in Pfeiffer did not address to what extent, if any, Pfeiffer was entitled to monetary relief under the Little Tucker Act. The government defendants' strategy in Pfeiffer to simultaneously move for summary judgment on the merits of Pfeiffer's claim and also argue that the court lacked jurisdiction to grant plaintiff nonmonetary relief did not amount to either an implicit or explicit concession that the claim had a monetary component for the purpose of fixing jurisdiction under the Little Tucker Act. Moreover, even if the government defendants had conceded that monetary relief was at issue in Pfeiffer, that concession would not be binding in this case because this is a jurisdictional issue that they cannot waive or be estopped from

11

raising.  Estate of Kunze v. CIR, 233 F.3d 948, 952 (7th Cir. 2000) (holding that IRS was not estopped from raising lack of subject matter jurisdiction despite having explicitly instructed taxpayer to file suit in district court); Richardson v. United States, 943 F.2d 1107, 1113 (9th Cir. 1991) ("Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of estoppel and waiver do not apply.").

Finally, plaintiff argues that construing the Little Tucker Act so as to require actual, presently payable monetary damages would lead to an absurd result.  In particular, she argues, under such an interpretation, the government would be free to demand that borrowers pay an amount entirely unrelated to the amount actually owed because the borrower has no means to challenge the government's arbitrary demands.  Although this hypothetical highlights potential equitable or pragmatic concerns associated with the scope of the federal government's waiver, the Little Tucker Act's well-recognized "monetary relief" requirement is not entirely arbitrary.  In fact, strong policy reasons support the government's decision to draw the line where it did.

First, requiring that plaintiffs first pay the challenged amount and then seek reimbursement ensures that the federal government is not inundated with frivolous lawsuits challenging the amount of their debts and how they are calculated.  Second, it is notable that on multiple occasions, Congress has rejected attempts to give the Court of Federal Claims, and by extension district courts, United States v. Sherwood, 312 U.S. 584, 590 (1941),

broad authority to enter declaratory judgments with respect to federal contracts on the ground that doing so risked engendering undue judicial interference with efficient contract administration. United States v. John C. Grimberg Co., Inc., 702 F.2d 1362, 1370 (Fed. Cir. 1983) (discussing legislative history surrounding bills related to the Court of Federal Claims' jurisdiction and authority to grant equitable or declaratory relief). Finally, as the Supreme Court has noted, it is one thing to authorize a court to adjudicate claims involving the simple transfer of money, but "it is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703-04 (1949).

2. The Higher Education Act

In addition to attempting to sue under the Little Tucker Act, plaintiff contends that defendant Duncan is subject to suit under 28 U.S.C. § 1082(a)(2). In relevant part, § 1082(a)(2) provides that the Secretary of Education may

> (2) sue and be sued . . . in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy . . . ; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control and nothing herein shall be construed to except litigation arising out of activities under this part from the application of section 509, 517, 547 and 2679 of Title 28[.]

13

Although § 1082(a)(2) waives the federal government's sovereign immunity with respect to certain claims against the Secretary, the claims at issue here do not fall within the scope of that statute for two reasons.  First, § 1082(a)(2) waives sovereign immunity only with respect to claims "arising under" the Higher Education Act, whereas plaintiff's claim is based on an alleged breach of contract.  Second, the waiver set forth in § 1082(a)(2) was crafted so as to exclude expressly claims seeking an "attachment, injunction, garnishment or similar process" against the Secretary.  Id.  This exclusionary language bars plaintiff's claims related to her student loan.  As discussed above, plaintiff is in essence seeking injunctive relief that would either prohibit the federal government from collecting certain sums from her or require the government to recalculate her loan.  I find persuasive the district court's decision in Green v. United States, 163 F. Supp. 2d 593 (W.D.N.C. 2000), that "[a]n action that seeks to prohibit the government from collecting a debt seeks injunctive relief—a type of action over which this court lacks subject-matter jurisdiction[.]"  Id. at 597.

### B. Secretary Duncan's Motion to Dismiss for Lack of Personal Involvement

Finally, the federal government's sovereign immunity, along with any waiver thereof, extends to both federal agencies and federal government officers sued in their official capacity for conduct within the scope of their authority.  FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its

14

agencies from suit."); <u>DeGenova v. Sheriff of DuPage County</u>, 209 F.3d 973, 975 n.1 (7th Cir. 2000) ("An official capacity suit is the same as a suit against the entity of which the officer is an agent.").  Accordingly, I am also dismissing plaintiff's breach of contract claim to the extent that it is directed against the United States Department of Education and the United States Secretary of Education, Arne Duncan.  This renders moot defendant Duncan's motion to dismiss pursuant to Rule 12(b)(6).

C. <u>Motion to Dismiss Great Lakes' Counterclaim for Declaratory Judgment</u>

The Great Lakes defendants have filed a counterclaim against plaintiff in which they seek a declaration pursuant to 28 U.S.C. § 2201 that any miscalculations on the part of Great Lakes related to the capitalization of interest during plaintiff's B-9 Forbearance period were not made knowingly, intentionally or as part of a scheme to defraud.  The Great Lakes defendants argue that this counterclaim is "necessary, or at least prudent" because plaintiff "fundamentally misunderstands the underlying events in this case[.]"  Plaintiff argues that regardless whether she "fundamentally misunderstands" the events underlying her claims, the Great Lakes defendants' "counterclaim" is improper and subject to dismissal because it is merely a mirror-image of her claim against the Great Lakes defendants.

I agree with plaintiff that the Great Lakes defendants' counterclaim is improper.  A ruling in favor of Great Lakes and against plaintiff on plaintiff's claims would necessarily

15

moot the Great Lakes defendants' counterclaim. The Great Lakes defendants do not explain why the allegations set forth in their counterclaim cannot just as readily be raised in their answer as denials to plaintiff's allegations or on the merits at summary judgment or trial. To frame their narrative as a "counterclaim," which would require further pleading from plaintiffs, simply adds to the confusion in this complex action.

Although I have the authority to dismiss the Great Lakes defendants' counterclaim in its entirety, Tenneco Inc. v. Saxony Bar & Tube, Inc., 776 F.2d 1375, 1379 (7th Cir. 1985), I will construe it as part of the denials and defenses set forth in their answer.  Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."). Plaintiff will not be prejudiced if these allegations remain in the record as a defense because she will not be required to reply to them in additional pleadings or otherwise answer.  5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1268 (3d ed.) (as long as statement contains substance of what is being denied and is clear in what defense is to be raised at trial, "responsive plea[dings] should be upheld even though [they] may be argumentative in form."). However, the Great Lakes defendants' claim for a declaratory judgment as a form of relief will be dismissed.

16

ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendants the United States of America, the United States Department of Education and Secretary of Education Arne Duncan, dkt. #21, is GRANTED. Plaintiff Meredith D. Dawson's breach of contract claim against these defendants is DISMISSED WITH PREJUDICE.

2. Defendant Duncan's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for lack of personal involvement, dkt. #21, is DENIED as moot.

3. Plaintiff's motion to dismiss the counterclaim filed by defendants Great Lakes Educational Loan Services, Inc., Great Lakes Higher Education Corporation, Jill Leitl, David Lentz and Michael Walker, dkt. #31, is GRANTED.  However, pursuant to Fed. R. Civ. P. 8(c)(2), the allegations set forth in the Great Lakes defendants' counterclaim shall be construed as denials and a defense to plaintiff's complaint.

Entered this 3d day of February, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17