UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON,

        Plaintiff,

    v.                                    Civil Action No. 15-cv-475-jdp

GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC., et al.,

        Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS REGARDING *EX PARTE* COMMUNICATIONS BETWEEN PLAINTIFF'S COUNSEL AND GREAT LAKES EMPLOYEES**

---

Apparently impatient and frustrated by the Court's denial of the plaintiff's two previous motions to compel discovery, one of the plaintiff's attorneys, David J. Harris, Jr., decided to abandon legitimate civil discovery and instead start surreptitiously contacting Great Lakes employees *ex parte* in order to attempt to gather evidence without the defendants' or the Court's knowledge.  Because such attorney communications with represented persons violate the Wisconsin Supreme Court's Rules of Professional Conduct for Attorneys, which inform the Court's supervision of Mr. Harris's conduct in this case,[1] the defendants respectfully request that the Court sanction Mr. Harris and issue an order that (1) expressly prohibits the plaintiff's attorneys from further *ex parte* communications with Great Lakes employees, (2) directs them to disclose to the defendants all of their previous contacts or attempted contacts with Great Lakes employees, (3) requires them to provide a certification regarding their measures to ensure that materials covered by the attorney-client privilege, work

---

[1] While federal district courts' inherent power to supervise and sanction attorneys practicing before them is a matter of federal law, *see In re Snyder*, 472 U.S. 634, 645 n.6 (1985), this Court looks to Wisconsin state ethical rules to inform its application of federal law.  *See Silicon Graphics, Inc. v. Ati Techs., Inc.*, 741 F. Supp. 2d 970, 980 (W.D. Wis. 2010); *see also Tucker v. George*, 569 F. Supp. 2d 834, 837 (W.D. Wis. 2008) ("In deciding attorney disqualification motions, this court looks for guidance to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, the precepts of the Code of Professional Responsibility (now largely replaced by the Model Rules of Professional Conduct) and the prior case law."); *Weber v. McDorman*, No. 00-C-0381-C, 2000 U.S. Dist. LEXIS 23232, at *2 (W.D. Wis. Aug. 11, 2000) ("The Wisconsin Supreme Court Rules of Professional Conduct for Attorneys govern in this court."); *accord.* E.D. Wis. Gen. L.R. 83(d) ("Attorneys practicing before this Court are subject to the Wisconsin Rules of Professional Conduct for Attorneys. . .").

product doctrine, or third-party borrowers' privacy rights were not compromised as a result of Mr. Harris's impermissible activity, and (4) awards the defendants their costs in preparing this motion.

## BACKGROUND

The plaintiff filed this lawsuit on July 31, 2015, as a purported class action, alleging that the defendants were liable for RICO violations and common law negligence in connection with their capitalization of certain interest on student loan borrowers' accounts.  (Dkt. 1 at 35-39.)  Extensive discovery ensued.  The following summer, the plaintiff filed her first motion for class certification.  (Dkt. 54.)  Shortly thereafter, the plaintiff filed her first motion to compel certain discovery.  (Dkt. 73.)

The Court denied the plaintiff's first class certification motion on September 28, 2016, and simultaneously denied the plaintiff's first motion to compel as moot.  (Dkt. 85 at 12.)  In the same order, the Court granted the plaintiff leave to file a second class certification motion, which she did on October 20, 2016.  (Dkt. 89.)  The plaintiff's second class certification motion remains pending.

Days after filing her second class certification motion, the plaintiff filed a second motion to compel discovery.  (Dkt. 95.)  The Court ultimately denied the plaintiff's second motion to compel, without prejudice, and assured the parties that the Court would reconsider case deadlines after deciding class certification.  (Dkt. 124 at 13:20-

14:2.)  Despite these assurances from the Court regarding the schedule, last month the plaintiff filed a motion to vacate the case deadlines (Dkt. 128), which remains pending.

