FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (*pro hac vice*)
jrk@classactionlaw.com
David J. Harris, Jr., Esq. (CA Bar #286204)
djh@classactionlaw.com
Trenton R. Kashima, Esq. (*pro hac vice*)
trk@classactionlaw.com
550 West C Street, Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MEREDITH D. DAWSON,<br><br>                              Plaintiff,<br><br>       v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., GREAT LAKES HIGHER EDUCATION CORPORATION, JILL LEITL, DAVID LENTZ, and MICHAEL WALKER,<br><br>                              Defendants. | Case No. 3:15-cv-00475-jdp<br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PRETRIAL CONFERENCE PURSUANT TO FED. R. CIV. P. 16 AND FOR CORRECTIVE NOTICE PURSUANT TO FED. R. CIV. P. 23** |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT PROCEDURAL HISTORY .............................................................3

III.  A PRETRIAL CONFERENCE IS NECESSARY AND PRUDENT TO PREVENT THIS
      CASE FROM BECOMING FURTHER PROTRACTED FOR LACK OF
      MANAGEMENT......................................................................................................8

      A.    There has been no bifurcation or de jure stay of discovery in this case, yet the
            Defendants' refusal to engage with the Plaintiff has reached unreasonable levels. ......9

      B.    Defendants are either declining to provide the financial compensation they
            declared to the Court, or they are providing it and otherwise communicating with
            class members without disclosing class members' claims or rights in this action. ......11

      C.    The Court should establish "continuing control" of this case by ordering
            corrective notice to putative class members in conjunction with any mystery
            refunds and related communications. ........................................................................13

IV.   CONCLUSION.......................................................................................................21

i

# TABLE OF AUTHORITIES

**Cases**

*County of Santa Clara v. Astra USA, Inc.*,
  No. 05-cv-03740, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ................................ 3, 14, 17, 18
*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981)....................................................................................................... 14
*In re Gen. Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir. 1979) .................................................................................... 16
*In re Oil Spill by the Oil Rig 'Deepwater Horizon'*,
  No. 10-md-02179, 2011 WL 323866 (E.D. La. Feb. 2, 2011) .................................... 14
*In re Sch. Asbestos Litig.*,
  842 F.2d 671 (3d Cir. 1988)................................................................................... 14, 17
*Jones v. Cruisin' Chubbys Gentlemen's Club*,
  No. 17-cv-125-jdp, 2018 WL 1175412 (W.D. Wis. Mar. 6, 2018) ........................... 19
*Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
  238 F. Supp. 2d 151 (D.D.C. 2002)............................................................................ 14
*Kleiner v. First Nat'l Bank of Atlanta*,
  751 F.2d 1193 (11th Cir. 1985) ............................................................................ 14, 17
*Logan v. Zimmerman Brush Co.*,
  455 U.S. 422 (1982)..................................................................................................... 20
*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..................................................................................................... 15

**Statutes**

Fed. R. Civ. P. 16............................................................................................... 1, 2, 3, 11
Fed. R. Civ. P. 23.................................................................................................... passim
Fed. R. Civ. P. 26............................................................................................................ 11

**Regulations**

34 C.F.R. § 682.211 ......................................................................................................... 4
34 C.F.R. § 685.205 ......................................................................................................... 4

## I.        INTRODUCTION

Pursuant to Rule 16(a) of the Federal Rules of Civil Procedure, Plaintiff Meredith D. Dawson moves the Court to set a pretrial conference, for the purpose of "establishing early and continuing control so that the case will not be protracted because of lack of management."  Fed. R. Civ. P. 16(a)(2).  In addition, Plaintiff moves the Court to order her proposed notice of this case to putative class members pursuant to Rule 23(c) or Rule 23(d).  Plaintiff respectfully makes this request on behalf of herself and other putative class members for the following reasons.

Rule 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  Class certification has been pending in this Court for nearly two years, with the hearing on Plaintiff's Renewed Motion for Class Certification having been held over one year ago.  Dkt. 151 (hearing held May 18, 2017).  During this multi-year period, the Court has also deferred any substantive decision on discovery motions while class certification remains pending.  *See* Dkt. 123 (Text-Only Order by Judge Crocker) ("The court and the parties agreed that it may postpone a decision on the merits of this [discovery] motion — and the earlier discovery dispute regarding email, *see* dkt. [73]  — until the court has ruled on plaintiff's renewed motion for class certification (dkt. [89]).").  There is currently no trial date, no dispositive motion deadline, nor any other deadline in place.  These persistent non-decisions on both class certification and merits discovery issues have combined to leave the parties at a lengthy impasse, with no end in sight.

Ms. Dawson believes that the *de facto* discovery stay contemplated by Judge Crocker and the parties in November 2016 (Dkt. 123) was originally contemplated as a stay of a few months, not a few years.  In Plaintiff's view, at least limited merits discovery should resume at this point

in the case, particularly discovery which does not implicate Rule 26 "proportionality" issues.  To further postpone this case from proceeding on the merits will cause prejudice to Plaintiff and putative class members in their efforts to prove their claims, whether individually or collectively, based on increasingly stale evidence.

