# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON,

                Plaintiff,

   v.

GREAT LAKES EDUCATIONAL LOAN SERVICES,
INC., GREAT LAKES HIGHER EDUCATION
CORPORATION, JILL LEITL, DAVID LENTZ, and
MICHAEL WALKER,

                Defendants.

OPINION & ORDER

15-cv-475-jdp

---

This is a proposed class action in which plaintiff Meredith D. Dawson alleges that defendants—two affiliated student loan servicing companies and three of their employees—fraudulently and negligently inflated the amount owed on her (and other similarly situated borrowers') student loans. (Because the parties do not differentiate among any of the defendants, the court will refer to them collectively as "Great Lakes.") Specifically, Dawson alleges that Great Lakes wrongfully capitalized some interest that had accrued on her student loans, improperly increasing the principal amount, and that Great Lakes misrepresented its interest capitalization practices. Dawson asserts claims for common law negligence and negligent misrepresentation and violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–64.

Now before the court is Dawson's second attempt to have this case certified as a class action under Federal Rule of Civil Procedure 23. Dkt. 89. The court denied Dawson's initial motion to certify her proposed class under Rule 23(b)(3), finding her claims "too vague and her injury too ill-defined to enable the court to conduct the necessary inquiry" under Rule 23.

Dkt. 85, at 1.[1] With the court's permission, Dawson filed a renewed motion for class certification under Rule 23(b)(3). The parties submitted additional briefing and the court heard oral argument. Dkt. 151 and Dkt. 152. The court has also received and reviewed several filings since the hearing.

Dawson has narrowed the proposed class and clarified her claims, and the court is satisfied that she has cured the core deficiencies identified in the court's prior order. And the parties do not appear to dispute that the primary issues related to liability to can be resolved on a class-wide basis, so the court will grant Dawson's motion for class certification as to those issues.

There are three caveats. First, the court will limit the class to individuals like Dawson, who received a "standalone" B-9 forbearance and not "back-to-back" forbearances. Dawson cannot represent class members with different claims. Second, the court will create subclasses for the three types of alleged capitalization errors at issue in this case. Because Dawson alleges that Great Lakes subjected her to all three kinds of errors, she may serve as the class representative for each subclass. Third, the court will not certify the class for damages issues at this time. Great Lakes has identified a number of potential problems with resolving those issues in one case and Dawson has not adequately rebutted those arguments. After the court resolves liability, the parties may revisit the question of the best way to decide damages.

---

[1] Judge Barbara Crabb decided Dawson's original motion for class certification. The case was reassigned when Judge Crabb took medical leave. Dkt. 127.

# BACKGROUND

The court has already summarized the factual background of this case in its earlier opinions addressing the government's and Great Lakes' motion to dismiss and Dawson's first motion for class certification. Dkt. 46, at 3–5 and Dkt. 85, at 2–4.[2] The court will repeat only the basic facts and supplement them as necessary in the court's analysis.

This case is about the capitalization of student loan interest. Capitalization refers to the practice of adding accrued but unpaid interest to the account's principal balance. When accrued interest is capitalized, the borrower's principal debt increases, and so too does the amount on which future interest will accumulate.

Dawson, like many other borrowers, has federal student loans that are serviced by Great Lakes. She is indebted to the U.S. government, but Great Lakes has been contracted to manage her account and provide various services related to the repayment of her student loans. The U.S. Department of Education promulgates rules and provides guidance as to when, how, and under what circumstances federal loan servicers (such as Great Lakes) may capitalize the accrued interest in student borrowers' accounts. Generally speaking, interest accumulates constantly on student loans, but accrued interest may not be capitalized at Great Lakes' discretion. The Department of Education has told its loan servicers that there are certain "events" that trigger permissible capitalization, and also "exceptions" that preclude capitalization. For example, student borrowers may enter periods of loan deferment or

---

[2] The United States of America and the United States Department of Education were defendants in this case, but the court granted their motion to dismiss on the ground that they are immune from suit. Dkt. 46.

forbearance for various reasons, such as loan refinancing or restructuring or changes in educational or employment status. No capitalization of interest is allowed during these periods.

