# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MEREDITH D. DAWSON, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., GREAT LAKES HIGHER EDUCATION CORPORATION, JILL LEITL, DAVID LENTZ, and MICHAEL WALKER,<br><br>    Defendants. | Case No. 15-cv-00475-jdp<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF UNPRODUCED CLASS MEMBER IDENTITIES, AND FOR CIVIL CONTEMPT SANCTIONS** |

Plaintiff Meredith Dawson and the Class hereby move the Court for an order compelling Defendants to produce all currently unproduced Class member identities to the class notice administrator ("KCC") within 10 days of the Court's decision on this motion.  Plaintiff and the Class further move for an order finding Defendant Great Lakes Educational Loan Services, Inc. ("GLELSI") in civil contempt of the Court's Order dated January 30, 2019 ("Class Production Order"), which directed GLELSI and the other Defendants to produce all Class members' contact information to KCC by February 5, 2019.  *See* Dkt. 197.  Plaintiff and the Class request that the Court impose monetary sanctions on GLELSI for the time and expenses necessary to correct GLELSI's ongoing violations of the Class Production Order.

## I.   INTRODUCTION

Rule 23 provides that after certifying a class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  *Id.*

On August 28, 2018, the Court certified a Class that included (in summary terms): all borrowers of FFELP or Direct student loans for whom GLELSI executed a standalone B-9 Forbearance capitalization between 2006 and the present.  *See generally* Dkt. 171.  The Court later fulfilled its duty under Rule 23(c)(2)(B), by ordering Plaintiff to disseminate individual notice to all identified Class members via a combination of U.S. mail and e-mail, using the Class member names and contact information provided to KCC by GLELSI.  *See generally* Dkt. 197.

The recently proven problem necessitating this motion is that GLELSI failed to produce to KCC the names and contact information of all Class "members who can be identified through

1

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). GLELSI's ongoing and unreasonable failure to produce many, identifiable Class member names and contact information is consequential for both Class members and the Court.

Currently pending before the Court is GLELSI's motion for summary judgment under Fed. R. Civ. P. 56(a). By its summary judgment motion (Dkt. 217), GLELSI seeks a final judgment on the merits of certified Class members' claims for damages and injunctive relief. However, before the Court can enter binding judgments for or against Class members, procedural due process requires that Class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[U]nlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option.") (citing Fed. R. Civ. P. 23(c)(2)(B)).

GLELSI's failure to produce all Class members' contact information to KCC was and remains unreasonable, in part because Plaintiff pinpointed, but Defendants denied, this exact failure in Requests for Admissions served months ago. Specifically, on April 30, 2019, Plaintiff adduced uncertain testimony from GLELSI about how it had searched its loan servicing database ("Database") to identify its purported 129,492 Class members. *See* Fed. R. Civ. P. 30(b)(6) Deposition of GLELSI ("Second GLELSI Deposition") (Dkt.227) at 69:5 – 74:17 (GLELSI's

Rule 30(b)(6) designee expressing uncertainty as to how GLELSI searched its Database to identify certified Class members). Shortly after GLELSI's uncertain testimony, Plaintiff served Defendants with the following Request for Admission on May 8, 2019.

> **REQUEST FOR ADMISSION NO. 2:** Admit that Defendants did not produce to the Notice Administrator, on or before February 5, 2019, the names and contact information of all certified Class members who: (1) had one or more Standalone B-9 Forbearance capitalization(s) occur during the Class Period; and (2) had all of their Standalone B-9 Forbearance capitalization(s) removed from their Account(s), after this Action commenced, by the [first] remediation project described in the Declaration of Tammy Kielhofer. *See* Dkt. 66, ¶32.

On, June 7, 2019, Defendants served Plaintiff with a response, denying this highly specific Request for Admission ("RFA"). In addition to their complete denial, Defendants explained:

> Great Lakes provided the Notice Administrator, on February 4, 2019, with the names and contact information of all certified Class members who had a Standalone B-9 Forbearance capitalization existing on their Account(s) *as of September 2015*. To identify all certified class members, Great Lakes scanned its database as it existed before the remediation project described in the Declaration of Tammy Kielhofer (*see* Dkt. 66, ¶32).

*See* Harris Decl., Ex. A at 3 (emphasis added). Plaintiff has now proven through documentary and testimonial evidence that Defendants' RFA response on June 7 was false and misleading. The true facts, detailed below, show that GLELSI failed to identify or produce "certified Class members who had a Standalone B-9 Forbearance capitalization existing on their Account(s) as of September 2015," but who then had all of their Standalone B-9 Forbearance capitalizations deleted from their Account histories *after* September 2015 (during the pendency of this case).

After Defendants' RFA denials, and during the summary judgment briefing period, Plaintiff began conducting reasonable due diligence regarding Defendants' RFA denials. Plaintiff propounded several document requests, including but not limited to requests for copies of the actual Database searches (or "scans") Defendants executed to identify Class members. On September 16, 2019, Defendants produced their relevant Database scan. Harris Decl., Ex. B

3

("Depo Ex. 96"). Then, on October 7, 2019, Plaintiff deposed Allen Werner, GLELSI's long-time "Ad Hoc and Specialty Reporting Coordinator," who wrote and executed the scan code GLELSI had used to search its Database for Standalone B-9 Forbearance capitalizations (*i.e.,* Class members). As detailed herein, Mr. Werner's October 7 testimony regarding his search shows that Defendants' denials of Plaintiff's RFA No. 2 were and remain false. There is a sizable group of Class members whose names and contact information GLELSI never looked for, let alone produced.

GLELSI's ongoing failure to produce all reasonably identifiable Class members' contact information — while seeking summary judgment against those Class members — violates due process, Fed. R. Civ. P. 23, and the Court's Class Production Order directing GLELSI to produce Class names and contact information. Dkt. 197. The Court must remedy GLELSI's ongoing failures by ordering GLELSI to conduct a reasonable search of its *previously unsearched* Database records, and to immediately produce all unproduced Class members' contact information to KCC. This is a non-discretionary duty of the Court, to facilitate the requisite Notice and provide all previously undisclosed Class members an opportunity to exclude themselves from the case.

In addition, due to the unreasonableness of GLELSI's conduct to date, Plaintiff requests that the Court find GLELSI in civil contempt of the Class Production Order (Dkt. 197), and impose the following monetary sanctions against Defendants: (1) the cost of disseminating a supplemental round of Class Notice to previously undisclosed Class members; and (2) all reasonable attorneys' fees and expenses the Class incurred in disproving Defendants' prior denial of RFA No 2. Class Counsel engaged in substantial meet-and-confer efforts, and made an alternative offer to Defendants, in a good-faith effort to avoid this motion. *See* Harris Decl., Ex.

4

C (October 14 meet-and-confer letter). Class Counsel's good-faith discovery and meet-and-confer efforts have not gotten Defendants to cooperate in promptly fixing the problem. *See* Harris Decl., Ex. E (October 25 email).

## II. STATEMENT OF RELEVANT FACTS

On October 7, Mr. Werner testified that the borrower population from the First Remediation Project (the "Remediation 1 population") consisted of borrowers who had a capitalization transaction that occurred within seven days after the end of their B-9 Forbearance periods. Werner Deposition at 11:23 – 17:18. Mr. Werner searched for B-9 Forbearance periods by searching the Database's Status History (SPHIS) table for codes FO-ICR, FO-IBR, and FO-DOCU, along with the dates when those codes were applied to borrowers' loans. *Id.* Mr. Werner then searched the Database for capitalization transactions by searching the Payment History table for transaction code "IC," and finding "ICs" occurring within 7 days after the end of a FO-ICR, FO-IBR, or FO-DOCU period. *Id.* As Ms. Kielhofer previously declared, this Remediation 1 population consisted of 346,577 unique borrowers who had one or more B-9 Forbearance capitalizations. Dkt. 66, ¶38. *This population, however, consisted of both Standalone and Back-to-Back B-9 Forbearance capitalizations*. *E.g.,* Second GLELSI Deposition (Dkt.227) at 71:22 -74:17.

In November 2017, Defendants endeavored to identify all Standalone B-9 Forbearance capitalizations in the Database as part of the Second Remediation Project (or "Remediation 2"). *Id.* Mr. Werner testified extensively about how exactly he identified Standalone B-9 Forbearance capitalizations and the associated loan accounts, and spent hours walking through his search code (Depo Ex. 96) with Class Counsel. *See generally* Werner Deposition at 37:2 –

5

41:12, 48:9 – 51:19, 68:4 – 118:16. Depo Ex. 96 is the Database "scan" that Mr. Werner ran to identify Standalone B-9 Forbearance capitalizations. *Id.*

One complication, at the outset of Mr. Werner's Database search, was that many of the B-9 Forbearance capitalizations he had found in September 2015 (before GLELSI executed "Remediation 1") *no longer existed on the database as of November 2017* (after GLELSI executed "Remediation 1"). *Id.* at 74:11–23, 105:13 – 107:6. Indeed, as illustrated by Plaintiff Dawson's own accounts, GLELSI's mid-lawsuit, First Remediation Project deleted from the Database many of the original, Standalone B-9 Forbearance capitalizations at issue in this case.[1]

Importantly, Mr. Werner testified that when scanning GLELSI's Database for B-9 Forbearance capitalizations in November 2017, he flagged B-9 Forbearance capitalizations *that were removed from the Database between September 2015 and November 2017* as "CAPGONE = Y[es]." Werner Deposition at 74:11-19, 105:13 – 106:9, 109:24 – 111:5, 113:21 – 114:6. He segregated those *deleted* B-9 Forbearance capitalizations into their own separate data file, which he named "OUTFILE4." *Id.* This "OUTFILE4" is simply a semi-colon delimited text file (convertible into a MS Excel spreadsheet) containing all B-9 Forbearance capitalization transactions that were deleted from the Database between September 2015 and November 2017. *Id.*; *see also id.* at 19:1 – 20:22.

Mr. Werner further testified that he identified and flagged *Standalone* B-9 Forbearance capitalizations from the Remediation 1 population as "VALIDCAP = N[o]," and that he flagged *Back-to-Back* B-9 Forbearance capitalizations from the Remediation 1 population as

---

[1] Plaintiff established this during the First GLELSI Deposition (Dkt. 53), which showed that the "Remediation 1" done on Plaintiff Dawson's accounts completely removed the Standalone B-9 Forbearance capitalizations on *two out of her three loan accounts*. *See, e.g.* Dkt. 53 at 54:21 – 55:13, 58:7:17.

6

"VALIDCAP = Y[es]." *Id.* at 111:11 – 112:8; Harris Decl., Ex. B at GL 0095834_0024 to _00025. *The problem is that Mr. Werner's OUTFILE4 did not do this for all B-9 Forbearance capitalizations that existed on the Database as of September 2015 (mid-lawsuit).*

> Q. Okay. So OUTFILE04 is not concerning itself [with] whether the cap is valid or not; right?
>
> A. No, it is not.
>
> Q. So OUTFILE04 may well include both valid or invalid caps?
>
> A. Yes, sir.

*Id.* at 7-12. *See also id.* at 116:24 – 117:6:

> Q. So when you gave [GLELSI executive] Tammy [Kielhofer] OUTFILE04, you were not giving her data that would allow her to conclude whether the caps contained in OUTFILE4 were valid or not; right?
>
> [Objection to form of the question]
>
> A. There was no – *I was not doing a validity check on them, no*.

(emphasis added).

Mr. Werner testified that his original, "CAPGONE" population of B-9 Forbearance capitalizations (saved in OUTFILE4) were neither flagged as Standalone B-9 Forbearance capitalizations (VALIDCAP=N[o]) nor flagged as Back-to-Back B-9 Forbearance capitalizations (VALIDCAP = Y[es]). *Id.* If any B-9 Forbearance capitalizations became deleted, "CAPGONEs" between September 2015 and November 2017 (mid-lawsuit), Mr. Werner simply followed Kielhofer's directions and ignored the question of whether it was a Standalone or Back-to-Back B-9 Forbearance capitalization *(i.e., whether the given capitalization was associated with a Class member)*. *See generally* Werner Deposition.

This was exactly the problem pinpointed by Plaintiff Dawson, and previously denied by Defendants, in connection with Plaintiff's RFA No. 2:

7

> **REQUEST FOR ADMISSION NO. 2:** Admit that Defendants did not produce to the Notice Administrator, on or before February 5, 2019, the names and contact information of all certified Class members who: (1) had one or more Standalone B-9 Forbearance capitalization(s) occur during the Class Period; and (2) had all of their Standalone B-9 Forbearance capitalization(s) removed from their Account(s), after this Action commenced, by the [first] remediation project described in the Declaration of Tammy Kielhofer.  *See* Dkt. 66, ¶32.

Yet Defendants served the Class with a denial, falsely stating that they identified all *Standalone B-9 Forbearances* existing on the Database as of September 2015.  Harris Decl., Ex. A.

Consequently, there exists today a sizable population of Class members — with identifying information contained in OUTFILE4 — whose identities GLELSI never searched for, ascertained, or produced in response to the Court's Class Production Order.  This procedural and substantive problem could well have been fixed in May or June of 2019, had Defendants and their counsel made any reasonable inquiry in response to Plaintiff's RFA No. 2, or provided a truthful response to RFA No. 2.  Instead, Class Counsel had to propound document discovery, review a host of complex Database code and other documents, fly out to Wisconsin to depose multiple witnesses, meet and confer some more, and file this motion and supporting papers: all to force GLELSI and its counsel to reasonably comply with the Class Production Order.

This should not be.  *See* Dkt. 197 at 4 ("A relatively straightforward matter such as producing contact information for the class should not take five months.").  Indeed, it should have been just as "straightforward" for Defendants to realize that after deleting thousands of B-9 Forbearance capitalizations mid-lawsuit (*see* Dkt. 66), they should have *searched* all deleted capitalizations to see if those had belonged to Class members.  But Defendants declined to do this.

### III. ARGUMENT

#### A. The Court Must Order GLELSI To Conduct A Reasonable Search And Produce All Missing "CAPGONE" Class Members' Identities To Facilitate Notice And A Reasonable Opportunity For Those Class Members To Opt Out.

Upon certifying a class under Fed. R. Civ. P. 23(b)(3), courts have a non-discretionary, constitutional and procedural duty to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the Court certified a Rule 23(b)(3) Class consisting of FFELP or Direct loan borrowers for whom GLELSI executed one or more Standalone B-9 Forbearance capitalizations during the Class Period (Dkt. 171), and ordered Defendants to produce all such Class members' identities to the Class Notice administrator, KCC, by February 5, 2019 (Dkt. 197).

Defendants have unreasonably failed to comply with the Court's Class Production Order for several months now. *See generally* Parts I and II, *supra*. Because of Defendants' failure to produce all Class members' names and contact information, KCC was unable to send any form of Class Notice to the unproduced Class members, or to process any of their opt-out requests, as ordered by the Court. Dkt. 197. Because many Class members were never sent any form of Notice, the Court cannot properly enter pre-trial or post-trial judgments for or against those currently unproduced, certified Class members. *See, e.g., Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Wal-Mart*, 564 U.S. at 362 ("[U]nlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the

9

circumstances' and to withdraw from the class at their option.") (citing Fed. R. Civ. P. 23(c)(2)(B)).

Thus, before entering any pre-trial or post-trial judgment(s) for or against unproduced Class members, the Court must again micro-manage these Defendants regarding Class Notice, by ordering them to identify and produce to KCC the names and contact information of *all Class members who have all of their original, Standalone B-9 Forbearance capitalizations recorded in the "CAPGONE" data file created by Mr. Werner in November 2017* (namely, "OUTFILE4"). Defendants can reasonably identify all CAPGONE Class members, whose identities were not previously produced to KCC, by taking the data from OUTFILE4 (which identifies all the original, CAPGONE capitalizations), and running the same "VALIDCAP" inquiry Werner previously ran in the Database to determine whether the B-9 Forbearances that preceded those capitalizations were "Standalones" or "Back-to-Backs."

This is not a discretionary duty of the Court. It is a non-discretionary, due process obligation of the Court to direct a supplemental round of Class Notice to those members who were never sent notice of in this action. Fed. R. Civ. P. 23(c)(2)(B). Moreover, none of Plaintiff, the Class or Class Counsel should have to pay for this supplemental round of Class Notice.

### B. Civil Contempt Sanctions Are Warranted To Require Defendants To Pay For The Requisite, Supplemental Round Of Class Notice.

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Local 702 Int'l Brotherhood of Elec. Workers v. Ill. Consol. Telephone Co.*, 608 F.Supp2d 1031, 1034 (S.D. Ill. 2008) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). To hold a party in civil contempt, the court "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party or witness

in contempt violated." *Lincoln Elec. Co*, 188 F.3d at 738 (internal quotes and citations omitted). "[A]ny sanction imposed by the court must be predicated on a violation of an explicit court order." *Id.*

As required by Fed. R. Civ. P. 23(c), this Court entered an "explicit" order on January 30, 2019, requiring GLELSI to "produce class contact information" to KCC on or before February 5, 2019. *See* Dkt. 197 at 4-5 ("A relatively straightforward matter such as producing contact information for the class should not take five months."). Shortly after some uncertain deposition testimony by GLELSI regarding its identification of Class members[2], Plaintiff asked Defendants to admit that they had failed to produce the names and contact information of Class members who "had all of their Standalone B-9 Forbearance capitalization(s) removed from their Account(s), after this Action commenced, by the [first] remediation project described in the Declaration of Tammy Kielhofer." Harris Decl., Ex. A. More generally, Plaintiff requested that Defendants admit to their failure to produce all Class contact information to KCC, and admit to the fact that there are more than 129,492 certified Class members. *Id.* Defendants denied all of these Requests for Admissions, including Plaintiff's extremely precise RFA No. 2. *Id.*

After much due diligence, Plaintiff has now shown that Defendants — during the pendency of this action — deleted from their Database tables numerous B-9 Forbearance capitalizations (the "CAPGONE" capitalizations) without so much as *checking* to see whether those deleted capitalizations corresponded to Standalone B-9 Forbearances (Class members) or Back-to-Back B-9 Forbearances (non-Class members). *See* Werner Deposition at 114:7-12:

---

[2] *See* Fed. R. Civ. P. 30(b)(6) Deposition of GLELSI (Dkt.227) ("Second GLELSI Deposition") at 69:5 – 74:17 (GLELSI's Rule 30(b)(6) designee expressing uncertainty as to exactly how GLELSI searched its database to identify certified Class members).

11

> Q. Okay. So OUTFILE04 is not concerning itself [with] whether the cap is valid or not; right?
>
> A. No, it is not.
>
> Q. So OUTFILE04 may well include both valid or invalid caps?
>
> A. Yes, sir.

*See also id.* at 116:24 – 117:6:

> Q. So when you gave [GLELSI executive] Tammy [Kielhofer] OUTFILE04, you were not giving her data that would allow her to conclude whether the caps contained in OUTFILE4 were valid or not; right?
>
> [Objection to form of the question]
>
> A. There was no – I was not doing a validity check on them, no.

As of today, GLELSI is still sitting on a large data file (OUTFILE4) filled with original B-9 Forbearance capitalizations, which Defendant deleted mid-lawsuit, but which Defendants declined to flag as "Standalone" B-9 Forbearance capitalizations ("VALIDCAP = 'N[o]'") or "Back-to-Back" B-9 Forbearance capitalizations ("VALIDCAP = 'Y[es]'").

Particularly after receiving Plaintiff's RFA No. 2 in May 2019, Defendants could have and should have made reasonable efforts to identify all CAPGONE Class members, whose identities were not previously produced to KCC. Defendants could have done this with reasonable effort by taking the capitalization data from OUTFILE4 (which identifies all the original, CAPGONE capitalizations), and running the same "VALIDCAP" inquiry that Werner ran on B-9 Forbearance capitalizations that were still *live* on the Database as of November 2017. *See* Werner Deposition at 53:4 – 55:5. Such a "reasonable effort" was always required by Fed. R. Civ. P. 23(c), and by the Court's Class Production Order thereunder. *See* Dkt. 197. Yet GLELSI, even after Plaintiff's RFA No. 2, affirmatively declined to conduct a reasonable search

for all Class member identities, by declining to search OUTFILE4 (the "CAPGONEs") for Standalone B-9 Forbearance capitalizations that were live on the Database during this lawsuit.

The totality of circumstances here warrants a finding of civil contempt. *E.g., Select Creations, Inc. v. Paliafito America, Inc.*, 906 F.Supp. 1251, 1271-72 (E.D. Wis. 1995) ("[A] district court ordinarily does not have to find that the violation was 'willful' to find a party in civil contempt . . . and it may find a party in civil contempt if he has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'") (collecting cases). The Court should thus sanction GLELSI by ordering it to pay: (1) the costs and expenses of administering a supplemental round of Class Notices and exclusion requests to all unproduced Class members; and (2) the attorneys' fees and expenses incurred by the Class to discover and prove Defendants' lack of compliance with the Class Production Order. *Jones,* 188 F.3d at 738 ("Civil contempt proceedings are coercive and remedial, but not punitive, in nature and sanctions for civil contempt are designed to compel the contemnor into compliance with an existing order or to compensate the complainant for losses sustained as a result of the contumacy.").

Even if the Court declines to find Defendants in civil contempt of the Class Production Order, there is another, independent legal basis for sanctioning these Defendants here.

### C. Sanctions For Defendants' False And Misleading RFA Denials Are Warranted Under Fed. R. Civ. P. 37(c)(2).

"If a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2).

Here, Plaintiff served her RFAs (Set One) in May 2019, including Plaintiff's RFA No. 2, which stated:

> **REQUEST FOR ADMISSION NO. 2:** Admit that Defendants did not produce to the Notice Administrator, on or before February 5, 2019, the names and contact information of all certified Class members who: (1) had one or more Standalone B-9 Forbearance capitalization(s) occur during the Class Period; and (2) had all of their Standalone B-9 Forbearance capitalization(s) removed from their Account(s), after this Action commenced, by the [first] remediation project described in the Declaration of Tammy Kielhofer. *See* Dkt. 66, ¶32.

In June 2019, Defendants responded with a complete denial, plus the following explanation:

> Great Lakes provided the Notice Administrator, on February 4, 2019, with the names and contact information of all certified Class members who had a Standalone B-9 Forbearance capitalization existing on their Account(s) *as of September 2015*. To identify all certified class members, Great Lakes scanned its database as it existed before the remediation project described in the Declaration of Tammy Kielhofer (*see* Dkt. 66, ¶32).

Harris Decl., Ex. A at 3 (emphasis added). Defendants' RFA responses were materially false and misleading when served. The true facts are that GLELSI did not even identify (much less produce) "certified Class members who had a Standalone B-9 Forbearance capitalization existing on their Account(s) as of September 2015," but who then had all of their Standalone B-9 Forbearance capitalizations *deleted from their account histories in the middle of this lawsuit*. *E.g.,* Werner Deposition at 114:7-12, 116:24 – 117:6. Plaintiff's counsel had to do a large amount of work to conduct due diligence on, and ultimately prove the falsity of, Defendants' RFA denials. This included conducting complex document discovery, meet-and-confer efforts, flying out to Wisconsin to take multiple depositions, engaging in further meet-and-confer efforts, and subsequently preparing and litigating the instant motion.

Therefore, "[t]he court must" order the Defendants "who failed to admit [to] pay the reasonable expenses, including attorneys' fees, incurred" in disproving Defendants' RFA denials. Fed. R. Civ. P. 37(c)(2). The Court "must" so order unless:

   (A) the RFA was held objectionable under Rule 36(a);

   (B) the RFA was of no substantial importance;

14

    (C) the party failing to admit had reasonable ground to believe that it might prevail on the matter; or

    (D) there was other good reason for the failure to admit.

*Id*. In the current situation, none of these exceptions apply. First, Plaintiff's relevant RFAs were not objected to, much less "held objectionable." Second, properly identifying and notifying Class members of this action, and affording them an opportunity to opt out, is of "substantial importance" because it is a matter of procedural due process.

    Third, Defendants had no discernible, "reasonable ground" for falsely denying Plaintiff's RFAs, especially the highly specific RFA No. 2. If Class Counsel was able to analyze GLELSI's searches for Class members, and depose the GLELSI employee who conducted the searches to get the truth, then there is no reason why GLELSI's in-house counsel or counsel of record could not have conducted the same inquiry by talking to the GLELSI employee who conducted the searches. Defendants' counsel, like their clients, have abrogated their basic duties here. Fourth, there is no "other good reason" for Defendants' failure to admit. Defendants declined to search a large data file — containing B-9 Forbearance capitalizations that Defendants deleted mid-lawsuit — to inquire whether *any* of those deleted B-9 Forbearance capitalizations were Standalone B-9 Forbearance capitalizations (*i.e.,* Class member capitalizations).

    There is simply no "good reason" for altering or deleting putative class members' relevant financial transactions mid-lawsuit, and then completely ignoring those transactions when it comes time to identify class members. There may be "reasons" why Defendants did this, but none of them are "good." Fed. R. Civ. P. 37(c)(2)(D).

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff and the Class hereby request that the Court order Defendants to produce all unproduced Class member identities to the Class Notice administrator ("KCC") within 10 days of the Court's order on this motion. Plaintiff and the Class further request an order finding Defendant GLELSI in civil contempt of the Court's Class Production Order dated January 30, 2019, which directed GLELSI and Defendants to produce all Class members' contact information to KCC by February 5, 2019. *See* Dkt. 197. Plaintiff and the Class also request that the Court impose monetary sanctions on GLELSI for the significant time and expenses necessary to correct GLELSI's violations of the Court's Production Order.

If in response to this motion, GLELSI raises a new factual dispute asserting that it did *not* fail to produce "CAPGONE" Class members, Plaintiff would request an evidentiary hearing at which the Court should receive evidence and testimony from competent witnesses before resolving such a factual dispute.

                                              Respectfully submitted,

                                              FINKELSTEIN & KRINSK LLP

Dated: October 25, 2019                          By:    s/ David J. Harris, Jr.
                                                            David J. Harris, Jr., Esq.

                                              Jeffrey R. Krinsk, Esq.
                                              Trenton R. Kashima, Esq.
                                              550 West C Street, Suite 1760
                                              San Diego, California 92101-3579
                                              Telephone: (619) 238-1333
                                              Facsimile: (619) 238-5425

                                              *Counsel for Plaintiff and the Class*