IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON, individually and on behalf
of all others similarly situated,

                Plaintiff,

  v.                                          OPINION and ORDER

GREAT LAKES EDUCATIONAL LOAN SERVICES,
INC., GREAT LAKES HIGHER EDUCATION             15-cv-475-jdp
CORPORATION, JILL LEITL, DAVID LENTZ, and
MICHAEL WALKER,

                Defendants.

---

Plaintiff Meredith Dawson is proceeding on behalf of a class on claims that two affiliated student loan servicing companies and three company officials fraudulently and negligently inflated the amount owed on student loans, in violation of both the Racketeer Influenced and Corrupt Organizations Act and state law. Defendants' motion for summary judgment is fully briefed, but Dawson has more recently filed a motion that complicates the resolution of the merits of her claims. Specifically, Dawson alleges that defendants failed to disclose the identities and contact information of thousands of class members, who haven't received notice of this case. Dawson asks the court to compel defendants to provide the requested information, find defendants in civil contempt, and award sanctions under Federal Rule of Civil Procedure 37. *See* Dkt. 280.

In their opposition brief, defendants represent that they have now provided Dawson's class administrator with the names and contact information of all the individuals in dispute. Dkt. 285, at 19. Dawson doesn't dispute that representation in her reply brief, so I will assume that Dawson's motion to compel is moot. The remaining questions are whether defendants

should be sanctioned and what implications the delay in identifying these class members has on the case schedule.

The court concludes that Dawson is entitled to sanctions because defendants violated a clear court order to provide contact information for all class members and because defendants don't have a good reason for later denying a request for admission aimed at determining whether defendants had provided that information. And because of the significant delay caused by the need to conduct another round of class notice, the current schedule is no longer feasible. The court will strike the deadlines and set new ones if necessary, after resolving the motion for summary judgment.

There is one other motion before the court, which is Dawson's unopposed motion to appoint additional class counsel. Dkt. 269. Because the court is persuaded that appointment is appropriate under Federal Rule of Civil Procedure 23(g)(1), the court will grant the motion.

ANALYSIS

Dawson is seeking sanctions against defendants on two grounds. First, Dawson says that the court should find defendants in civil contempt because they failed to comply with the court's order to provide contact information for all the class members in this case. Second, Dawson says that sanctions are appropriate under Rule 37(c)(2) because defendants had no basis for denying a request for admission about who received class notice. For relief, Dawson asks for: (1) the cost of providing notice to the recently identified class members; and (2) attorney fees and expenses incurred in disproving defendants' denial to the request for admission.

## A. Civil contempt

Dawson must show the following things by clear and convincing evidence to obtain a finding of civil contempt against defendants: (1) defendants violated an "unambiguous command" in a court order; (2) defendants' violation was significant, meaning that defendants did not substantially comply with the order; and (3) defendants failed to make a reasonable and diligent effort to comply. *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015).

Dawson contends that defendants violated the court's orders granting class certification and directing defendants to provide contact information for the class. In the certification order, the court certified a class of individuals who received student loans from defendants and then received what is called "B-9 forbearance" status, which means that the borrower's payment obligations were suspended while they were in that status.[1] The class claims rest on the view

---

[1] The court certified the following class:

> All persons who, between January 1, 2006 and the present: (i) were borrowers of a student loan issued under the Federal Family Education Loan Program ("FFEL" or "FFELP"), or of a student loan issued under the Federal Direct Loan Program ("Direct"); (ii) had their FFELP and/or Direct student loan(s) serviced by Great Lakes Educational Loan Services, Inc. or Great Lakes Higher Education Corporation (collectively, "Great Lakes"); (iii) had Great Lakes place their FFELP and/or Direct student loan(s) in an administrative forbearance status for a period of up to 60 days that is not immediately preceded by another forbearance, deferment, or grace period, concurrent with the processing of their application for a deferment, forbearance, consolidation loan, or change in repayment plan; and (iv) had any amount of accrued interest capitalized at the end of the administrative forbearance period.

Dkt. 171, at 24.

that defendants violated the law when they capitalized interest on the loans at the end of the forbearance period. After certifying the class, the court ordered defendants to produce contact information for all the class members. Dkt. 197, at 5.

Dawson contends that defendants violated the court's orders by failing to provide the class administrator with the contact information of more than 7,000 individuals who fall within the class. Specifically, Dawson points to individuals whose interest was capitalized as the result of "procedural and programming" errors. The class certification order includes three subclasses, one of which was individuals whose interest was capitalized as a result of procedural or programming errors. Dkt. 171, at 24.[2]

Defendants don't deny that they failed to provide the class administrator with contact information for the individuals described above, which the court will refer to as the omitted borrowers. But defendants contend that it wasn't clear whether such individuals were included in the class, for two reasons. Defendants' first argument relies on the last requirement of the class definition, which limits the class to those who "had any amount of accrued interest capitalized at the end of the administrative forbearance period." Defendants argue that the omitted borrowers do not meet that requirement because, at the time the court issued the class definition, defendants had "fix[ed]" the programming errors, so the omitted borrowers "did not have 'any amount of accrued interest capitalized' on their student-loan accounts." Dkt. 285, at 14.

---

[2] The other two subclasses were individuals who were subjected to capitalization of interest that accrued during the B-9 Forbearance period and interest that accrued before the B-9 Forbearance period. Dkt. 171, at 24.

This argument has no merit. As an initial matter, the class included "[a]ll persons who, *between January 1, 2006 and the present . . . had* any amount of accrued interest capitalized at the end of the administrative forbearance period." Dkt, 171, at 24 (emphasis added). The certification order didn't grant defendants permission to exclude individuals from the class if, in defendants' own judgment, defendants had remedied the harm at some later time. And if the broad class definition left any room for doubt, the subclasses described in the order—which included individuals subjected to programming errors—made it clear that the omitted borrowers were part of the class. In fact, the court expressly considered and rejected defendants' arguments that a class shouldn't be certified because defendants had "already granted borrowers account credits to correct programming errors." Dkt. 171, at 16. The court reasoned that, even if defendants had remedied the programming errors, that would not moot these borrowers' RICO claims (which allow for treble damages), and any arguments about the merits of a RICO claim belonged in a dispositive motion, not a motion for class certification. *Id.* at 18. Thus, there is simply no basis for reading the class certification order as excluding the omitted borrowers from the class.

Defendants' second argument relies on Judge Crabb's order that denied Dawson's first motion for class certification. Dkt. 85. Specifically, defendants point out that Judge Crabb declined to certify a class of borrowers who had been subjected to programming errors because their claims were "too far removed from the claims plaintiff alleged." *Id.* at 9. But defendants have failed to explain why they believe the order denying Dawson's first motion for class certification has any bearing on the scope of the case. Judge Crabb denied the class certification motion without prejudice and gave Dawson an opportunity to try again. Shortly thereafter, the case was reassigned to this court, which held an oral argument on Dawson's renewed motion

for class certification. Dkt. 147. Ultimately, the court concluded that certification of the class and subclasses described above was appropriate. And the court considered and expressly rejected defendants' arguments about excluding the omitted borrowers from the class. Defendants haven't cited any principle regarding the law of the case that would have required this court to adopt Judge Crabb's previous conclusion or that would have incorporated preliminary rulings into a court's later order on class certification. And even if there were such a rule, defendants don't explain why, if they believed the court's order was inconsistent with a previous order, they didn't ask for reconsideration, instead of simply disregarding the order certifying a subclass related to the programming errors. Even now, defendants don't ask for reconsideration; instead, they have raised the white flag by providing plaintiffs with the contact information of the omitted borrowers.

So the court concludes that defendants clearly violated an unambiguous court order when they failed to provide contact information for the omitted borrowers. That violation was significant because it prevented thousands of class members from receiving notice.

Defendants offer two reasons why they believe they made "a reasonable and diligent effort to comply" the court's order: (1) they provided contact information for 129,000 other class members; and (2) they provided the contact information of the omitted borrowers after Dawson filed this motion. Neither reason is persuasive.

Defendants' first reason is simply irrelevant to the question whether defendants made a reasonable and diligent effort. Defendants admit that they made *no* effort to comply with the portion of the court's order that required them to provide contact information for the omitted borrowers. Defendants' observation that they provided contact information for other class members relates to another element, which is whether defendants substantially complied with

6

the court's order. Because it is undisputed that defendants failed to provide contact information for more than 7,000 class members, the court isn't persuaded that defendants' efforts qualify as substantial compliance.

Defendants' second reason—that they provided contact information after Dawson filed this motion—is also irrelevant. The question is whether defendants complied with the court's order, not whether defendants responded promptly to a motion filed by the plaintiff. Defendants don't explain how providing the information when they did eliminated or diminished the prejudice to Dawson.

Dawson has shown by clear and convincing evidence that she is entitled to sanctions against defendants for civil contempt. Dawson asks that defendants be required to pay for the costs of sending a second round of notice. Defendants object, saying that Dawson would have to pay for notice to the omitted borrowers, regardless when the notice occurred. Dawson admits that some of the costs would be the same but says that she "would not have needed to pay for two full rounds of data analysis and validation by KCC [the class administrator], two full rounds of KCC Call Center services, two full rounds of opt-out processing, plus additional hourly fees from KCC as its employees work with Class Counsel to manage 'Round Two' of Class Notice." Dkt. 288, at 11. So the court will grant this aspect of Dawson's request for sanctions but will only award costs that she would have avoided had defendants complied with the court's orders. When submitting her itemization of costs, she should explain why those costs duplicate previous efforts and provide any evidence she has to support her explanation.

**B. Discovery sanctions**

Dawson also contends that she is entitled to sanctions under Federal Rule of Civil Procedure 37(c)(2), which states:

7

> Failure to Admit. If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);
>
> (B) the admission sought was of no substantial importance;
>
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D) there was other good reason for the failure to admit.

Dawson says that she is entitled to sanctions under Rule 37 because defendants denied the following request for admission about which class members received notice:

> REQUEST FOR ADMISSION NO. 2: Admit that Defendants did not produce to the Notice Administrator, on or before February 5, 2019, the names and contact information of all certified Class members who: (1) had one or more Standalone B-9 Forbearance capitalization(s) occur during the Class Period; and (2) had all of their Standalone B-9 Forbearance capitalization(s) removed from their Account(s), after this Action commenced, by the remediation project described in the Declaration of Tammy Kielhofer.

Dkt. 66, ¶ 32.

Defendants don't deny that they should have admitted Request No. 2. At this point, there is no dispute that: (1) "the remediation project" identified in the Request was the process by which defendants addressed the programming errors that gave rise to the subclass at issue in Dawson's motion; and (2) defendants didn't provide the class administrator with contact information for that subclass.

Defendants say that their denial was nevertheless reasonable because Dawson "never mentioned the[] CAPGONE borrowers." Dkt. 285, at 18. But CAPGONE is simply the name

8

that defendants gave the electronic file that listed "those capitalization transactions that no longer existed on [defendants'] live system." Dkt. 285, at 6. Defendants identify no way that Dawson would have known the names that defendants gave their files or why defendants needed the name of the file to determine whether they had provided the contact information for a subset of class members.

Defendants also say that Request No. 2 was "broadly worded, somewhat cryptic, and tendentious—asking Defendants to admit that they had violated the Court's order to produce class-member names and contact information to KCC." *Id.* at 18. But defendants don't explain what was confusing about Request No. 2. And if the request was "tendentious" because it asked defendants to admit that they were violating the court's orders, defendants cannot complain. After all, defendants *were* violating the court's orders. And even if defendants were concerned about admitting wrongful conduct, that is not an excuse to deny a fact that was clearly true. Defendants haven't identified a good reason for failing to admit the facts in the request.

So the court is persuaded that Dawson is entitled to sanctions under Rule 37(c)(2) as well. In accordance with the rule, Dawson may seek "reasonable expenses, including attorney's fees, incurred in" proving that the facts in Request No. 2 are true.

## C. Case schedule

The remaining question is what effect the second round of notice will have on the case schedule. As Dawson observes, the court can't resolve the pending motion for summary judgment before the class members receive notice and have an opportunity to opt out. Dkt. 281, at 3 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)). And the scope of the summary judgment motion could change in light of the additional class members because there are

9

substantial differences between their claims and the claims of the other class members, which is why the court created a separate subclass.

Although Dawson now has the contact information for all the class members, her counsel says that they haven't sent out another round of notices yet, choosing instead to wait for the court's ruling. Dkt. 288, at 10. Counsel doesn't say how much time they will need to prepare the notices and send them out, but the first round took two weeks after defendants provided the contact information, Dkt. 198, so the court will assume that it will take two weeks this time as well. And the court generally allows potential class members 45 days to opt out of a class. Because that takes us beyond the deadline for filing pretrial submissions, it appears that the current case schedule is no longer feasible. So the court will strike the remaining deadlines, deny the pending motion for summary judgment without prejudice, and set new deadlines for disseminating class notice, opting out, and filing renewed motions for summary judgment. If both sides believe that no changes to the summary judgment filings are needed, they may ask the court to rely solely on the original filings.

**D. Appointment of co-class counsel**

There is one other matter before the court. Plaintiffs have filed a motion under Federal Rule of Civil Procedure 23(g) to appoint Robert Gingras and Paul Kinne of Gingras, Thomsen & Wachs and Michael J. Modl and Heath P. Straka of Axley Brynelson, LLP as co-class counsel. Dkt. 269. (The court appointed the law firm Finklestein & Krinsk LLP as class counsel in the order granting Dawson's motion for class certification. Dkt. 171, at 24.) Defendants do not oppose the motion.

The lawyers identified above have already filed notices of appearance with the court. Dkts. 209–10 and 212–13. And they have submitted declarations showing that they have

significant experience in litigating class actions and have the necessary resources to litigate the case. Dkts. 270–73. No party has identified any potential conflicts. The court is persuaded that the factors in Rule 23(g)(1) support the appointment, so the court will grant the motion but with one caveat. Now that there are three law firms representing the class, class counsel will need to take great care in avoiding redundant work and other inefficiencies that can be the result of adding more lawyers to litigation. The court will consider that issue when reviewing any fee petitions filed at the conclusion of the case. *See Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.,* 574 F.3d 852, 858 (7th Cir. 2009) ("Though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." (citations omitted)).

ORDER

IT IS ORDERED that

1. Plaintiff Meredith Dawson's motion to appoint Robert Gingras and Paul Kinne of Gingras, Thomsen & Wachs and Michael J. Modl and Heath P. Straka of Axley Brynelson, LLP as co-class counsel, Dkt. 269, is GRANTED.

2. Dawson's motion to compel, Dkt. 280, is DENIED as moot.

3. Dawson's motion for civil contempt sanctions and for sanctions under Rule 37, Dkt. 280, is GRANTED.

4. Dawson may have until December 19, 2019, to disseminate class notice to the additional class members. Dawson should allow class members 45 days to opt out of the class.

5. Dawson may have December 30, 2019, to submit an itemized request for fees, costs, expenses, as described in this order. Dawson should follow this court's guidelines for filing fee petitions. *See* Dkt. 182. The court will not grant Dawson's petition unless she shows in her motion that she made reasonable efforts to reach an agreement with defendants on a reasonable amount of fees, costs, and expenses.

6. Defendants' motion for summary judgment, Dkt. 217, and Dawson's motion to strike defendants' supplemental proposed findings of fact, Dkt. 267, are DENIED without prejudice. The parties may have until February 15, 2020, to file renewed motions for summary judgment.

7. The trial date and all remaining deadlines are STRUCK. If necessary, the court will set a new trial date after resolving any motions for summary judgment.

Entered December 5, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge
