**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MEREDITH D. DAWSON, Individually and On Behalf of All Others Similarly Situated, | Case No. 15-cv-00475-jdp |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF THE CLASS'S MOTION FOR PARTIAL RECONSIDERATION OF THE CIVIL CONTEMPT ORDER** |
| GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., GREAT LAKES HIGHER EDUCATION CORPORATION, JILL LEITL, DAVID LENTZ, and MICHAEL WALKER, | |
| Defendants. | |

# TABLE OF CONTENTS

I.      Introduction And Summary Of Argument ................................................................................1

II.     Relevant Procedural History ................................................................................................7

III.    "CAPGONE" Class Members Are Not A "Separate Subclass" ...............................................12

IV.     The Contempt Order Results In Unnecessary And Unfair Prejudice Against The  Class
        Under The Circumstances Of This Case..................................................................................14

        A.      The Contempt Order Overlooks Defendants' Failures To Carry Their Burden On
                The Existing Motion for Summary Judgment. ............................................................14

        B.      Permitting Defendants To File A Renewed Motion Facilitates Defendants'
                Standing Violations Of The Court's Summary Judgment Procedures. ........................16

        C.      Permitting Renewed Motions For Summary Judgment Is Not In Line With Rule 1
                Under The Circumstances Of This Case......................................................................18

        D.      By Its Terms, The Contempt Order Ultimately Invites A Procedural Free-For-All
                That Is Generally Undesirable. ...................................................................................19

V.      Conclusion ......................................................................................................................20

Plaintiff Meredith Dawson and the Class respectfully move for partial reconsideration of the Court's Opinion & Order dated December 5, 2019. *See generally* Dkt. 295 ("Contempt Order"). Specifically, Plaintiff and the Class request reconsideration of the Court's decision to permit "renewed" briefing and evidence on Defendants' motion for summary judgment (Dkt. 217), and the Court's attendant denial as "moot" of Plaintiff's motion to strike (Dkt. 267). *See generally* Contempt Order at 9-12. Plaintiff and the Class also respectfully seek reconsideration of the Court's decision to stay all trial and pretrial deadlines indefinitely.

I.      **Introduction And Summary Of Argument**

The Court recently acknowledged the "unfair advantage" that would result from allowing Defendants to introduce new facts and evidence into the summary judgment record, after the Class opposed summary judgment. *See* Order on Motion for Leave to File Proposed Findings of Fact (Dkt. 242) at 2 ("To avoid giving defendants an unfair advantage, defendants' proposed findings of fact should be limited to facts discussed in their opening brief."). By its terms, however, the Contempt Order purports to give Defendants similar, "unfair advantages" that are even more one-sided than those the Court previously prohibited. Such unfair results ultimately flow from a clear and simple mistake of undisputed fact.

The Contempt Order purports to allow Defendants to file a "renewed motion for summary judgment," without a judicial decision on the existing motion. The Court reasoned that "the scope of the summary judgment motion could change in light of the additional class members because there are substantial differences between their claims and the claims of other class members, which is why the court created a separate subclass." Contempt Order at 9-10. The Class respectfully submits that this reasoning is contradicted by the Court's Certification Order (Dkt. 171), as well as the undisputed evidence contained in the parties' summary judgment submissions.

1

The newly labeled "CAPGONE" Class members do not constitute a "separate subclass," as stated in the Contempt Order.  Rather, the evidentiary record reflects that *every* Class member is a member of the same "programming errors subclass" as CAPGONE Class members.[1]  Thus, when the parties briefed summary judgment, they fully addressed Defendants' counter-alleged "programming errors" and the purported "First Remediation Project," which Defendants say "remedied" those programming errors.[2]  Even if newly labeled "CAPGONEs" were somehow a "separate subclass" (and they definitely are not), the Court has long held that Plaintiff is a proper Class Representative for every subclass.  Certification Order (Dkt. 171) at 2 ("Because Dawson alleges that Great Lakes subjected her to all three kinds of errors, *she may serve as the class representative for each subclass*.") (emphasis added).

Not only are Plaintiff and "CAPGONEs" members of the same subclasses (plural), it is additionally undisputed that two out of Plaintiff's three loan accounts are "CAPGONE" accounts.[3]  Thus, there have never been any "substantial differences" between Plaintiff's and "CAPGONE" Class members' claims and defenses.  Defendants did not fail to move for

---

[1] *See, e.g.,* Declaration of David J. Harris, Jr. in Opposition to Defendants' Motion for Summary Judgment, Ex. JJ (Dkt. 231-36) at 5 (docket pagination) (Plaintiff's Interrogatory No. 19: "State the total number of Class members, as well as the total number of members contained within each Subclass certified by the Court"; Defendants' Answer for "Subclass (c) – interest that Great Lakes capitalized procedural or programming errors[:] ***entire class.***") (emphasis added).

[2] *See, e.g.,* Defendants' Opening Summary Judgment Brief (Dkt. 218) at 1, 3, 8-9, 48 (discussing "programming errors"); *id.* at 8-9, 24-25 (discussing Defendants' "First Remediation Project"); Plaintiff's Summary Judgment Opposition Brief (Dkt. 235) at 45-46, 51, & n.10 (discussing "programming errors"); *id.* at 50-52, 65 (discussing Defendants' "First Remediation Project"); Defendants' Proposed Findings of Fact (Dkt. 248), ¶¶17-27 (discussing both the counter-alleged "programming errors" and the "First Remediation Project").

[3] *E.g.,* May 11, 2016 Rule 30(b)(6) Deposition of Great Lakes Educational Loan Services, Inc. (Dkt. 53) ("First GLELSI Deposition") at 49:18 – 50:2.

2

summary judgment against two-thirds of the named Plaintiff's accounts.[4]  Plaintiff, for her part, assuredly did not fail to oppose summary judgment on two-thirds of her own loan accounts. Hence, again, the parties have already had their fullest and fairest opportunities to argue the merits under Fed. R. Civ. P. 56(a).  *See, e.g.,* n.2 & n.3, *supra.*

As the Court correctly found in the Contempt Order, Defendants' actions created a straightforward Class Notice deficiency, affecting a small subset of the Class (~7,000 Class members out of ~136,000 total Class members).  This does not warrant erasing or otherwise modifying the existing summary judgment record without decision.  To hold otherwise would actually *reward* Defendants' contempt with a one-sided, third bite at the summary judgment apple, to which Defendants are not otherwise entitled.  Any "renewed" or even "supplemental" briefing on summary judgment, without decision, would create unprecedented prejudice against the Class for many reasons.

By way of example only, the Class has argued that Defendants failed to carry their initial burden under Fed. R. Civ. P. 56, as a matter of Supreme Court and Seventh Circuit law.  By definition, these are not defects that Defendants could cure on reply.  And in truth, Defendants' summary judgment reply brief *concedes* that Defendants failed to carry their burden under *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988), as well as *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and its progeny.  *Compare, e.g.,* Summary Judgment Opposition Brief (Dkt. 235) at 7-8,

---

[4] Even if they had, that would have been their own choice to move or not.  *Eckhardt v. State Farm Bank, F.S.B.*, 1:18-cv-01180, 2019 WL 1177954, at *8 (C.D. Ill. Mar. 13, 2019) ("The Court declines to step into the role of advocate to make Defendant's argument for it . . . .") (citing *Puffer v. Allstate Ins.*, 675 F.3d 709, 718 (7th Cir. 2012)).  This Court correctly found that Defendants and their counsel had "no basis" for *purporting* to believe that CAPGONEs were not Class members.  *See* Contempt Order at 5.  Therefore, if Defendants and their counsel *had* declined to move against some Class members (they didn't), with "no basis" whatsoever, then Defendants and their counsel should bear the consequences instead of Class members.

26-31, and 94-98 (making these "initial burden" arguments at length under *Goka* and *Celotex*), *with* Defendants' Summary Judgment Reply Brief (Dkt. 262) (nowhere discussing the law of *Celotex* or *Goka*, and nowhere arguing that Defendants carried their initial burden of production on a motion for summary judgment). This record has closed. Consequently, at the time the Contempt Order was entered, Defendants had already effectively conceded that their summary judgment motion must be denied *on its merits*, by conceding that they failed to carry their burden under *Celotex* and *Goka*.[5] The Contempt Order, however, purports to erase this closed record, and thereby rewards Defendants' contempt with the windfall of not a second, but a third chance at carrying their initial burden on a motion for summary judgment.

The prejudice against the Class does not end there. By denying as "moot" Plaintiff's motion to strike (Dkt. 267) ("Motion to Strike"), the Contempt Order effects additional, independent prejudice by manufacturing an end-run around Defendants' docketed disobedience of *another* Court Order. *See* Order Granting Motion for Leave (Dkt. 242) at 2 ("To avoid giving defendants an unfair advantage, defendants' proposed findings of fact should be limited to facts discussed in their opening brief."). Plaintiff's Motion to Strike argues that Defendants violated this Order when they introduced "Opening" Proposed Findings of Fact, ¶¶73-74. *See generally* Brief in Support of Motion to Strike (Dkt. 268). Nowhere in their Opposition to the Motion to Strike (Dkt. 276) do Defendants dispute that ¶¶73-74 are new, "Opening" Proposed Findings of Fact that skirt the Court's Order Granting Motion for Leave.

Plaintiff's Motion to Strike further highlights that Defendants introduced at least twenty-three (23) new Proposed Findings of Fact *on Reply*, in another violation of the Court's Summary

---

[5] Even if Defendants had not conceded these arguments, restarting the pending summary judgment record without decision would still be prejudicial against the Class, because Defendants cannot avoid a facial challenge to their motion solely by acting in contempt.

4

Judgment Procedures (Dkt. 182 at 2-7).   The Contempt Order's allowance for Defendants to renew their existing summary judgment motion actually facilitates Defendants' violations of the Court's Procedures, as well as the Order Granting Motion for Leave.   *But see Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (recognizing that courts may not "enforce or relax" local rules governing summary judgment "unequally as between the parties").   The Contempt Order does this by restarting summary judgment *sua sponte*, without decision, based solely on mistakes of undisputed fact.[6]

The Contempt Order also threatens to create further, unnecessary delays in the disposition of this four year-old action.   An indefinite stay of trial and all pretrial dates, based on the need for a 45-day opt out period to begin 75 days before trial, is unnecessary and further prejudices the Class.   Aside from the delay in adjudication itself, these indefinite stays are extra prejudicial in a case where Defendants' state of mind remains in dispute going as far back as 2011.   With each passing year, it will become more difficult for the Class to prove Defendants' state of mind at trial, as the recall of key witnesses grows ever fuzzier.   Plaintiff and the Class respectfully request that the Court set a relatively near-term, replacement trial date, and ask that the Court not vacate all trial and pretrial deadlines indefinitely.

---

[6] Defendants' Motion to Strike Opposition argues that the Court's Procedures permit summary judgment movants to introduce entirely new Proposed Findings of Fact on Reply, without leave of Court. *See* Dkt. 276 at 4.  This argument is meritless, as the Court's Procedures unambiguously do not allow this. *See* Dkt. 182 at 2-7 (on reply, allowing only *replies* supporting the movant's opening Proposed Findings of Fact, and *responses* to the non-movant's separately Proposed Findings of Fact).  It would also render toothless the Court's Order against new "Opening" Proposed Findings of Fact (Dkt. 242 at 2) if, as Defendants argue, they were permitted to proffer new Proposed Findings of Fact *on Reply*, and simply call them "Supplemental" Proposed Findings of Fact instead of calling them "Opening" Proposed Findings of Fact.  By its terms, however, the Contempt Order suddenly allows Defendants' to convert all of their improper submissions on Reply into new, "Opening" Proposed Findings of Fact on a renewed motion occasioned only by their own contempt.

On December 17, 2019, the Notice Administrator disseminated Class Notice to the remaining ~7,000 Class members (out of the ~136,000 total Class members), with a proper opt-out deadline of January 31, 2020.  *See generally* Declaration of David J. Harris, Jr. in Support of Motion for Reconsideration.  The fairest, most efficient, and most lawful path forward from here is for the Court to simply decide the existing motion for summary judgment on its merits, reasonably soon after the supplemental notice period expires on January 31, 2020.  Alternatively, the Court could properly carve CAPGONE Class members out of any judgment, if the Court prefers to enter some form of summary judgment sooner.  But there is no good cause here for disadvantaging 129,000 Class members who *were* sent Notice, solely because 7,000 other Class members were not sent Notice (due solely to Defendants' misconduct).

By its terms, the Contempt Order creates unnecessary unfairness to the Class because it effectively erases the summary judgment record for all pretrial *and* appellate purposes.  It requires the Class to oppose a brand new motion proffered by Defendants, only after Defendants have thoroughly digested every single fact and argument that the Class has made in a complex case.  *Cf. Caisse Nationale de Credit Agrigole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'").  Plaintiff and the Class have wheeled out all their artillery to defeat summary judgment.  *See generally* Summary Judgment Opposition Brief (Dkt. 235); Class's Proposed Findings of Fact (Dkt. 234).

And this Court has already given Defendants a second chance at filing a proper motion for summary judgment.  *See* Order Granting Motion for Leave (Dkt. 242).  Rewarding Defendants' contempt with a *third* chance at summary judgment is neither necessary nor warranted under the circumstances of this case.  *Modrowski*, 712 F.3d at 1169.

6

The Court should decide the existing motion for summary judgment on its merits to avoid effecting prejudice against the entire Class, both the newly noticed and the previously noticed members. If the Court grants the existing summary judgment motion in whole or in part, then it can properly do so any time after January 31, 2020. If the Court denies the existing motion on its merits, then the Court can properly do so at any time. [7]

## II.     Relevant Procedural History

On June 3, 2019, Defendants filed their motion for summary judgment and brief in support (Dkt. 218), which, among other defects, declined to include Proposed Findings of Fact as required by the Court's Summary Judgment Procedures (Dkt. 182 at 2-7).

On July 18, 2019, the Class filed their Summary Judgment Opposition Brief (Dkt. 235), relying on 265 Proposed Findings of Fact (Dkt. 234). The Class argued that Defendants' summary judgment motion must be denied, in part because Defendants failed to carry their initial burden of production. The grounds for this "initial burden" argument were, among other things, that: (1) Defendants did not file Proposed Findings of Fact; and (2) Defendants failed to carry their burden under the law of *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and its progeny.

---

[7] Because the denial of Defendants' motion for summary judgment (on its merits) would by definition not be a final judgment, it is permissible to deny Defendants' motion for summary judgment on its merits even before the supplemental notice period lapses on January 31. *See* Fed. R. Civ. P. 23(c)(3)(B) ("Whether or not favorable to the class, the *judgment* in a class action must . . . include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.") (emphasis added). No Class member who remains in the case would have cause to object to such a denial, and no Class member who opts out of the case would have cause to object to such a denial.

On July 25, 2019, Defendants moved for leave to file their "Opening" Proposed Findings of Fact (Dkt. 240) ("Motion for Leave"), asserting that defense counsel was unaware of the Court's requirement that summary judgment movants file Proposed Findings of Fact.[8]

Also on July 25, 2019 (hours later), the Court granted Defendants' Motion for Leave without affording the Class an opportunity to be heard. *See* Order Granting Motion for Leave (Dkt. 242). This was permissible, only because the Court took care not to strategically disadvantage the Class; the Court did so by ordering that "defendants' [Opening] Proposed Findings of Fact should be limited to facts discussed in their opening brief." *See id.* at 2; *accord Modrowski*, 712 F.3d at 1169 (recognizing that courts may not "enforce or relax" local rules governing summary judgment "unequally as between the parties"). The Court further ordered each of Defendants' attorneys to file a declaration certifying that they had reviewed the Court's Summary Judgment Procedures. *See* Dkt. 242 at 2.

On July 29, 2019, Defendants' attorneys of record all filed declarations certifying they reviewed the Court's Summary Judgment Procedures (except for Mr. Wegrzyn, who appeared after summary judgment was fully briefed). *See* Dkt. 243; Dkt. 244; Dkt. 245; Dkt. 246.

Also on July 29, 2019, Defendants filed their "Opening" Proposed Findings of Fact, which, contrary to the Court's Order Granting Motion for Leave (Dkt. 242 at 2), introduced at least some proposed facts not stated in Defendants' Opening Summary Judgment Brief. *E.g.,* Defendants' Opening Proposed Findings of Fact (Dkt. 248), ¶¶73-74. Defendants also filed ***a new witness declaration***, the Kielhofer Declaration (Dkt. 247), purporting to establish the

---

[8] This requirement exists in most federal district courts nationwide, including defense counsel's home court in Milwaukee. *E.g.,* Civil L. R. 56(b) in the United States District Court for the Eastern District of Wisconsin, *available at* https://www.wied.uscourts.gov/sites/wied/files/documents/Local%20Rules%202010-0201-%20Amended%202019-0903.2.pdf.

8

admissibility of documents that had been clearly inadmissible when Plaintiff opposed summary judgment. *See, e.g.,* Opening Proposed Finding of Fact (Dkt. 248), ¶¶55, 60, 62 (relying on Defendants' new Kielhofer Declaration at Dkt. 247). The Class had largely ignored the substance of these clearly inadmissible documents when opposing summary judgment, so Defendants attempted to sneak those disputed documents into evidence, using a new witness, only *after* the Class opposed summary judgment.

On August 12, 2019, Plaintiff filed the Class's Responses to Defendants' "Opening" Proposed Findings of Fact, as the Court had required in the Order Granting Motion for Leave. *See* Class Responses to Defendants' "Opening" Proposed Findings of Fact (Dkt. 251).

On August 16, 2019, Defendants filed a Summary Judgment Reply Brief (Dkt. 262), ***which included twenty-three (23) new Proposed Findings of Fact***, proffered without leave. *See generally* Dkt. 261, ¶¶76-98 (couched as "Defendants' Supplemental Proposed Findings of Fact"). Defendants Summary Judgment Reply Brief argued that the Court should enter summary judgment against the Class, in part because Defendants' newly introduced, "Supplemental" facts were "indisputable." *See* Summary Judgment Reply Brief (Dkt. 262) at 29-31 ("These are indisputable facts:" and then bullet-pointing numerous Proposed Findings of Fact that Defendants introduced *on Reply*.).[9] This was a plain and simple violation of the Court's Summary Judgment Procedures, which Defendants' attorneys had already declared they reviewed. Furthermore, this was an end-run around the Court's Order Granting Motion for Leave (Dkt. 242), as Defendants not only introduced new facts after the Class opposed summary judgment, but introduced new facts to which the Class would have no clear entitlement to

---

[9] Defendants' Reply Brief cited these "Supplemental" Proposed Findings of fact only as "Proposed Findings of Fact," as if they were part of Defendants' Opening Proposed Findings of Fact. *See* Defendants' Summary Judgment Reply Brief (Dkt. 262) at 29-31.

respond at all.  *See* Summary Judgment Procedures (Dkt. 182) at 6 (providing that sur-replies are discretionary and rarely allowed).  And pivotally, ***nowhere*** did Defendants' Summary Judgment Reply Brief dispute that Defendants failed to carry their summary judgment burden in bad faith, under *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988).

On August 30, 2019, Plaintiff filed a Motion to Strike (Dkt. 267), arguing that Defendants violated the Court's Order Granting Motion for Leave (Dkt. 242) when they introduced ¶¶55, 60, 62, and 73-74 of their "Opening" Proposed Findings of Fact, and also when they introduced a new client declaration (Dkt. 247) to sneak previously inadmissible documents into the record.  The Motion to Strike further argued that Defendants violated the Court's Summary Judgment Procedures *again*, when they introduced new Proposed Findings of Fact *on Reply*, and relied on those "Supplemental" facts as "indisputable" in their Reply Brief.

On September 10, 2019, Defendants opposed the Motion to Strike, but nowhere did they dispute that they had introduced new, "Opening" Proposed Findings of Fact ¶¶73-74, in violation of the Court's Order Granting Motion for Leave.  Defendants' opposition weakly defended their filing of the new Kielhofer Declaration (Dkt. 247) in support of "Opening" Proposed Findings of Fact ¶¶55, 60 and 62.  In addition, quite frivolously, Defendants argued that the Court's Procedures allow movants to introduce new Proposed Findings of Fact on Reply, without leave, whenever movants see fit to do so.

On September 20, 2019, the Class filed their Reply in Support of the Motion to Strike, thoroughly rebutting Defendants' arguments.

On October 7, 2019, counsel for all parties attended the deposition of Allen Werner (*see* Dkt. 279), and learned that so-called "CAPGONE" Class members' contact information had not been produced to the Notice Administrator.

10

On October 25, 2019, Plaintiff moved for discovery sanctions and civil contempt sanctions based on Werner's testimony. Dkt. 280 ("Contempt Motion"). To this point, there had never been any dispute that CAPGONE Class members were Class members. Indeed, Defendants' explanation for denying RFA No. 2 had confirmed Defendants' view that "CAPGONE" Class members *were* Class members, whose identities were produced to the Notice Administrator. *See* Dkt. 282-1 at 3 (original pagination) ("Great Lakes provided the Notice Administrator, on February 4, 2019, with the names and contact information of all certified Class members who had a Standalone B-9 Forbearance capitalizations existing on their Account(s) *as of September 2015*.") (emphasis added).

On November 1, 2019, in response to Plaintiff's Contempt Motion, Defendants began arguing for the first time that CAPGONE Class members are not Class members, contrary to Defendants' prior explanation for denying RFA No. 2.

On December 5, 2019, the Court found Defendants' in civil contempt "by clear and convincing evidence." *See generally* Contempt Order. The Court correctly found Defendants' new argument (that CAPGONE Class members are not Class members) to have "no merit," and "no basis" in law or fact. *Id.* The Court sanctioned Defendants for falsely denying Plaintiff's RFA No. 2 as a factual matter, and for violating the Court's Class Certification and Class Production Orders. *Id.*

Nevertheless, without addressing any part of the summary judgment record, the Court found *sua sponte* that: "the scope of the [pending] summary judgment motion could change . . . because there are substantial differences between ["CAPGONE" Class members'] claims and the claims of other class members, which is why the court created a separate subclass." Contempt Order at 9-10. On that ground alone, the Court ordered "renewed motions for summary

11

judgment" to be filed by February 15, 2020, and stayed trial and all other pretrial dates indefinitely. *Id.* at 9-12.   The stated ground for these decisions reveals a mistake of undisputed fact, contradicting the Certification Order (Dkt. 171) and the undisputed evidence.

## III.   "CAPGONE" Class Members Are Not A "Separate Subclass"

The Contempt Order provides for "renewed" summary judgment briefing by finding that:

the scope of the summary judgment motion could change in light of the additional class members because there are substantial differences between their claims and the claims of the other class members, which is why the court created a separate subclass.

Contempt Order at 9-10.   This is untrue.   There are no "substantial differences" between CAPGONE Class members' claims and other Class members' claims, as CAPGONE Class members do not constitute "a separate subclass."

It is undisputed that *every* Class member is a member of the same "programming errors subclass" as these newly labeled, "CAPGONE" Class members.   *See, e.g.,* Declaration of David J. Harris, Jr. in Opposition to Defendants' Motion for Summary Judgment, Ex. JJ (Dkt. 231-36) at 5 (docket pagination) (Plaintiff's Interrogatory No. 19: "State the total number of Class members, as well as the total number of members contained within each Subclass certified by the Court"; Defendants' Answer concerning "Subclass (c) – interest that Great Lakes capitalized procedural or programming errors[:] entire class.").   Thus, when the parties briefed summary judgment, the parties fully addressed Defendants' counter-alleged "programming errors" and the purported "First Remediation Project," which (Defendants argue) "remedied" such programming errors.   *See, e.g.,* Defendants' Opening Brief (Dkt. 218) at 1, 3, 8-9, 48 (discussing "programming errors"); *id.* at 8-9, 24-25 (discussing Defendants' "First Remediation Project"); Plaintiff's Opposition Brief (Dkt. 235) at 45-46, 51, & n.10 (discussing "programming errors"); *id.* at 50-52, 65 (discussing Defendants' "First Remediation Project"); Defendants' Proposed

Findings of Fact (Dkt. 248), ¶¶17-27 (regarding "programming errors" and "First Remediation Project").[10]

The Contempt Order's uncited conclusion that newly labeled CAPGONE Class members are "a separate subclass," or have cases so "substantially different" from "other class members" that they warrant erasing or modifying the pending summary judgment record, is foreclosed by the record.

Further, Dawson herself has three affected loan accounts in this case, two of which are so-called "CAPGONE" accounts.  *See, e.g.,* May 11, 2016 Rule 30(b)(6) Deposition of Great Lakes Educational Loan Services, Inc. (Dkt. 53) ("First GLELSI Deposition") at 49:18 – 50:2.

> Q. And so you'd agree with me that for those two accounts, Great Lakes determined that the proper fix was to remove the capitalization transactions that had occurred entirely; right?
>
> A. Correct.
>
> Q. So the proper amount that should have been capitalized for those two accounts on November 28th at the end of her forbearance period was zero dollars; correct?
>
> A. Correct.

*Id.*  Defendants did not fail to move for summary judgment against two-thirds of the named Plaintiff's accounts.  Even if they had, that should be their problem.  The Court should not inject itself into Defendants' and their counsel's decisions on how best to defend against the Class's claims.  *Cf. Eckhardt*, 2019 WL 1177954, at *8 (C.D. Ill. Mar. 13, 2019) ("The Court declines to step into the role of advocate to make Defendant's argument for it . . . .") (citing *Puffer*, 675 F.3d at 718.  Plaintiff certainly did not fail to oppose summary judgment regarding two-thirds of her

---

[10] *See also* Class Certification Order (Dkt. 171) at 2 ("Because Dawson alleges that Great Lakes subjected her to all three kinds of errors, *she may serve as the class representative for each subclass*.") (emphasis added).

own loan accounts. The Court should not force her to do it all over again, at great expense, and at great disadvantage, for no reason.

At bottom, the parties have already had their fullest and fairest opportunities to argue the merits of this case under Fed. R. Civ. P. 56(a), and the Court should not disregard the docketed summary judgment record. The Court should instead decide the existing motion for or against the Class, as stated in Part V, *infra*.

**IV.    The Contempt Order Results In Unnecessary And Unfair Prejudice Against The Class Under The Circumstances Of This Case**

The Contempt Order's provision for "renewed" summary judgment motions was not requested by the parties and is based upon a clear mistake of undisputed fact. Parts I and III, *supra*. In addition, ordering renewed motions for summary judgment under the circumstances of this case creates unfair, unprecedented and improper prejudice against the entire Class.

A.    The Contempt Order Overlooks Defendants' Failures To Carry Their Burden On The Existing Motion for Summary Judgment.

In *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988), the Seventh Circuit established the following exposition of law governing motions for summary judgment.

The defendants' burden on summary judgment was set out in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

[a] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

477 U.S. at 323, 106 S.Ct. at 2553. Defendants have interpreted *Celotex* to require that they identify *only* those portions of the record which support their position on summary judgment, although there exists evidence to the contrary of which defendants are aware. Defendants maintain that the burden of producing such evidence was on Goka as the party opposing summary judgment, and that he failed to meet that burden. They conclude, therefore, that summary judgment was appropriate. We do not agree.

14

Defendants' argument ignores the principal purpose of the summary judgment rule which is to "isolate and dispose of *factually unsupported* claims or defenses." *Celotex,* 477 U.S. at 323-24, 106 S.Ct. at 2553. When a party has obtained knowledge through the course of discovery, or otherwise, that a material factual dispute exists and yet proceeds to file a summary judgment motion, in hopes that the opposing party will fail or be unable to meet its burden in responding to the motion, he defeats that purpose; and, more importantly, violates the rules of procedure which govern the conduct of trial, specifically Rule 11.

*See Goka*, 862 F.2d at 650 (emphasis in original).

In opposition to summary judgment, Plaintiff and the Class applied this law to the evidence, and argued at length that Defendants' motion for summary judgment offends *Goka*'s holding, and otherwise fails to carry Defendants' burden under *Celotex* and its progeny. The Class spent no less than 20 pages of summary judgment briefing applying this law to the evidence. *See* Summary Judgment Opposition Brief (Dkt. 235) at 6-8 (summary argument); *id.* at 17-31 (specific arguments); *id.* at 94-98 (additional, specific arguments regarding Defendants' deceptive declarations and briefing about "reimbursement checks").

In 55 pages of summary judgment reply briefing, *nowhere* did Defendants dispute that their summary judgment motion offends the holding of *Goka* (as well as Fed. R. Civ. P. 11). *See generally* Dkt. 262. Nowhere do Defendants dispute that they failed to carry their initial burden of production on a motion for summary judgment under *Celotex* and its progeny. *Id.*

The Court should not abrogate its settled duty to decide these arguments for one side or the other. The Court should not reward Defendants' contempt *sua sponte* with a third, unrequested, undeserved chance at properly moving for summary judgment.

15

B.      Permitting Defendants To File A Renewed Motion Facilitates Defendants'
        Standing Violations Of The Court's Summary Judgment Procedures.

Separately and independently, a district court may not enforce or relax its own summary judgment rules "unequally as between the parties." *Modrowski*, 712 F.3d at 1169. But the Contempt Order does exactly that.

The Court has already relaxed enforcement of its Summary Judgment Procedures once by affording Defendants a second chance to file Proposed Findings of Fact. *See* Order Granting Motion for Leave (Dkt. 242) at 2 ("In another case, the court might simply deny the motion for summary judgment, and deem the offending party to have forfeited its right to ask for summary judgment."). Defendants' second chance was within the Court's discretion to grant because the Court carefully avoided giving Defendants an unfair advantage. *Id.* at 2 ("To avoid giving defendants an unfair advantage, *defendants' proposed findings of fact should be limited to facts discussed in their opening brief.*") (emphasis added). Defendants, however, then turned around and disobeyed that order, along with other facets of the Court's Summary Judgment Procedures.

*First*, Defendants filed a new declaration from GLELSI executive Tammy Kielhofer (Dkt. 247) after the Class opposed summary judgment. The new Kielhofer Declaration sought to introduce into evidence multiple documents that were inadmissible when the Class opposed summary judgment. Defendants submitted three "Opening" Proposed Findings of Fact in sole reliance upon this new Kielhofer Declaration.

*Second,* Defendants submitted new Proposed Findings of Fact ¶¶73-74, the substance of which was stated nowhere in Defendants' opening summary judgment brief.

*Third,* the Court's Summary Judgment Procedures (Dkt. 182 at 2-7) are abundantly clear that movants may file only two types of "Proposed Findings of Fact" submissions in connection with summary judgment reply papers. The first allowable submission on reply contains the

16

movant's *replies* in support of the movant's own separately numbered, "Opening" Proposed Findings of Fact.  The other allowable submission on reply contains the movant's *responses* to the separately filed "Proposed Findings of Fact" submitted by the non-movant (if any) in opposition to summary judgment.

Here, however, Defendants took the liberty of filing a *third* type of "Proposed Finding of Fact" submission on Reply, a type that is unambiguously foreclosed by the Court's Procedures. The Defendants labeled this third type their "Supplemental Proposed Findings of Fact," and they sandwiched those in between their allowable replies and responses.  *See generally* Dkt. 261. This was a clear violation by Defendants and their counsel, even after Defendants' counsel filed declarations confirming they had reviewed the Court's Procedures.  Dkt. 243; Dkt. 244; Dkt. 245; Dkt. 246.  Defendants' reply brief then purposefully leveraged this violation against the Class by arguing that their "Supplemental Proposed Findings of Fact" were "indisputable facts" that the Court should rely on to grant summary judgment.  *See* Summary Judgment Reply Brief (Dkt. 262) at 29-31.

All of this was completely out of bounds, so Plaintiff properly filed the Motion to Strike. Dkt. 267; Dkt. 268.  The Court, however, now denies the Motion to Strike as "moot," and in doing so, fails to enforce its Summary Judgment Procedures against Defendants' latest, prejudicial violations.  The Contempt Order allows Defendants to file a "renewed motion for summary judgment," *in which they may now convert their offending "Supplemental" facts into brand new, "Opening" facts* which they could have and should have filed when they first moved for summary judgment in June.  By the Contempt Order's plain terms, Defendants can now pretend like nothing ever happened, and this effectively *facilitates* Defendants' improper evidentiary presentations at summary judgment, as an unfair reward for their contempt.

Such a fundamentally inequitable result cannot stand as a matter of law, nor can it stand on a mistake of fact.

     C.    <u>Permitting Renewed Motions For Summary Judgment Is Not In Line With Rule 1 Under The Circumstances Of This Case.</u>

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. "This court takes seriously its obligations under Federal Rule Civil Procedure 1." Standard Attachments for Civil Cases (Dkt. 182) at 42. The Contempt Order, however, is not in line with Rule 1 or the Court's stated policy thereunder.

*First*, the Contempt Order's unprompted allowance for Defendants to file a renewed summary judgment motion is clearly "[un]just" under the circumstances of this case, for each and every reason explained in this brief. Fed. R. Civ. P. 1.

*Second*, the Contempt Order hinders the "speedy" adjudication of this case by staying all trial and pretrial dates indefinitely. *Id.* The last time the Court vacated all trial and pretrial dates indefinitely (admittedly, at Plaintiff's request), this led to Class Certification going undecided for over a year and a half, including fifteen months post-hearing. Dkt. 89; Dkt. 171. At the time of the Contempt Order, this action was nearly four and a half years old, with trial less than 90 days out. There was a near-term end to this case in sight (at least in this Court), but suddenly, there is no end in sight. The Contempt Order's indefinite stays threaten to postpone any trial in this case for many months or even years. Such indefinite stays, nearly a half-decade into this action, are not justified by the mere need for a 45-day notice period to begin 75 days before trial: especially where that need for a supplemental notice campaign was occasioned only by Defendants' sanctionable misconduct.

18

*Third*, the Contempt Order has the end result of substantially *increasing* the parties' litigation expenses in this case, by disregarding the fully briefed summary judgment record, and forcing the Class to oppose summary judgment all over again.   Plaintiff and the Class — including but not limited to Class members like Elizabeth Mosser (Dkt. 232), and Angela Monger (Dkt. 233) — have spent months, and large sums of money, putting together the existing record for better or worse.  The Court should honor these people's extensive and competent efforts by affording them up-or-down decisions on their existing arguments and evidence.  To disregard all of these people's efforts to date, and force them all to start over at the bottom of the hill, would be extremely wasteful and prejudicial in this already complex and expensive case.

For all of these reasons, the ultimate consequences of the Contempt Order are not in line with Rule 1, or with the Court's stated policy thereunder.  This too warrants reconsideration.

D.    By Its Terms, The Contempt Order Ultimately Invites A Procedural Free-For-All That Is Generally Undesirable.

It is unclear whether the Court intended to place any constraints on Defendants' "renewed motion for summary judgment," but by its plain terms, the Contempt Order imposes no constraints on Defendants or their tactics going forward.   This creates additional, potential prejudice against the Class.

By way of example only, Defendants offered no expert testimony in support of their existing summary judgment motion.  *See generally* Dkt. 218; Dkt. 262.  However, under Fed. R. Civ. P. 26, and in reliance upon the Court's March 2, 2020 trial date, Defendants disclosed three purported liability experts on December 3, 2019.  If the Court now permits Defendants to unleash a flurry of expert testimony in support of summary judgment for the first time, only after seeing the totality of the Class's evidence and arguments, this would not be very fair to the Class. Yet nothing in the text of the Contempt Order prevents this.

19

By its terms, the Contempt Order also permits Defendants to file an unlimited number of new fact declarations in support of summary judgment. This could well necessitate additional fact discovery, depending upon the specific content of such declarations.

Because the Contempt Order places no clear constraints on Defendants' unrequested, renewed motion for summary judgment, the Contempt Order invites more delay, more unnecessary litigation, and potentially more prejudice against the Class.

## V.    Conclusion

On December 17, 2019, the Notice Administrator disseminated Class Notice to the remaining ~7,000 Class members (out of the ~136,000 total Class members), with a proper opt-out deadline of January 31, 2020. *See generally* Declaration of David J. Harris, Jr. in Support of Motion for Reconsideration.

The fairest, most efficient, and most lawful path forward here is for the Court to simply decide the existing summary judgment motion on its merits, reasonably soon after the supplemental notice period expires on January 31, 2020. Alternatively, because a denial of a motion for summary judgment (on its merits) is by definition *not* a judgment, it is permissible to deny Defendants' motion for summary judgment even before the supplemental notice period lapses on January 31, 2020. *See* Fed. R. Civ. P. 23(c)(3)(B) ("Whether or not favorable to the class, the *judgment* in a class action must . . . include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.") (emphasis added). If the Court grants the existing summary judgment motion in whole or in part, then the Court can properly do so any time after January 31, 2020. If the Court denies the existing motion in full, then the Court can properly do so at any time.

Lastly, the Court should set a relatively near-term, replacement trial date to ensure that the final disposition of this five year-old action is reasonably expedited. Fed. R. Civ. P. 1.

For all of the foregoing reasons, Plaintiff and the Class respectfully request that the Court grant their motion for partial reconsideration of the Contempt Order (Dkt. 295 at 9-12) as described herein.

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

Dated: December 20, 2019

By: ___s/ David J. Harris, Jr._____
David J. Harris, Jr., Esq.

Jeffrey R. Krinsk, Esq.
550 West C Street, Suite 1760
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

*Counsel for Plaintiff and the Class*

21