On March 2, 2017, counsel for the defendants learned from Great Lakes' legal department that Mr. Harris had made contact with a current Great Lakes employee regarding the subject matter of this litigation on the previous day.  (Declaration of Aaron R. Wegrzyn ("Wegrzyn Decl.") ¶ 2.)  On March 1, 2017, Mr. Harris sent the following Facebook message to Tonya O'Daniel, one of Great Lakes' servicing operations business coordinators:

> Hi Tonya, My name is David Harris (I'm contacting you from my wife's Facebook account because I don't have one). I'm contacting you because I am an attorney currently representing a (putative) class of student loan borrowers in a lawsuit against Great Lakes, and I would like to ask you a couple of quick questions about your time at Great Lakes. The lawsuit alleges that Great Lakes and some of its executive officers wrongfully capitalized interest against borrowers for several years.  If you would be willing to talk briefly, I would be happy to speak with you to give you further details about my case and about some of the questions I would like to ask you about your employment there.  You can reach me at [office phone number] or [cell phone number].  Thank you. –David
>
> (Declaration of Tonya O'Daniel ("O'Daniel Decl.") ¶ 3 & Ex. A.)

Ms. O'Daniel is an employee of Great Lakes.  (O'Daniel Decl. ¶ 1.)  Mr. Harris neither sought nor received defense counsel's consent to contact Ms. O'Daniel regarding this litigation.  (Wegrzyn Decl. ¶ 3.)

## ARGUMENT

"It is well established that courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal and that the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1009 (N.D. Ill. 2003) (quotation omitted).

Mr. Harris's *ex parte* solicitation of an interview with a current Great Lakes employee is clearly prohibited by the relevant rules of professional conduct. Wisconsin Supreme Court Rule 20:4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.[2]

With respect to current constituents of a represented corporate organization, the Wisconsin State Bar's Professional Ethics Committee has interpreted Rule 20:4.2 to prohibit a lawyer from contacting the following two categories of individuals: (1) those

---

[2] Wisconsin modeled Rule 20:4.2 after ABA Model Rule of Professional Conduct 4.2—the text and commentary to the two authorities are identical. *See* Ethics Opinion E-07-01 § I. California's Rules of Professional Conduct contain a substantially-equivalent provision. Cal. Rules of Prof'l Conduct, Rule 2-100. Variations of this "anti-contact rule" are embraced by other authorities on professional responsibility. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers § 99.

"who supervise, direct, or regularly consult with the organization's lawyer concerning the matter, or who have authority to obligate the organization with respect to the matter," and (2) those "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." *Ethics Opinion E-07-01: Contact with Current and Former Constituents of a Represented Organization*, 80 Wis. Lawyer 6 (July 1, 2007) ("Ethics Opinion E-07-01") § II(1)-(2); *see also* Rule 20:4.2 cmt. 7.[3]

As a servicing operations business coordinator for Great Lakes, Ms. O'Daniel's job responsibilities include communicating with the Department of Education, including with respect to certain "Change Requests" issued by the Department to its loan servicers.  (O'Daniel Decl. ¶ 1.)  While it is unclear what specifically prompted Mr. Harris to contact Ms. O'Daniel about this litigation, Ms. O'Daniel's name appears on certain documents produced to the plaintiff in connection with Change Request 2785 issued by the Department.  For example, in a November 19, 2015 email produced in this case (Wegrzyn Decl. Ex. A), Ms. O'Daniel discussed communications with the Department about Change Request 2785 with other Great Lakes employees, and on December 21, 2015, Ms. O'Daniel submitted a request (Wegrzyn Decl. Ex. B) to Great Lakes' computer programming department to modify certain capitalization rules in

---

[3] *Accord*. Cal. Rules of Prof'l Conduct, Rule 2-100(B); Restatement (3d) of the Law Governing Lawyers § 100 cmt. d ("[T]e anti-contact rule of § 99 also extends to persons connected with an organization, regardless of their rank, whose acts or omissions in the matter may be imputed to the organization for purposes of civil or criminal liability with respect to the matter involved in the representation.").

connection with Change Request 2785.  In the plaintiff's most recent class certification brief, she contends that Change Request 2785 is "relevant to Plaintiff's claims" and it was discussed "thoroughly" in her argument that Great Lakes violated the Department's regulations.  (Dkt. 119 at 4 n.1.)  Presumably, the plaintiff will attempt to use the actions of Great Lakes employees in connection with Change Request 2785 as evidence of purported mail or wire fraud or negligence committed by Great Lakes.  (*See, e.g.*, Dkt. 119 at 12-13 (citing documents created by Great Lakes employees as supposed evidence of fraud).)

Thus, under Comment 7 to Rule 20:4.2 and the test endorsed by the Professional Ethics Committee, even if Ms. O'Daniel does not supervise, direct, or regularly consult Great Lakes' attorneys, she falls within the class of represented persons because she is a current constituent of the organization whose "act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Ethics Opinion E-07-01 § II(2); Rule 20:4.2 cmt. 7;[4] *cf. Weibrecht v. Southern Ill. Transfer, Inc.*, 241 F.3d 875, 883 (7th Cir. 2001) (ruling that the pilot of a tug boat was a "represented party" because his alleged negligence could be imputed to the organization); *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1009 (N.D. Ill. 2014) (professor constituted a represented person because the tenure vote in which she

---

[4] Rule 20:4.2 covers such constituents even if the corporate defendant disputes or denies the allegations.  *See* Ethics Opinion E-08-01, § II.2 & n.21.

participated could be imputed to the university); *Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876, 878-79 (N.D. Ill. 2002) (holding that gas station attendants were "represented parties" because their acts or omissions in the matter at issue could be imputed to the organization); *accord.* Cal. Rules of Prof'l Conduct, Rule 2-100(B)(2).  Mr. Harris has therefore violated the rules of professional responsibility by communicating with Ms. O'Daniel about this case.

As explained by other district courts within the Seventh Circuit, "[t]he purpose of this rule is to prevent lawyers from circumventing opposing counsel to get careless statements from adverse parties; to protect the integrity of the attorney-client relationship; to prevent the inadvertent disclosure of privileged information; and to facilitate settlement by channeling disputes through lawyers familiar with the negotiation process."  *Hill,* 209 F. Supp. 2d at 878; *see also Parker*, 249 F. Supp. 2d at 1009 (no contact rule designed "to protect the represented person against overreaching by adverse counsel, safeguard the client-lawyer relationship from interference by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests"); *In re Air Crash Disaster Near Roselawn*, 909 F. Supp. 1116, 1121 (N.D. Ill. 1995) (the rule recognizes that "the professionally trained lawyer may, in many cases, be able to win, or in the extreme case coerce, damaging concessions from the unshielded layman"); *accord.* Restatement (Third) of the Law Governing Lawyers § 99 cmt. b (noting that the anti-contact rule "protect[s] against

overreaching and deception of nonclients").  Mr. Harris's communication with Ms. O'Daniel appears to have been motivated by a desire to circumvent the normal discovery process and obtain evidence to use against the defendants through extra-judicial means.  The Court should sanction Mr. Harris for this behavior and prevent him from further violating his professional obligations.[5]

Even if Mr. Harris were permitted to contact Ms. O'Daniel regarding this litigation, "that does not mean that lawyers contacting such constituents are free from all constraint."  Ethics Opinion E-07-01 § IV.  In situations where an attorney is in fact permitted to contact a constituent of a represented organization, the Rules of Professional Conduct still prohibit attorneys from using "methods of obtaining evidence that violate the legal rights of the organization."  Rule 20:4.2 cmt. 7.  This rule is designed to "protect the organization's privileged information," and lawyers are forbidden "from seeking to induce disclosure of information protected by the privilege when contacting any constituent of a represented organization."  *See* Ethics Opinion E-07-01 § IV; *accord.* Restatement (Third) of the Law Governing Lawyers § 102.  Thus, the Professional Ethics Committee directs lawyers contacting constituents not protected by Rule 20:4.2 to (1) "clearly identify the client and the fact that the client is adverse to the

---

[5] If Mr. Harris thought that he had a plausible basis for communicating with Ms. O'Daniel *ex parte*, the appropriate course of action would have been to either notify defense counsel or seek guidance from the Court.  *See Air Crash Disaster*, 909 F. Supp. at 1122-23 ("[C]ounsel, when confronted with a need to obtain information from witnesses that might reasonably lead to ethical problems, must take a conservative rather than aggressive approach.").

organization," (2) "inquire as to whether the constituent has counsel of his or her own in the matter," (3) "explain the purpose of the interview," and (4) "inform the constituent that he or she need not speak to the lawyer."  *See* Ethics Opinion E-07-01 § IV.  Mr. Harris's Facebook communication with Ms. O'Daniel fails to comply with *any* of these prerequisites.  (O'Daniel Decl. Ex. A.)

Where a lawyer violates these rules, "the court may disqualify him or her from further participation in the case . . . and, under certain circumstances, may exclude improperly obtained evidence or take other appropriate measures to achieve justice and ameliorate the effect of improper conduct."  Ethics Opinion E-0701 § IV (quotation omitted); *accord.* Restatement (Third) of the Law Governing Lawyers § 99 cmt. n.  Courts may order fee-shifting in order that the offending attorney bears the costs of their violation of the anti-contact rule.  *See Goswami*, 8 F. Supp. 3d at 1019; *Parker*, 249 F. Supp. 2d at 1013.

Furthermore, even if Ms. O'Daniel were an unrepresented person, the Rules of Professional Conduct still require an attorney to "inform such person of the lawyer's role in the matter."  Rule 20:4.3.  While Mr. Harris identified himself as "an attorney currently representing a (putative) class of student loan borrowers in a lawsuit against Great Lakes" in his communication with Ms. O'Daniel, such an identification could misleadingly suggest to a non-lawyer that a class had been certified ("putative" is pure lawyer-speak) or that the recipient was required to speak to Mr. Harris.  (*Cf.* O'Daniel

9

Decl. ¶ 4.)  The Rules of Professional Conduct protect important interests of parties and

unrepresented persons in the operation of a fair and orderly process.  They may not be

so blithely ignored as has occurred here.

## CONCLUSION

For these reasons, the defendants respectfully request that the Court sanction Mr.

Harris and issue an order that:

1. Expressly prohibits the plaintiff's attorneys from contacting Great Lakes' employees regarding this litigation;

2. Orders them to disclose to the defendants all of their previous contacts or attempted contacts with Great Lakes employees;

3. Requires them to provide a certification regarding their measures to ensure that materials covered by the attorney-client privilege, work product doctrine, or third-party borrowers' privacy rights were not compromised as a result of Mr. Harris's actions; and

4. Awards the defendants their costs in preparing the instant motion.


Dated this 3rd day of March, 2017.


s/ Thomas L. Shriner, Jr.

Thomas L. Shriner, Jr.
Elizabeth A. N. Haas
Eric G. Pearson

Aaron R. Wegrzyn
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin  53202-5306
(414) 271-2400 Telephone
(414) 297-4900 Facsimile
Email:  tshriner@foley.com
Email:  ehaas@foley.com
Email:  epearson@foley.com
Email:  awegrzyn@foley.com

Michael D. Leffel
FOLEY & LARDNER LLP
150 East Gilman Street, Suite 5000
Madison, Wisconsin  53703-1482
(608) 257-5035 Telephone
(608) 258-4258 facsimile
Email:  mleffel@foley.com

*Attorneys for Defendants Great Lakes
Educational Loan Services, Inc., Great Lakes
Higher Education Corporation, Jill Leitl,
David Lentz, and Michael Walker*