After Dkt. 123, however, the Defendants have maintained that no discovery at all may be conducted by Plaintiff until the Court rules on class certification, no matter how limited or necessary discovery might be.  Defense counsel has ceased to even respond to Plaintiff's discovery related correspondence, seeking nothing but individual documents to which Plaintiff is clearly entitled.  *See* Declaration of David J. Harris, Jr. in Support of Plaintiff's Motion for Pretrial Conference and for Corrective Notice to Putative Class Members (hereinafter, "Harris Declaration"), ¶2.  Defendants' persistent refusal to cooperate, combined with the Court's persistent declination to decide pivotal legal issues over the last two years, is causing this case to become extraordinarily "protracted for lack of management."  Fed. R. Civ. P. 16(a)(2).

Most importantly, this extended period of inaction has also facilitated the Defendants' attempts to deprive putative class members of their claims and rights to complete relief, contrary to settled Rule 23 principles.  Specifically, the Defendants have told the Court that they are providing class members with financial relief totaling up to $20 million or more.  In purporting to provide personal checks, account credits, and related communications to class members, Defendants are admittedly concealing from class members that their claims for treble damages and injunctive relief are being prosecuted in this Court.  "[T]his tactic cannot be allowed under Rule 23, for to rule otherwise would allow defendants to shift control of one proceeding from the district judge to defense counsel."  *County of Santa Clara v. Astra USA, Inc.*, No. 05-cv-03740,

2

2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010).  That is precisely what is now happening in this proceeding.

Plaintiff estimates that the $20 million-worth of damages identified by the Defendants in September 2016 have now ballooned to over $30 million, as these admittedly wrongful interest obligations continue to accrue over time.  In September 2016, Defendants told the Court they were ready, willing and able to refund all of these obligations "within a few weeks."  *See generally* Dkt. 83-2.  In August 2017, Defendants told the Court that the Department of Education commanded them to execute these refunds, and that this would be done by year-end 2017.  *See generally* Dkt. 153.  Yet as of May 2018, Defendants continue to remain silent.  The Court continues to remain silent.  The evidence grows stale.  The putative class remains damaged, in the dark, and at risk.

A status conference is necessary and prudent for the Court to re-establish "control" of this case and ensure that it will not become "protracted for lack of management."  Fed. R. Civ. P. 16(a)(2).  In addition, Plaintiff herein offers the Court a lawful and practical solution to the problems presented.  The solution includes a Court order requiring corrective, pre-certification notice to putative class members under Fed. R. Civ. P. 23(d)(1), or alternatively, requiring post-certification notice to class members under Fed. R. Civ. P. 23(c)(2).  Plaintiff's proposed class notice is attached as **Exhibit A** to the Harris Declaration, filed contemporaneously herewith.

## II.   RELEVANT PROCEDURAL HISTORY

On July 31, 2015, Plaintiff Meredith Dawson filed this lawsuit (Dkt. 1) ("Complaint"), alleging that Great Lakes illegally capitalized accrued interest obligations on her and putative class members' student loans in connection with an administrative forbearance period that Great Lakes applied to their outstanding loan accounts.  *See generally* Dkt. 1.  Plaintiff alleges that

these capitalization transactions violated two federal regulations governing FFELP and Direct student loans: 34 C.F.R. § 682.211(f)(11) and 34 C.F.R. § 685.205(b)(9).   Plaintiff seeks to recover, on behalf of the putative class, financial damages totaling three times the dollar amount of growth in their loan balances which resulted from the unlawful interest capitalizations, plus interest, attorneys' fees, expenses, and injunctive relief.[1]

On October 9, 2015, Defendants filed an Answer and Counterclaim (Dkt. 24) ("Answer") to the Plaintiff's complaint.   The Defendants' Answer denies many of the Plaintiff's factual and legal allegations, but concedes that a small portion of Plaintiff's and other Class members' capitalized interest obligations were improperly capitalized.[2]

On July 15, 2016, Defendants declared to the Court that they had refunded or reduced the loan balances of all student loan accounts that were affected by that portion of capitalized interest which they conceded to be wrongfully capitalized.   Dkt. 66.   Defendants argued that because Great Lakes proffered these refund checks and account credits, Plaintiff's and putative class members' legal claims had been fully satisfied, and they lacked constitutional standing. *E.g.,* Dkt. 65 at 27, 30.

On July 29, 2016, Plaintiff filed a Reply with the Court, arguing that all (not just a portion) of the allegedly capitalized interest obligations for standalone B-9 Forbearances were improperly capitalized, and that Plaintiff and putative class members were entitled to additional financial compensation to offset the wrongful inflation of their loans.   *See generally* Dkt. 70.

---

[1] The Plaintiff's Complaint contemplates what has now come to be denoted as a "standalone" B-9 Forbearance; the Complaint does not contemplate what has now come to be denoted as a "back-to-back" B-9 Forbearance.

[2] Like the Plaintiff's Complaint, the Defendants' Answer contemplates what has now come to be denoted as a "standalone" B-9 Forbearance; the Answer does not contemplate what has now come to be denoted as a "back-to-back" B-9 Forbearance.

On September 15, 2016, the Defendants filed a "Motion to Supplement" (more like a "Motion to Recant") their Opposition to Class Certification.   Dkt. 83.   The Motion to Supplement and accompanying documents conceded that all "standalone" B-9 Forbearance capitalizations were improper.[3]   Defendants' Motion to Supplement and supporting papers further stated that Great Lakes had "developed a plan that they predict can address the vast majority of borrowers' [standalone B-9 Forbearance] capitalizations *within a few weeks*."   Dkt. 83-2, ¶11 (emphasis added).   Defendants estimated that this would result in refunds and loan balance reductions "of up to $20,170,828.28" as of August 25, 2016.   Dkt. 83-7 at 1-2.

On September 23, 2016, Plaintiff filed a one-page Response Stating No Opposition to Defendants' Motion to Supplement (Dkt. 84), which largely agreed with the substance of Defendants' Motion to Supplement. *See* Dkt. 84 at 1 ("The Declaration of Jamie M. Brown (Dkt. 83-2) and its exhibits only further support the Complaint's allegation (fourteen months ago) that Defendants have illegally treated [standalone] B-9 Forbearance periods as capitalization events for the better part of a decade.").

On September 28, 2016, the Court (via Judge Crabb) abruptly altered the course of this litigation by summarily denying class certification, and stating that "plaintiff's claims remain too vague" to evaluate under Rule 23.   Dkt. 85 at 1.   The Court's opinion denied Defendants' pivotal Motion to Supplement — and Plaintiff's substantial agreement thereto — as "moot." *Id.* at 2. The Court gave no reason for this, and no indication that it understood the import of Defendants'

---

[3] These were the only capitalizations ever addressed in the Plaintiff's Complaint, the Defendant's Answer, or the first round of class certification briefing. In all pleadings and arguments, the parties had always applied the relevant capitalization rules and regulations *only* to "standalone" periods like the Plaintiff's. *See generally* Dkt. 1; Dkt. 24; Dkt. 55; Dkt. 65; Dkt. 66; Dkt. 70. Defendants' Declaration at Dkt. 83-2 introduced — for the first time — the novel concept of a "back-to-back" B-9 Forbearance period, but such scenarios were never the focus of this case, and there is no evidence to date that "back-to-back" putative class members even exist.

Motion to Supplement or of Plaintiff's substantial agreement to the legal conclusions therein. *Id.* The Court also denied as "moot," without explanation, Plaintiff's Motion to Compel production of 97,000 emails previously agreed upon by the parties. *Id.* at 12. The Court invited Plaintiff to file a "renewed motion for class certification addressing the issues identified in this order." *Id.*

On October 20, 2016, Plaintiff filed a Renewed Motion for Class Certification focused on the issues identified in Judge Crabb's Order. Dkt. 89; Dkt. 90. The Defendants' filed a Renewed Opposition to Class Certification on November 10, 2016 (Dkt. 111), and Plaintiff replied on November 21, 2016 (Dkt. 119).

On November 8, 2016, Plaintiff filed a Second Motion to Compel Production of Documents Concerning Defendants' Capitalization Exception Business Rules (Dkt. 105). Defendants filed a Brief in Opposition on November 15, 2016 (Dkt. 114), and Judge Crocker held a telephonic hearing on this motion on November 23, 2016. Dkt. 123 (Text Only Order); Dkt. 124 (telephonic hearing transcript). As with Plaintiff's first motion to compel, the Court declined to decide this second motion to compel until after a class certification decision.

On January 6, 2017, the Court reassigned this case from Judge Crabb to Judge Peterson. Dkt. 127.

On February 9, 2017, Defendants declared to the Court that a Department of Education employee directed Great Lakes on January 12, 2017 to prepare a plan to execute the "standalone" B-9 Forbearance refunds and account credits they conceded on September 15, 2016. *See* Dkt. 133, ¶¶4-5. Defendants declared that they submitted this plan to the Department of Education on January 23, 2017. *Id.*

On May 18, 2017, the Court held oral argument on Plaintiff's Renewed Motion for Class Certification. At oral argument, Defendants' counsel relayed Great Lakes' posture with respect

to executing the "standalone" B-9 Forbearance capitalization refunds and account credits declared to the Court on September 15, 2016 and February 9, 2017:

> [W]e haven't fixed it because we haven't gotten permission from the Department to do it yet. We've given them a plan of how we would do it. We'd go back and remediate and undo all the transactions and do them the way that we now do them rather than the way we used to do them. We've sent that plan to the government in January. We're still waiting to be told to do it. They're not moving very quick. We expect they will. We don't know, but we expect they will, and since they're the principal and we're the agent, we do what they tell us to do, but we're ready to do it. We want to do it.

Dkt. 152 (Oral Argument Transcript) at 22:25 - 23:9.

On August 16, 2017, Defendants' counsel (not Defendants) represented to the Court that the Department of Education directed Great Lakes to execute all "standalone" refunds and account credits they had conceded on September 15, 2016, February 9, 2017 and May 18, 2017. *See* Dkt. 153. Defendants' counsel further represented their belief that they could complete all "standalone" refunds and account credits by year-end 2017. *See id.* at 1-2 ("The Department finally gave direction on August 10, 2017, instructing GLELSI [Great Lakes] to reverse the capitalization events at the end of such stand-alone B-9 Forbearances. GLELSI is currently preparing to make the adjustments. It anticipates that all account adjustments will be completed *by the end of the year*.") (emphasis added).

On August 22, 2017, Plaintiff filed a Motion for Leave to File Response to Defendants' "Notice," arguing that it would be improper for the Court to rely upon such a Notice in connection with class certification, and that the Defendants had failed as a factual matter to identify all "standalone" B-9 Forbearance capitalizations wrongly executed by Great Lakes. *See generally* Dkt. 154-1; Dkt. 155; Dkt. 155-1.

On February 15, 2018, Defendants informed the Court that Great Lakes' student loan servicing business ("GLELSI") had been acquired by one of its competitors: Nelnet, Inc.,

"[e]ffective February 1, 2018." Dkt. 160.  Nelnet, Inc. is a publicly traded company and fellow servicer of FFELP and Direct student loans.

It is now the end of May 2018, and Defendants have provided no evidence to Plaintiff, her counsel, or the Court as to whether the "standalone" refunds and account credits they conceded on September 15, 2016, February 9, 2017, May 18, 2017, and August 22, 2017 have been executed for the benefit of Plaintiff or other class members.  As it is almost two years later, Plaintiff estimates that wrongfully capitalized dollars from past "standalone" B-9 Forbearances have now accrued over $30 million in unlawful interest charges against putative class members.

## III.   A PRETRIAL CONFERENCE IS NECESSARY AND PRUDENT TO PREVENT THIS CASE FROM BECOMING FURTHER PROTRACTED FOR LACK OF MANAGEMENT

This case is becoming extraordinarily protracted for lack of management on multiple fronts.  First, class certification has been pending for nearly two years, with the hearing on Plaintiff's Renewed Motion for Class Certification having occurred over one year ago.  Second, the Court has deferred any decision on motions to compel discovery while class certification remains pending.  These non-decisions have effectively stymied Plaintiff's trial preparation efforts for over 18 months, as the parties remain at an impasse on whether discovery may proceed at all.  Third, the Defendants declared their intention to send tens of millions of dollars in personal checks and loan account credits to putative class members by year-end 2017.  The first half of *2018* is about over with, yet Defendants have not informed the Court or the Plaintiff as to whether they have already proffered — or still intend to proffer — the previously promised financial compensation to class members.  Nor have the Defendants informed class members of this action or their legal rights in connection with these undisclosed checks, account credits, and related communications.

Accordingly, Plaintiff submits that proper notice of this case should be given to putative class members in conjunction with these mystery refunds and communications sent out by the Defendants.  Sending pre-certification notice pursuant to Rule 23(d), or post-certification notice pursuant to Rule 23(c), is necessary and proper to preserve the well-established rights of absent class members, and to move this action forward on the merits.

## A. There has been no bifurcation or *de jure* stay of discovery in this case, yet the Defendants' refusal to engage with the Plaintiff has reached unreasonable levels.

In declining to analyze the elements of Rule 23(a) and 23(b)(3) certification on Plaintiff's [Original] Motion for Class Certification, Judge Crabb denied as "moot" Plaintiff's motion to compel production of Defendants' internal emails and instant messages during the class period. Dkt. 85 at 12.  Plaintiff then filed a second motion to compel, this time to compel production of specific documents and data concerning Defendants' loan servicing system.  Dkt. 105.

Judge Crocker held a telephonic hearing on Plaintiff's second motion to compel on November 23, 2016. *See* Dkt. 124 (hearing transcript). During that hearing, Judge Crocker expressed his view of what Judge Crabb meant by "mooting" a merits discovery motion in connection with a Rule 23 motion:

> Unrelated to today's motion but part of the bigger picture is plaintiff's first motion to compel discovery.  That was docketed as 73.  That came in in late August [2016] and that had to do with email.  And that one basically sat around the court while Judge Crabb and her people were looking at class certification. As you all know, on September 28 the judge denied class certification, that was Docket 85, and sort of as an offhanded ruling she denied that pending motion to compel as moot; did not discuss the merits, [but] basically decided, I think we can all infer, that if this was not going to be a class action, that the court was not going to authorize that deep or broad of an email production.

*Id.* at 3:21-4:8.  In keeping with this inference, Judge Crocker suggested tabling any decision on Plaintiff's motions to compel until class certification was resolved.  In Judge Crocker's words:

> [W]e've got that 800-pound elephant of [Rule 26] proportionality, used to be [Rule] 26(b)(2)(C)(iii), now it would be 26(b)(1), but that [proportionality concern] would be looming large if this is a single plaintiff case.

*Id.* at 6:22-25.  Judge Crocker, however, emphasized that even in a single-plaintiff case, "one of [this Court's] basic premises that we hope filters down to the attorney level is everybody gets what they actually need subject to proportionality, but nobody gets nothing."  *Id.* at 11:2-5.

Yet "nothing" is precisely the position that the Defendants have taken on discovery ever since Dkt. 123.  The Plaintiff gets nothing, indefinitely: unless and until she is appointed as a class representative.  By way of example only, the Defendants have told the Court that they are adjusting every damaged class member's loan balances to reflect some secret, interpretive guidance "effected" by the Department of Education via private email on May 3, 2017.  *E.g.,* Dkt. 152 (oral argument transcript) at 22:25-23:9; Dkt. 153.  Since the Defendants are purporting to alter Plaintiff's and every other class member's personal financial positions based on this guidance, the Plaintiff asked to see it.  Defendants, however, have refused to produce even this **one** significant document.  *See, e.g.,* Harris Declaration, **Exhibit B**.  This document — and any others that accompanied it — are plainly relevant to the question of what Defendants are doing with Plaintiff's and putative class members' loan balances.  Defendants refuse to produce it.  *Id.*

As a second example of Defendants' refusal to participate in this action, Defendant Great Lakes Educational Loan Services, Inc. was acquired by one of its competitors on February 7, 2018: Nelnet, Inc., a publicly traded company.  *See* Dkt. 160 (Great Lakes' Revised Corporate Disclosure Statement).[4]  In light of this development, Plaintiff's counsel sent defense counsel

---

[4] *See also* https://www.prnewswire.com/news-releases/nelnet-completes-acquisition-of-great-lakes-educational-loan-services-inc-300595308.html ("Nelnet (NYSE: NNI) announced today it has completed its previously announced acquisition of Great Lakes Educational Loan Services, Inc. . . . from Great Lakes Higher Education Corporation.  Nelnet paid $150.0 million in cash for 100 percent of the stock of Great Lakes, following the satisfaction of all required closing

emails dated February 15 and February 28, 2018, respectively, requesting that Defendants supplement their Rule 26(a)(1) initial disclosures to include any Nelnet-held "insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iv). *See* Harris Declaration, **Exhibit C**; **Exhibit D**. Defense counsel declined to even respond to these emails, much less supplement their clients' initial disclosures as required, "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A). Harris Declaration, ¶2.

These are just two examples of the fact that this case is becoming "protracted because of lack of management." Fed. R. Civ. P. 16(a)(2). A status conference is necessary to clarify the Court's expectations of the parties as it continues to deliberate on Rule 23 issues, and effectively stay all merits discovery, indefinitely. *Cf.* Plaintiff's Motion to Vacate Scheduling Order (Dkt. 129) at ("These procedural denials of Plaintiff's motions to compel have resulted in a *de facto*, four-month discovery stay never contemplated by the original Scheduling Order, rendering the current trial date impracticable.").

**B. Defendants are either declining to provide the financial compensation they declared to the Court, <u>or</u> they are providing it and otherwise communicating with class members without disclosing class members' claims or rights in this action.**

It is unclear what (if anything) Defendants have been doing with Plaintiff's and putative class members' loan balances since the Department commanded them to "fix" them on August 10, 2017.[5]

---

conditions.*** Upon completion of the transaction, the combined company will service $455 billion of student loans for 16.2 million borrowers, including $397 billion in government-owned student loans for 13.4 million borrowers . . . .").

[5] It is also unclear why the Department — in particular, Cynthia Battle — didn't command this "fix" when Plaintiff sued the Department alongside Great Lakes on July 31, 2015. *See, e.g.,* Harris          Declaration,          **Exhibit          E**,          *available          at*          https://origin2-

Defendants said this would be done "within a few weeks" of getting the Department's go-ahead. Dkt. 83-2, ¶11. When Defendants purportedly received the go-ahead on August 10, 2017, they declared that these refunds to class members would be executed "by the end of the year." Dkt. 153. "A few weeks" have come and gone. "The end of the year" has come and gone. Three full years of this litigation have come and gone, and class members are still without the compensation they've been entitled to since 2012. Plaintiff can only assume that these refunds and loan balance reductions have still not been proffered by the Defendants ten months after the Department ordered them.

Alternatively, maybe the Defendants **have** proffered the promised compensation to class members. If Defendants have provided compensation and any related communications to putative class members, Plaintiff, her counsel, and the Court are unaware of it. There is no

---

ifapmedia.ed.gov/media/podcasts/vae_fsa11_a54.pdf (last visited May 25, 2018) (Transcript of Cynthia Battle speaking publicly alongside Great Lakes' management *in late 2011*: "We then took an exhaustive search to look at all of the capitalization practice[s], and again, had to pair up the regulations for both FFEL and Direct Loan[s] and ensure that we were in line, and identified inconsistencies with how we were handling capitalization. **We've documented it, we have standardized the practice, all of the servicers have that, and we expect to be able to say in the first part of 2012 that they are standard and they are consistent. We will not be able to go back and retroactively change what has happened in the past, but going forward we can ensure that all borrowers receive the same kind of practices or capitalization events regardless of their servicer.**") (emphasis added). Evidently, Ms. Battle was mistaken on two fronts in late 2011. First, even "going forward" from 2012, Great Lakes would not adhere to the Department's rules concerning capitalization events. Second, Great Lakes can very well "go back and retroactively change what has happened in the past." *See* Dkt. 66, ¶32 ("We pride ourselves in doing our job correctly and accurately, *and from the start of this process there was never any question that we would go back as far in time as necessary to remove all improper interest capitalizations* . . . ."). Great Lakes simply chose not to "remove all improper interest capitalizations" before this lawsuit, and they continue to choose not to remove them three years into this lawsuit. *See* Complaint (Dkt. 1) ("That Reprogramming occurred somewhere between February 1, 2014 and April 16, 2015 . . . . Yet Great Lakes Defendants still, to this very day, have intentionally done nothing to remediate the accounts of FFELP or Direct borrowers like Plaintiff, who they know are continually being harmed by B-9 Interest capitalizations that occurred before the Reprogramming.").

evidence of how much compensation has been given, how it was calculated, or what communications have been sent to putative class members along with such compensation.

One thing, however, is clear. The Defendants have sent personal checks, account credits and other correspondence to putative class members pertaining to this action, without providing notice of this action or the fact that Plaintiff is seeking additional relief on their behalf. As explained below, the Court should order pre-certification notice pursuant to Rule 23(d), or post-certification notice pursuant to Rule 23(c), to putative class members to protect their rights and correct the misleading communications being sent to them throughout this action.

## C. The Court should establish "continuing control" of this case by ordering corrective notice to putative class members in conjunction with any mystery refunds and related communications.

Rule 23(d)(1) provides that "[i]n conducting an action under this rule, the court may issue orders that . . . require — to protect class members and fairly conduct the action — giving appropriate notice to some or all class members of:

 (i)  Any step in the action;

 (ii)  The proposed extent of the judgment; or

 (iii)  The members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise come into the action . . . ."

Federal Rule of Civil Procedure 23(d) also permits a court overseeing a class action to issue orders which "determine the course of proceedings" or "impose conditions on the representative parties." Fed. R. Civ. P. 23(d). Courts have discretion to both supervise and regulate a party's communications with potential class members. Because class actions "present opportunities for abuse as well as problems for courts and counsel in the management of cases . . . a district court has both the duty and the broad authority" to supervise communication between

the parties and potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981).

A court's duty to oversee communications with potential class members exists even before a class is certified. *In re Oil Spill by the Oil Rig 'Deepwater Horizon'*, No. 10-md-02179, 2011 WL 323866, at *2 (E.D. La. Feb. 2, 2011). Courts should properly exercise their authority to regulate "efforts by a defendant to encourage potential class members not to participate in the class action, thereby reducing potential liability." *Astra USA*, 2010 WL 2724512, at *3 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201-03 (11th Cir. 1985)). In addition, courts have authority to regulate communications to putative class members that are "incomplete, inaccurate, purposely misleading or coercive." *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 156-57 (D.D.C. 2002); *see also Astra USA*, 2010 WL 2724512, at *4 ("While there were not any alleged misstatements in the letter, it was inadequate to inform the putative class.").

A court order regulating communication between parties and potential class members "should be based on a clear record and specific findings that reflect weighing of the need for limitation and potential interference with rights of the parties." *Gulf Oil*, 452 U.S. at 101-02. However, "Rule 23(d) does not . . . require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988).

Here, in July *2016*, the Defendants proffered personal checks, account credits and related communications to putative class members without mentioning their live claims for additional relief in this case. *See generally* Dkt. 66 (Kielhofer Declaration in opposition to class certification). *See also* Dkt. 53 (GLELSI Deposition) at 72:17-73:9:

> Q. Ms. Kielhofer, is Great Lakes providing one of these adjustment confirmation letters or similar disclosure to other borrowers that Great Lakes has undertaken to have

accounts fixed for?

A. No.

Q. Has Great Lakes provided any notification at all to other borrowers whose accounts are being adjusted in response to this case?

A. If the borrower has asked about the adjustment, an explanation has been provided.

Q. Do you know about how many borrowers have asked for an explanation?

A. I do not know.

Q. Do you know if anyone has asked for an explanation?

A. We have had some calls.

Meanwhile, as Defendants were providing these **partial** relief checks, account credits, and "explanations" to putative class members, they were arguing to Judge Crabb that class members' legal claims were permanently mooted.[6]  Had Judge Crabb decided this issue in Defendants' favor on the evidence before her, such a decision would have operated as a summary judgment of all putative class members' claims: without putative class members ever having notice or an opportunity to be heard.  This would violate the constitutional due process concerns that underlie Rule 23's mandatory and discretionary notice provisions.  *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated,

---

[6] *See, e.g.,* Dkt. 65 at 27 ("The plaintiff asserts that she 'suffered — and continues to suffer — the same injury as absent Class members.' (Dkt. #55 at 14.) But she omits the one critical detail that makes this claim absurd: her account, like those of every affected proposed class member, has already been corrected in full by Great Lakes."); *id.* at 30 ("As in *Aqua Dots* and *Doster*, the plaintiff is here seeking to pursue a remedy that has already been voluntarily provided to the proposed class members by Great Lakes.  Indeed, Great Lakes has gone even further than the defendants in *Aqua Dots* and *Doster* by already redressing any arguable harm conceivably sustained ***by every member of the putative class***.  Great Lakes has identified every affected account, addressed every incorrect interest capitalization transaction caused by the programming errors, and fully credited every affected borrower's accounts or made refunds.") (emphasis in original).

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  Fortunately for putative class members, Judge Crabb did not issue such a decision and doom putative class members' rights to obtain at least $20-30 million in additional relief.

Nevertheless, Defendants are now purporting to execute a ***second*** round of misleading communications and compensation to putative class members in an attempt to extinguish their claims for greater relief without class members ever knowing it.  *See* Part II, *supra* ("Relevant Procedural History").  Courts have long recognized that when class action defendants attempt to extinguish putative class members' claims through individual settlements, courts should regulate the content of such offers to prevent the "misleading of class members about the strength and extent of their claims and the alternatives for obtaining satisfaction of those claims." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1139-40 (7th Cir. 1979).

Here, Defendants are not seeking to extract settlement ***agreements*** from putative class members; instead, they are misleadingly inducing class members to extinguish their own claims, without providing the relief currently demanded on their behalf.  Providing refund checks and account credits to putative class members — along with "explanations" that omit to disclose their live claims for treble damages and injunctive relief — is likely to induce class members to accept their account credits, or deposit or cash their checks.   Assuming, *arguendo*, that such compensation amounts to 100% of class members' actual damages, their rights to seek treble damages and other relief could be permanently extinguished if this case is closed without proper notice or an opportunity for them to intervene.  *See* Dkt. 119 (Plaintiff's Renewed Class Certification Reply Brief) at 32-33 (arguing "paid-in-full" class members are entitled to class notice even if the court decides that the named plaintiff lacks a compensable injury).

Defendants will argue in any future action — as they already have in this action (Dkt. 65) — that the putative class member(s) lack standing to seek treble damages or injunctive relief, because they accepted their 100% refunds outside of Court, thus eliminating their jurisdictional injury-in-fact under Article III.   Tactics like these have been repeatedly curbed by federal courts in analogous contexts.  *E.g., In re Sch. Asbestos Litig.*, 842 F.2d at 683 ("A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion."); *Kleiner*, 751 F.2d at 1203 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.").

In *Astra USA*, a corporate defendant had overcharged putative class members by miscalculating the statutory "ceiling prices" for prescription drugs.  , 2010 WL 2724512, at *1. When that case was "in the discovery stage," the defendant submitted a declaration similar to the declarations submitted by the Defendants in this case:

> The [defendant's] Declaration explained that in 2004 [it] began a review of its methodology for calculating the AMP and BP components of ceiling drug prices (Larkin Decl. ¶ 6). From that review, [the defendant] filed restated prices to adjust Medicaid rebate payments (*id.*at ¶ 9). It also stated that it "intends in the near future to offer refunds to those 340B participants who in the above periods paid net ceiling prices in excess of those calculated with the restated [methodology]."

*Id.*  Defense counsel "orally confirmed that [the defendant] intended to send refund payments to its 340B customers within the next few weeks, and also informed plaintiffs that these repayments would be characterized as 'accord and satisfaction' of claims regarding ceiling price calculations."  *Id.*   There, unlike here, the Defendants' refunds and "explanations" to putative class members ***actually disclosed the existence of the class action and the defendant's intent to extinguish each class member's pending claims***.  *Id.* at 2.  The communications, however, "did

not include a copy of the complaint, contact information for plaintiffs' counsel, or information about the current status of the case." *Id.*

The named plaintiff moved the Court for "corrective action," arguing that these out-of-court communications were misleading and improper. *Id.* The *Astra USA* court agreed, and found these communications to be problematic for several reasons that are present here. "While there were not any alleged misstatements in the letter, it was inadequate to inform the putative class. Not only did the letter omit a summary of the plaintiffs' complaint, it did not even provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case . . . ." *Id.* at *4.

The defendant argued that its communications "included all that was required, including the name of the case and the explanation that it was a putative class action." *Id.* The court, however, ruled that the defendant "should not have concealed material information. It was required to provide enough information so that the recipients would not be misled about the strength or extent of the claims and [so that] the purpose of Rule 23 was not frustrated." *Id.* The court went on to find these communications misleading for several reasons that are applicable to the putative class's situation here: (1) "the letter indicated that [the defendant] undertook the recalculations ***of its own volition***"; (2) "the letter misled the putative plaintiffs about the status of the case"; (3) "the letter made it seem as though the repayments had final approval from [a federal agency] ("CMS") because the components had CMS's approval and the recalculations were based on the approved component calculations. However, ***this veneer of official approval was misleading***." *Id.* at *4-5 (emphasis added). The *Astra USA* court concluded:

> If the refunds had been sent prior to this investigation, a jury question would be presented as to the good faith of the settlement. Given that it was sent ***after*** the litigation arose — and while [the defendant] knew good and well that a Rule 23 certification was still on the table — this tactic cannot be allowed under Rule 23,

> for to rule otherwise would allow defendants to shift control of one proceeding
> from the district judge to the defense counsel.  Therefore, the recipients are
> entitled to cash the checks and receive back their money — money [the
> defendant] admits should never have been extracted in the first place — without
> prejudice to seeking even greater in this or separate lawsuits.

*Id.* at *6 (emphasis in original).

The reality here, however, is that if Defendants are allowed to eliminate putative class members' "injuries-in-fact," without notice and on misleading pretenses, putative class members ***will*** be prejudiced from seeking additional relief, because the Defendants will challenge this Court's or another court's Article III jurisdiction over any putative class member's future claims.

At this stage of this action, the Court must guard the existing claims and rights of putative class members in one of two ways. ***First***, if the Court grants, in whole or in part, Plaintiff's Renewed Motion for Class Certification, "the court must direct to class members the best notice practicable under the circumstances" under Rule 23(c)(2)(B).   *Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *7 (W.D. Wis. Mar. 6, 2018).

> Notice must clearly, concisely, and comprehensibly state: (1) the nature of the
> action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a
> class member may enter an appearance through an attorney should he or she
> desire; (5) that the court will exclude any class member requesting exclusion; (6)
> the time and manner for requesting exclusion; and (7) the binding effect of a class
> judgment on class members . . . .

*Id.*  Plaintiff has included her proposed class notice as **Exhibit A** to the Declaration of David J. Harris, Jr., filed contemporaneously herewith.  Effecting Plaintiff's proposed notice to class members under Rule 23(c) would cure Defendants' misleading communications to date, and properly advise class members of their live claims and rights to seek further relief in this case.

***Alternatively,*** if the Court completely denies (or persists in not granting), Plaintiff's Renewed Motion for Class Certification, the Court should exercise its discretion to direct Plaintiff's proposed notice to putative class members under Rule 23(d).  This is particularly

necessary for the 112 or more putative class members who have paid their lenders more money "out-of-pocket" than they rightfully owed on their loans. *See* Dkt. 66, ¶36(d). These "paid-in-full" class members indisputably have tangible financial injuries and are currently entitled to treble damages and other relief if they prevail on the merits of their RICO claims. However, if the class is not certified, and these class members cash or deposit their 100% refund checks based on misleading pretenses, they could lose their live claims and rights to additional relief unless they have notice and an opportunity to intervene in this case. ***At a minimum***, the Court should exercise its discretion under Rule 23(d) to notify "paid-in-full" class members of this action, and thus preserve their live statutory claims for treble damages and other relief. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-29 (1982) (holding that a statutory cause of action is a species of property protected by constitutional due process). Allowing Defendants to use misleading communications and partial relief checks to extinguish these people's claims simply would not comport with due process or settled Rule 23 principles.[7]

---

[7] For the Court's convenience, Plaintiff's proposed class notice includes in the class definition the "parenthetical" language proposed by Plaintiff's counsel at oral argument on May 18, 2017. *See* Dkt. 152 at 56:3-15 ("[I]n the third prong of our class definition . . . we could simply add a parenthetical that says 'that [was] not immediately preceded by another forbearance, deferment or grace period' . . . ."). This parenthetical language would operate to limit the proposed class definition only to those "standalone" B-9 Forbearance class members — exactly like the Plaintiff — who were always the subject of this action. "Standalone" people are also the only putative class members who Defendants are purporting to refund and communicate with in connection with their outstanding remediation project. The Court could also use simpler parenthetical language to limit the class definition's third prong to "standalone" B-9 Forbearances only: "an administrative forbearance period of up to 60 days **(that was immediately preceded by a repayment period)**". Plaintiff believes this "standalone" language would be just and proper for the reasons stated throughout this brief. *E.g.,* n.1; n.2; n.3.

## IV.      CONCLUSION

For all of the foregoing reasons, the Court should set a pretrial conference to prevent this case from becoming protracted for lack of management.   The Court should also order that corrective notice be sent to putative class members, whether upon class certification under Rule 23(c), or before class certification under Rule 23(d).


Respectfully submitted,

FINKELSTEIN & KRINSK LLP


Dated: May 25, 2018                              By:   s/ David J. Harris, Jr.
                                                        David J. Harris, Jr., Esq.

Jeffrey R. Krinsk, Esq.
Trenton R. Kashima, Esq.
550 West C Street, Suite 1760
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Counsel for Plaintiff and the Putative Class*