Between October 3, 2013, and November 28, 2013, Dawson's loans were placed into "B-9 Forbearance" status while she applied (successfully) to switch from a standard loan repayment plan to an income-driven repayment plan. Under Department regulations, when a student debtor's loans are placed in B-9 Forbearance, her monthly payment obligations are suspended for a period of up to 60 days. The regulations also state that certain categories of interest, including that which accrues during a B-9 Forbearance period, are not subject to capitalization. That much, the parties agree upon.

But the parties offer conflicting evidence and regulatory interpretations regarding whether and when (if ever) other types of interest may be capitalized lawfully after the conclusion of a B-9 Forbearance period. Because all agree that interest accruing *during* a B-9 Forbearance cannot be capitalized at the end of the period, the main issue is whether interest that accrued *prior to* a B-9 Forbearance, but has not yet been capitalized—which may occur for a number of different reasons—can be capitalized at the end of the period.

One distinction relevant to this question is the difference between "standalone" B-9 Forbearances and "back-to-back" forbearances. In the standalone situation, a student borrower goes from loan repayment status, to a single "standalone" B-9 Forbearance period (of no more than 60 days), and then immediately back to repayment status after that period expires. Dawson herself was in that situation, and underwent a standalone B-9 Forbearance. By contrast, in the back-to-back situation, a student borrower may go from one deferment or forbearance (i.e. capitalization exception) period directly (or after a short gap) into a successive

or "back-to-back" period of B-9 Forbearance. An unknown number of student borrowers with debts serviced by Great Lakes found themselves in this more complicated situation.

When Dawson's own B-9 Forbearance period concluded, Great Lakes capitalized $819.65 of accrued interest on her loan, thereby adding that amount to her principal balance. It seems clear from the record that at least $129.87 of that accrued interest was capitalized improperly, due to two computer programming errors (unrelated to Great Lakes' interpretation of federal law) that Great Lakes has acknowledged. But the parties dispute how much (if any) of the remaining $689.78 of accrued interest was also capitalized unlawfully or improperly, in violation of Department regulations and guidelines, or contrary to Great Lakes' own representations, or both. Dawson contends that it all was, and that defendants' misconduct injured her by inflating her principal account balance by that amount and causing increased interest charges beginning on November 28, 2013, and continuing to this day and beyond. She further contends that many thousands of other student debtors with federal loans serviced by Great Lakes have suffered the same or very similar injury.

ANALYSIS

The requirements for class certification under Rule 23 are well established: (1) the scope of the class as to both its members and the asserted claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b).

In this case, Dawson asks for certification under Rule 23(b)(3), which applies if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The ultimate question in a Rule 23(b)(3) class is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). *See also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014) ("Ultimately, the court must decide whether classwide resolution would substantially advance the case.").

## A. Class definition

Dawson's first motion for class certification failed in part because the proposed class was overbroad and would have included many individuals who were not affected by Great Lakes' allegedly improper interest capitalization practices. Specifically, Dawson's proposed class would have included all similarly situated student debtors who had their loans serviced by Great Lakes and underwent the same forbearance process, regardless whether they actually suffered any of the financial consequences Dawson alleges. The court therefore instructed Dawson that if she wished to refile her motion for class certification, "at a minimum, her proposed class must be limited to individuals who were subject to either the capitalization of intra-forbearance interest or who had pre-forbearance interest capitalized at the conclusion of their B-9 Forbearance period." Dkt. 85, at 6. ("Intra-forbearance interest" is shorthand for interest that accrues *during* a B-9 Forbearance; "pre-forbearance interest" is shorthand for interest that accrues *before* the forbearance.)

Dawson has revised her proposed class definition accordingly, and the renewed motion requests certification of the following proposed class:

> All persons who, between January 1, 2006 and the present: (i) were borrowers of a student loan issued under the Federal Family Education Loan Program ("FFEL" or "FFELP"), or of a student loan issued under the Federal Direct Loan Program ("Direct"); (ii) had their FFELP and/or Direct student loan(s) serviced by Great Lakes Educational Loan Services, Inc. or Great Lakes Higher Education Corporation (collectively, "Great Lakes"); (iii) had Great Lakes place their FFELP and/or Direct student loan(s) in an administrative forbearance status for a period of up to 60 days, concurrent with the processing of their application for a deferment, forbearance, consolidation loan, or change in repayment plan; ***and*** **(iv) had any amount of accrued interest capitalized at the end of the administrative forbearance period**.

Dkt. 89 (emphasis added).

This class definition addresses the concern raised by the court when denying Dawson's original motion for class certification. But the court raised a different concern in an order issued before the oral argument about whether it is appropriate for the class to include both (1) individuals with "standalone" forbearances and (2) individuals with "back-to-back" forbearances. Dkt. 147. It is undisputed that Dawson—who is the only class representative—is part of the first group but not the second.

During the oral argument, Great Lakes argued and Dawson appeared to concede that there are legal differences between the claims of the two groups and that the justifications for capitalizing the interest as to each group may not be the same. Dkt. 152, at 15, 38–39. "The general rule in this circuit is that a plaintiff cannot be an adequate representative of the class if she is not subject to the same defenses as other members of the class, at least if the defense is central to the litigation." *Torres v. Rhoades*, No. 15-cv-288, 2015 WL 9304584, at *3 (W.D. Wis. Dec. 21, 2015) (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-

25 (7th Cir. 2011), and 5 *Moore's Federal Practices* § 23.25[2][b][iv] (3d ed. 2007)). This is because the class representative will not have an incentive to litigate claims when she "has nothing to gain" from prevailing on them. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1081 (7th Cir. 2013).

Anticipating this problem, Dawson twice proposed during the oral argument that the court exclude individuals with back-to-back claims from the class. Dkt. 152, at 36, 56. Specifically, Dawson suggested the following change to the class definition:

> All persons who, between January 1, 2006 and the present: (i) were borrowers of a student loan issued under the Federal Family Education Loan Program ("FFEL" or "FFELP"), or of a student loan issued under the Federal Direct Loan Program ("Direct"); (ii) had their FFELP and/or Direct student loan(s) serviced by Great Lakes Educational Loan Services, Inc. or Great Lakes Higher Education Corporation (collectively, "Great Lakes"); (iii) had Great Lakes place their FFELP and/or Direct student loan(s) in an administrative forbearance status for a period of up to 60 days **that is not immediately preceded by another forbearance, deferment, or grace period**, concurrent with the processing of their application for a deferment, forbearance, consolidation loan, or change in repayment plan; *and* (iv) had any amount of accrued interest capitalized at the end of the administrative forbearance period.

Dkt. 152, at 56 (emphasis added). This limitation resolves the problem about Dawson serving as the class representative for claims she is not raising. "In circumstances such as these, involving minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 826 n. 15 (7th Cir. 2012). Great Lakes did not identify any substantive problems with the limitation during oral argument or in subsequent filings, so the court will adopt it.

A related issue is whether the class definition needs to be adjusted to account for the different theories that Dawson is asserting. Dawson's general theory of liability, for both her RICO and negligence claims, is that Great Lakes "wrongfully" capitalized accrued interest that never should have been subject to capitalization, and thus unlawfully inflated her principal debt. But this theory varied throughout earlier stages of the litigation as to which portions of accrued interest were wrongful for Great Lakes to capitalize, at what times, and why. Dkt. 85, at 7–9. In particular, as Judge Crabb noted, it has been unclear at times whether plaintiff's operative theory of wrongful capitalization applied to (1) interest that accrued during the B-9 Forbearance period, (2) interest that accrued before the B-9 Forbearance period, (3) smaller portions of interest that were capitalized improperly because of procedural or programming errors, or (4) some combination of the three. *Id.*

In her renewed motion papers, Dawson has clarified and simplified her theory of wrongful capitalization: she now contends that *all* of the $819.65 of interest that Great Lakes capitalized at the end of her B-9 Forbearance period was capitalized wrongfully—no matter how or when that interest had accrued—because under Department regulations B-9 Forbearance periods are "capitalization exceptions" that preclude the capitalizing of any interest whatsoever, whenever accrued. Dkt. 90, at 1–2, 6–7. This dispels much of the confusion and lack of clarity that existed previously.[3] But Dawson's clarified claims raise the question whether all of them belong in the same class.

---

[3] Contrary to defendants' assertion, this revised theory is not untimely raised because it is rooted in the allegations of the complaint, and is articulated in Dawson's opening brief in support of her renewed motion that was expressly invited by the court. *Cf. Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bbc (W.D. Wis. Mar. 11, 2013) (new legal theory developed for first time in class certification *reply brief* or *motion for reconsideration* came too late to be considered) (citing *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th

Again, the arguments that Great Lakes intends to raise in response to the different claims are not the same. In fact, Great Lakes appears to concede that it should not have capitalized interest in categories (1) and (3) identified above. As a result, the court will create subclasses for each of the three types of alleged errors. But Dawson says that Great Lakes made all three of the alleged errors when calculating her interest, so she can represent each of the subclasses.

With these changes, the court concludes that the class is defined clearly, using objective criteria, so it satisfies Rule 23.

## B. Numerosity and adequacy of class counsel

The court will briefly address two issues that are not in dispute: numerosity and adequacy of class counsel. As to numerosity, Dawson has submitted undisputed evidence that her proposed class of student loan borrowers includes hundreds of thousands of people. Thus, the court is satisfied that the class would be so numerous that joinder of all members would be wholly impracticable.

As to adequacy of class counsel, under Rule 23(g)(1), a court that certifies a class must appoint class counsel, taking into consideration "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class." In a declaration that accompanied Dawson's original motion for class certification, lead counsel averred that his firm, Finkelstein & Krinsk LLP, "is one of the longest-tenured class action

---

Cir. 2013)). Defendants here had more than ample notice and opportunity to respond.

litigation firm in California" and has been appointed class counsel in numerous other cases. Dkt 60. He attached a curriculum vitae, which shows both his and his firm's extensive experience. Dkt. 60-1. Counsel also averred that his firm is both willing and able to devote the necessary resources to this case. Great Lakes does not raise any objections to Finklestein & Krinsk. In accordance with Rule 23(g)(1), the court will appoint the firm to be class counsel in this case.

## C.  Adequacy of Dawson as a class representative and the typicality of her claims

Because Great Lakes' arguments about adequacy and typicality overlap substantially, the court will consider them together. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (noting that the adequacy and typicality requirements "tend [ ] to merge") (internal quotations and citations omitted). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. . . . [A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625–26 (internal quotation and citation omitted). Under the typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Dawson argues that her claims are typical of the class she proposes because they arise from the same course of conduct by defendant, "namely, treating B-9 Forbearances as Capitalization Events rather than Capitalization Exceptions in violation of [Department regulations]" and also that the claims are premised on the same legal theories, namely "RICO and negligence theories." Dkt. 90, at 32-33. And she says that she is an adequate class

representative because she has suffered the "same injury as absent Class members: daily interest charges accruing from Great Lakes' unlawful capitalization of B-9 Interest (any accrued interest) during the Class Period." Dkt. 90, at 39.

Great Lakes does not deny that Dawson's claims arise out of the same course of conduct as the rest of the class. And the court agrees that Dawson's contentions about the meaning and proper application of Department rules and regulatory guidance are typical of the putative class claims. Dkt. 119, at 30–31.

Great Lakes' objections about typicality and adequacy relate to Dawson's alleged injury. Specifically, Great Lakes says that Dawson is not an adequate class representative and her claims are not typical because she does not yet have any out-of-pocket expenses. Essentially, Great Lakes is picking up on Judge Crabb's concern that the alleged injury to Dawson (and to the proposed class) was too vague to warrant class certification because it was not clear whether Dawson had suffered any concrete financial loss by making any actual student loan payments in excess of the amount she lawfully owed. Dkt. 85, at 9-10. Great Lakes' argument has three components: (1) Dawson lacks constitutional standing to sue; (2) Dawson lacks "statutory standing" under RICO; and (3) Dawson's injury is not the same as other members of the class. The court will consider each issue in turn.

### 1. Constitutional standing

It is questionable whether standing has any bearing on a motion for class certification. Under Rule 23, the question is whether Dawson's injury is sufficiently similar to the injuries of the other class members. If Great Lakes believed Dawson did not suffer an injury, that would be an argument for a motion to dismiss, not a ground for denying class certification. *Eggen v. Westconsin Credit Union*, No. 14-cv-873, 2016 WL 797614, at *2 (W.D. Wis. Feb. 26, 2016).

But the court has an obligation to consider constitutional standing and the parties have thoroughly briefed the issue, so the court will consider it.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted)). To be "concrete," an injury cannot be "abstract," but rather must be "real" and "'de facto'; that is, it must actually exist." *Id.* (internal citation omitted). Although a concrete injury need not necessarily be tangible, "a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549).

Dawson contends that Great Lakes' capitalization of accrued interest on her account caused her to incur concrete financial obligations with predictable, real-world consequences. Dawson correctly points out that Great Lakes reported her debt obligations not only in account statements to her, but also to the Department of Education, the lender to whom she owed the debt. By capitalizing accrued interest and adding it to (growing) principal instead of keeping it in a segregated interest pool, Dawson has incurred increased interest charges, due to larger principal debt. Over time, this inflated the amount of total debt that both she and the Department believed she owed. This would be true even if capitalization were to occur anyway at some later date because, as Dawson rightly points out, "time is money" when it comes to interest and the earlier such capitalization is applied, the more powerful (or, for her, harmful) the compounding effect will be. Dkt. 90, at 5-6. In Dawson's case, the $819.65 of capitalized interest that was added to her principal account in November 2013 directly caused her to incur

daily interest charges that will total approximately $51 per year, which as of the date she filed her renewed motion added up to approximately $150. Dkt. 92, ¶ 4 (and attachments). This is not speculation, but arithmetic. That money constitutes an increasing debt that would not exist at all but for the capitalization of interest at the time and in the amount that occurred.

For Article III purposes, Dawson has shown a sufficiently concrete and particularized actual injury to establish constitutional standing. At bottom, this is not a case where "plaintiff asserts that one day she might be required to pay more than she owes." Dkt. 111, at 32. Rather, Dawson has shown that she already has been required to pay an increased level of interest that she contends is unlawful, and she seeks judicial intervention to prevent that financial injury from becoming realized and exacerbated. Great Lakes may dispute the reason for that increased debt obligation, and whether it is unlawful or improper, but Great Lakes cannot dispute that the increased debt "actually exist[s]." *Spokeo*, 136 S. Ct. at 1549.

### 2. Statutory standing

Great Lakes also contends that Dawson must (and has failed to) demonstrate injury under the additional prerequisites of statutory "RICO standing" and "prudential standing." *See* Dkt. 111, at 9-16, 25-26. But Great Lakes cites no authority suggesting that Dawson must make any further showing of actual injury beyond what she must do to establish Article III standing, at least initially. Beyond that jurisdictional requirement, any further conditions imposed by RICO or "prudential" considerations are not standalone "threshold" requirements at this stage in the litigation, as Great Lakes suggests. Prudential standing is not a jurisdictional issue, *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756–57 (7th Cir. 2008), so the question whether the class has suffered a ripe RICO injury is better addressed by the parties at summary judgment, along with other merits issues.

### 3. Dawson's injury as compared to others in the proposed class

Great Lakes says that Dawson's injury is not the same as other members of the proposed class because she has not (yet) been forced to make any increased payments:

> [Dawson] has continuously been in an income-driven repayment plan since interest was capitalized on her loan accounts in November 2013. (Brown Decl. ¶2.) This means that she has never made monthly payments based on a calculation that incorporated the amounts that she alleges were incorrectly capitalized. (*Id.*) Many, if not most, proposed class members do not share this aspect of the plaintiff's student loan history, yet [Dawson's] proposed class definition does nothing to take it into account.

Dkt. 111, at 27. In essence, Great Lakes argues, there is a dissonance between the financial injury that plaintiff has in fact suffered and the broader way in which she describes the injury that she and the class have in common: the general legal theories are the same, but the specific financial injury Dawson suffered is of a different nature from that suffered by many other class members who had their student loan accounts (and repayment plans) structured differently. [4]

The distinction between borrowers with income-driven repayment plans and those with standard debt-driven plans seems relatively unimportant. Dawson (like others on income-driven plans) has not seen her monthly *payments* increase, but as discussed above, her injury-in-fact stems from the increase in her total debt *obligation*. Class members on standard

---

[4] According to Dawson, the "evidence shows that nearly the entire Class—roughly 99.97% of the Class—has yet to pay more than they legitimately owe on their fraudulently inflated debt." Dkt. 119, at 23. But this figure is based on evidence that out of 362,305 proposed class members who suffered "B-9 interest" capitalization, "Great Lakes identified only 112 *paid-in-full* borrowers so far." *Id.* (emphasis added). That means that 0.03% of the class members have paid off their *entire student debt*. It says nothing at all about how many of those 99.97% of borrowers may be in standard repayment plans that have forced them to make increased payments as a result of capitalized interest—in marked contrast to borrowers, like Dawson, whose payments are instead tied solely to income (irrespective of interest capitalized and added to principal).

repayment plans would similarly share an increased financial obligation, but might *also* have had to pay some additional interest that those in Dawson's position did not. This issue has little to do with whether Dawson's claims are typical of the class members. Rather, it seems more related to the calculation of damages, as discussed in the Rule 23(b)(3) analysis below. For all that Great Lakes emphasizes known or potential distinctions in the various class members' account structures and statuses, Great Lakes does not explain how this bears on the types of claims or defenses that would be raised. To the contrary, those distinctions aside, Dawson has provided every indication that *every* class member's claim rests on allegations that Great Lakes fraudulently, recklessly, or negligently capitalized "B-9 interest" when that practice was prohibited by law or Department regulations, and Great Lakes' defense to those allegations is the same across the board.

Great Lakes raises another issue about adequacy, which is that it has already granted borrowers account credits to correct programming errors that were brought to its attention, and has made clear that it will do so again in the future if directed to by the Department of Education. Dkt. 65, at 40–41 and Dkt. 111, at 22–24. In other words, Dawson and some other similarly-situated borrowers have already received some non-judicial relief from Great Lakes directly, and more may be available if the Department sees fit to clarify its regulatory guidance in a way that validates Dawson's theory about Great Lakes' improper interest capitalization practices. In this situation, Dawson's "choice of litigation over" seeking direct redress of claims with Great Lakes and the Department fairly raises at least the question of her adequacy to represent the proposed class. *Doster Lighting, Inc. v. E-Conolight LLC*, 2015 WL 3776491, at *7– 8 (E.D. Wis. June 17, 2015) ("That Doster has chosen litigation rather than a remedy already available for replacement or refund and will abandon certain class members' claims such that

they may be barred from bringing them individually persuades the court that conflicts exist between Doster and some class members.") (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 750-52 (7th Cir. 2011)).

Great Lakes relies heavily on the Seventh Circuit's *Aqua Dots* decision to press this point. In that case, purchasers of a defective toy sought class certification to sue the toy makers, distributors, and retailers, even though the companies had already recalled the products and administered a refund program that was available for the plaintiffs and potential class members to participate in. *Aqua Dots*, 654 F.3d 748, 750–52. The court concluded that the proposed class action did not adequately protect the toy purchasers' interests because it offered only the prospect of "relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class." *Id.* at 752.[5] Great Lakes argues that this case presents a similar situation, because the class members may obtain student loan account credits (or other administrative relief) directly from Great Lakes or the Department, as appropriate.

Great Lakes' argument, however, overlooks or minimizes two crucial distinctions. In *Aqua Dots*, the plaintiffs were seeking purchase refunds and punitive damages, even though full refunds had already been offered and were presently available to the plaintiffs and any remaining purchasers who hadn't already claimed them. *Id.* at 750-52. By contrast, although Great Lakes has apparently already remedied its previous technical programming errors by

---

[5] The district court had denied class certification on the basis that a class action was not "superior" to other available adjudication methods. The court of appeals held that the rationale was mistaken under Rule 23(b)(3), but still affirmed the district court's decision denying class certification, holding that the better and more appropriate basis for the denial was lack of adequacy under Rule 23(a)(4). *Aqua Dots*, 654 F.3d at 752-53.

offering individuals account credits or offsets, it has *not* offered such direct administrative debt relief with respect to accounts affected by the capitalization of "B-9 interest." It *may* do so in the future if directed by the Department. But whether that capitalization practice involved anything improper that requires a remedy is a dispute at the very core of this case. In any event, unlike in *Aqua Dots*, Dawson's proposed class members do *not now* have a non-litigation remedy, currently available, that has already been offered by Great Lakes. Moreover, Dawson has brought claims under the RICO act, which would entitle the class members to treble damages if they prevail. 18 U.S.C. § 1964(c). Certainly, major questions remain whether Dawson could plausibly prove a RICO claim on the merits in this case, but that is not the question here. Dawson offers class members at least the prospect of treble damages, when they are not now entitled to any available relief. That is undoubtedly a "meaningful" benefit, the realization of which is dependent only on the merit of the claim. *Cf. In re Subway Footlong Sandwich Mktg. and Sales Practices Litig.*, 869 F.3d 551 (7th Cir. 2017) (reversing certification and approval of proposed class action settlement where proposal offered "zero" financial or other benefits for the class members).

Accordingly, Dawson has demonstrated sufficiently that she will fairly and adequately protect the interests of the class and that her claims are typical of the class.

**D. Commonality, predominance, and superiority**

Under the commonality requirement of Rule 23(a), "claims must depend upon a common contention that is capable of class-wide resolution," which "means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (citing *Wal-Mart*, 131 S. Ct. at 2551, and *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797

F.3d 426, 433-34 (7th Cir. 2015)). Under Rule 23(b)(3), the question is whether "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making this finding, relevant considerations include "the class members' interests in individually controlling the prosecution or defense of separate actions; . . . the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." *Id.* The court concludes that Dawson has met her burden to demonstrate commonality, predominance, and superiority.

There is no dispute that the court can resolve key questions related to liability across each subclass. Specifically, the court can determine whether Great Lakes violated the law when it capitalized interest (1) that accrued during the B-9 Forbearance period, (2) that accrued before the B-9 Forbearance period, (3) as a result of procedural or programming errors. Because resolving those issues would go a long way toward resolving the case, it makes sense to certify the class at least for the purpose of deciding liability. Particularly because no one class member is likely to have a large amount of damages, it is better to resolve as many issues as possible in a single suit. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Great Lakes does not develop an argument to the contrary.

The closest Great Lakes comes to raising an argument about differences in proving liability is that Dawson has not proven the element of causation necessary to support a RICO fraud claim as to the proposed class. Dkt 111, at 28–29. But Great Lakes does not point to any

Seventh Circuit or Supreme Court precedent holding that failure to prove causation with common evidence is alone grounds for denial of class certification. Rather, the court of appeals has rejected the view that "the existence of individual issues of causation automatically bars class certification under Rule 23(b)(3)." *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875-76 (7th Cir. 2015); *see also Suchanek*, 764 F.3d at 759 (concluding that district court committed "error of law" by denying class certification where district court's reason for denial was that "[t]he problem with the proposed class here is that showing reliance or causation—as required to establish liability—requires an investigation of each purchaser") (internal quotation marks omitted). When there are individual issues about causation and damages, a court may limit certification to the issue of liability. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). The court will turn to that issue now.

Great Lakes has raised important factual distinctions between individual and common injury—the proposed class representative's injury vs. the class members'—and questions that flow from there about appropriate individual vs. common relief. In addition to the issues already discussed, Great Lakes argues that Dawson has failed to provide a rigorous common damages model. Although Rule 23(b)(3) does not require her to show complete commonality of damages, it *does* require that "liability questions common to the class predominate over damages questions unique to class members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 43 (2013). The rule also requires plaintiffs to put forth a common methodology that has the ability to measure damages on a class-wide basis, without which "[q]uestions of individual damage

calculations will inevitably overwhelm questions common to the class." *Id.* at 1433; *see also Butler*, 727 F.3d at 799 ("*Comcast* holds that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide injury that the suit alleges."). Further, it is not enough that a plaintiff merely "*intend* to rely on common evidence and a single methodology to prove both injury and damages"; rather, at the class certification stage, "whether the evidence and the methodology are sound and convincing" is a critical part of the predominance inquiry, and the court must "investigate[] the realism of the plaintiffs' injury and damage model in light of the defendants' counterarguments." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014).

As Great Lakes emphasizes, Dawson has given somewhat short shrift to the common damages analysis. Dkt. 65, at 55–58 and Dkt. 111, at 29–30. She asserts that damages are "readily demonstrable on a Classwide basis" because Great Lakes itself can identify which borrowers had student loan interest capitalized improperly and in what amounts (as "a matter of pure mathematics"), and then "determine and rectify Classwide damages down to the penny for each affected borrower," or at least "readily and reliably estima[te those damages] on a Classwide basis." Dkt. 55, at 28–30; *see also* Dkt. 90, at 43. In other words, Dawson is at least partially "punting" on this issue, as Great Lakes puts it, and relying on Great Lakes to assist in figuring out the damages calculations at a later time in the litigation. Great Lakes, after all, undoubtedly is better positioned make those determinations mechanically and in terms of access to information.

Dawson asserts that the court "need not determine the existence or measure of the Class's RICO damages here, because whatever the answers to those issues are, they are common answers under Rule 23." Dkt. 90, at 34. Great Lakes counters that that view is misguided

because more detail is required now from the party with the burden to certify a class, under Supreme Court and Seventh Circuit precedent. *Comcast*, 133 S. Ct. at 1433-37; *Parko*, 739 F.3d at 1086; *Butler*, 727 F.3d at 799; *Messner*, 669 F.3d at 811.

The court will grant Dawson's motion to certify the class as to liability, but, at this point, Dawson has left too many questions unanswered to justify certifying damages issues. Once liability is resolved, Dawson may renew her motion to certify the damages issues or propose another alternative regarding the best method for resolving the remaining questions.

## E. Additional Filings

The court acknowledges the filings by the parties since the hearing. Great Lakes filed a notice informing the court that the Department of Education "finally gave direction on August 10, 2017, instructing [Great Lakes] to reverse the capitalization events at the end of such stand-alone B-9 forbearances." Dkt. 153. The court grants Dawson's motion for leave to respond (over Great Lakes' objection, Dkt. 158) and treats her response as filed. Dkt. 154; Dkt. 155. The court has reviewed these documents, as well as Dawson's other notices of supplemental authority. Dkt. 157; Dkt. 159. None of them change the court's analysis.

More recently, Dawson filed what she calls a "motion for pretrial conference and for 'corrective' notice." Dkt. 161. But the issues raised in that motion all relate to the fact that the court had not yet issued a decision on class certification. Now that the court has resolved the motion to certify the class, the court will deny the new motion as moot.

## F. Conclusion

To sum up, the court concludes the following: (1) Dawson has adequately shown at this stage of the case that she and the other class members suffered an injury sufficient to confer standing under Article III; (2) it is not necessary to resolve issues related to prudential or

statutory standing now; (3) the court will certify a liability class that excludes individuals who received "back-to-back" forbearances; (4) the court will certify subclasses for each of the three types of alleged capitalization errors at issue in this case; (4) the court will deny without prejudice Dawson's motion to certify damages issues; and (5) the court will appoint the law firm Finkelstein & Krinsk LLP as class counsel.

## G. Class notice

The only remaining issue is class notice. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members, regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. Fed. R. Civ. P. 23(c)(2)(B).

Dawson did not include a class notice with her motion for class certification. She did include a proposed notice with her "motion for pretrial conference and for 'corrective' notice, Dkt. 163-1, but she does not say whether she intended that to be an interim notice pending a decision on class certification. Accordingly, the court will give Dawson the opportunity to file a new notice or confirm that she wishes to use Docket 163-1. The court will also give Great Lakes an opportunity to raise objections to the notice.

ORDER

IT IS ORDERED that:

1. Plaintiff Meredith D. Dawson's renewed motion for class certification, Dkt. 89, is GRANTED as to liability issues and DENIED without prejudice as to damages issues.

2. The court certifies the following class:

> All persons who, between January 1, 2006 and the present: (i) were borrowers of a student loan issued under the Federal Family Education Loan Program ("FFEL" or "FFELP"), or of a student loan issued under the Federal Direct Loan Program ("Direct"); (ii) had their FFELP and/or Direct student loan(s) serviced by Great Lakes Educational Loan Services, Inc. or Great Lakes Higher Education Corporation (collectively, "Great Lakes"); (iii) had Great Lakes place their FFELP and/or Direct student loan(s) in an administrative forbearance status for a period of up to 60 days that is not immediately preceded by another forbearance, deferment, or grace period, concurrent with the processing of their application for a deferment, forbearance, consolidation loan, or change in repayment plan; _and_ (iv) had any amount of accrued interest capitalized at the end of the administrative forbearance period.

3. Included in the class are three subclasses of class members subjected to capitalization of the following types of interest: (a) interest that accrued during the B-9 Forbearance period; (b) interest that accrued before the B-9 Forbearance period; and (c) interest that Great Lakes capitalized procedural or programming errors,

4. The court appoints the law firm Finkelstein & Krinsk LLP as class counsel.

5. Dawson's motion for leave to file a response, Dkt. 154, is GRANTED.

6. Dawson's "motion for pretrial conference and for 'corrective' notice," Dkt. 161, is DENIED as moot.

7. Dawson may have until September 5, 2018, to file a proposed class notice or inform the court that she wishes to use Docket 163-1 as her proposed notice. Great Lakes

may have until September 12, 2018, to file any objections to the Dawson's proposed notice, along with its own proposed notice.

8. The clerk of court is directed to set a new scheduling conference with Magistrate Judge Stephen Crocker.

Entered August 28, 2018.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge