UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON,

        Plaintiff,

   v.                                  Civil Action No. 15-cv-475-jdp

GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC., et al.,

        Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF *DAUBERT*
MOTION TO EXCLUDE TESTIMONY BY MARK KANTROWITZ**

---

Thomas L. Shriner, Jr.
Eric G. Pearson
Aaron R. Wegrzyn
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306

*Attorneys for Defendants Great Lakes
Educational Loan Services, Inc. and Great Lakes
Higher Education Corporation*

October 29, 2021

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL SUMMARY ......................................................................... 5

III.    LEGAL STANDARDS ........................................................................... 8

IV.     ARGUMENT .......................................................................................... 9

    A.   The Court Should Exclude Mr. Kantrowitz's Opinion(s) Regarding "Capitalization Impact." ...................................................................... 9

        1.   Mr. Kantrowitz's Figures Concerning "Capitalization Impact" Should be Excluded Under Rule 702. ...................................... 10

        2.   Mr. Kantrowitz's "Capitalization Impact" Figures Should Be Excluded Under Rule 403. ............................................................ 20

    B.   Mr. Kantrowitz's Legal Opinions Are Not Admissible. ...................... 22

        1.   Experts Are Not Permitted To Opine On Legal Matters. ......... 24

        2.   Mr. Kantrowitz's Legal Opinions Would Not Be Helpful To The Jury. ........................................................................................ 25

        3.   Mr. Kantrowitz's Legal Opinions Are Irrelevant To The Issues. ............. 27

    C.   The Court Should Exclude Mr. Kantrowitz's Testimony About What The Defendants "Knew or Should Have Known." ...................................... 29

        1.   Expert Testimony About What A Defendant "Knew or Should Have Known" Is Facially Improper. .......................................... 30

        2.   Mr. Kantrowitz Lacks Requisite Qualifications. ...................... 31

        3.   Mr. Kantrowitz's Opinions Are Not The Product Of Any Reliable Methodology. ............................................................................. 34

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ancho v. Pentek Corp.*,
    157 F.3d 512 (7th Cir. 1998) ...........................................................................31, 35

*Bednarz v. Lovald*,
    No. 15-C-0458, 2016 WL 6304705 (E.D. Wis. Oct. 27, 2016) ...........................................25

*Bleecker v. Cahill*,
    375 Wis. 2d 282, 895 N.W.2d 72 (Ct. App. 2017) .............................................................12

*Cent. Brown Cty. Water Auth. v. Consoer, Townsend, Envirodyne*,
    No. 09-C-0131, 2013 WL 501419 (E.D. Wis. Feb. 11, 2013) ...........................................12

*Coffee v. Barber*,
    No. 20-cv-965-jdp, 2021 WL 2134921 (W.D. Wis. May 26, 2021) ...................................28

*Crawford v. Am. Home Mortg. Servicing, Inc.*,
    No. 10-cv-198-wmc, 2012 WL 12995303 (W.D. Wis. Mar. 19, 2012) ..............................17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .......................................................................................... *passim*

*Eurochem N. Am. Corp. v. Ganske*,
    No. 18-cv-16-slc, 2020 WL 747008 (W.D. Wis. Feb. 14, 2020) ............................10, 22, 35

*Footville State Bank v. Harvell*,
    146 Wis. 2d 524, 432 N.W.2d 122 (Ct. App. 1988) .......................................................13, 22

*Foskett v. Great Wolf Resorts, Inc.*,
    518 F.3d 518 (7th Cir. 2008) ...............................................................................................11

*Friend v. CACH, LLC*,
    No. 4:19-CV-6, 2021 WL 4245069 (N.D. Ind. Sept. 17, 2021) ..........................................13

*Gayton v. McCoy*,
    593 F.3d 610 (7th Cir. 2010) ...............................................................................................33

*Grove US LLC v. Sany America Inc.*,
No. 13-C-677, 2019 WL 969814 (E.D. Wis. Feb. 28, 2019) .................................................25

*Haley v. Kolbe & Kolbe Millwork Co.*,
No. 14-cv-99-bbc, 2016 WL 1180203 (W.D. Wis. Mar. 25, 2016) ....................................20

*Hartman v. EBSCO Indus., Inc.*,
758 F.3d 810 (7th Cir. 2014) ..............................................................................................20

*Hatleberg v. Norwest Bank Wis.*,
283 Wis. 2d 234, 700 N.W.2d 15 (2005) ...........................................................................28

*Hennekens v. Hoerl*,
160 Wis. 2d 144, 465 N.W.2d 812 (1991) ...................................................................12, 22

*Hoida, Inc. v. M&I Midstate Bank*,
291 Wis. 2d 283, 717 N.W.2d 17 (2006) ...........................................................................16

*Estate of Robinson ex rel. Irwin v. City of Madison*,
No. 15-cv-502-jdp, 2017 WL 564682 (W.D. Wis. Feb. 13, 2017).....................................33

*Izenberg v. ETS Servs., LLC*,
589 F. Supp. 2d 1193 (C.D. Cal. 2008) .............................................................................14

*Kirk v. Clark Equip. Co.*,
991 F.3d 865 (7th Cir. 2021) ..............................................................................................34

*Klaczak v. Consol. Med. Transp. Inc.*,
No. 96-C-6502, 2005 WL 1564981 (N.D. Ill. May 26, 2005) ............................................30

*Krik v. Crane Co.*,
71 F. Supp. 3d 784 (N.D. Ill. 2014).....................................................................................30

*Krik v. Exxon Mobil Corp.*,
870 F.3d 669 (7th Cir. 2017) ................................................................................................9

*Kucharski v. Orbis Corp.*,
No. 14-cv-05574, 2017 WL 1806581 (N.D. Ill. May 5, 2017) ...........................................24

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) ................................................................................................8

*Maskrey v. Volkswagenwerk A.G.*,
125 Wis. 2d 145, 370 N.W.2d 815 (Ct. App. 1985) ..............................................................9

*Metavante Corp. v. Emigrant Sav. Bank*,
619 F.3d 748 (7th Cir. 2010) ...................................................................................................35

*Milligan v. Rock on the River, Inc.*,
No. 16-cv-498-jdp, 2017 WL 6734190 (W.D. Wis. Dec. 29, 2017) ...................................37

*Minix v. Canarecci*,
597 F.3d 824 (7th Cir. 2010) ...................................................................................................35

*N. Nat. Gas Co. v. L.D. Drilling, Inc.*,
405 F. Supp. 3d 981 (D. Kan. 2019) .......................................................................................31

*Phillips v. Raymond Corp.*,
364 F. Supp. 2d 730 (N.D. Ill. 2005) ......................................................................................11

*Pittman v. Cty. of Madison*,
970 F.3d 823 (7th Cir. 2020) .....................................................................................................8

*Redmond v. Sirius Int'l Ins. Corp.*,
No. 12-CV-587, 2014 WL 197909 (E.D. Wis. Jan. 15, 2014) .............................................27

*Rivera v. Heck*,
No. 16-cv-673-wmc, 2018 WL 4354949 (W.D. Wis. Sept. 12, 2018)................................36

*Robinson v. Tucker*,
No. 12-2200-JTM, 2012 WL 5499439 (D. Kan. Nov. 13, 2012).........................................14

*Rogers v. K2 Sports, LLC*,
348 F. Supp. 3d 892 (W.D. Wis. 2018) ...........................................................................8, 35

*Roundy's Inc. v. NLRB*,
674 F.3d 638 (7th Cir. 2012) ...................................................................................................25

*Solfest v. Arctic Cat Inc.*,
No. 07–cv–427–slc, 2008 WL 4615447 (W.D. Wis. Apr. 18, 2008) ..................................33

*Stevens v. Stryker Corp.*,
12-cv-63-bbc, 2013 WL 4758948 (W.D. Wis. Sept. 4, 2013) ..........................26, 28, 29, 30

*Thompson v. City of Chicago,*
   472 F.3d 444 (7th Cir. 2006) ...................................................................................29

*Tidemann v. Nadler Golf Car Sales, Inc.,*
   224 F.3d 719 (7th Cir. 2000) ...................................................................................22

*Tyger Constr. Co. v. Pensacola Constr. Co.,*
   29 F.3d 137 (4th Cir. 1994) .....................................................................................20

*United States v. Approximately 81,454 Cans of Baby Formula,*
   569 F.3d 638 (7th Cir. 2009) .....................................................................................9

*United States v. Caputo,*
   517 F.3d 935 (7th Cir. 2008) ...................................................................................24

*United States v. Kokenis,*
   662 F.3d 919 (7th Cir. 2011) ...................................................................................21

*United States v. Lupton,*
   620 F.3d 790 (7th Cir. 2010) ...............................................................25, 29, 36, 37

*United States v. Truitt,*
   938 F.3d 885 (7th Cir. 2019) ...................................................................................34

*Widemshek v. Fale,*
   17 Wis. 2d 337, 117 N.W.2d 275 (1962) .................................................................11

*Wingad v. John Deere & Co.,*
   187 Wis. 2d 441, 523 N.W.2d 274 (Ct. App. 1994) .............................................17

*Ziegler v. Wisconsin Central, Ltd.,*
   No. 13-CV-996, 2015 WL 1898240 (E.D. Wis. Apr. 27, 2015) ...........................24

## Other Authorities

34 C.F.R. § 682.211(f)(11) ...................................................................................5, 23

34 C.F.R. § 685.205(b)(9) ....................................................................................5, 23

Fed. R. Evid. 403 ......................................................................................... *passim*

Fed. R. Evid. 702 ......................................................................................... *passim*

Defendants Great Lakes Educational Loan Services, Inc. (GLELSI) and Great Lakes Higher Education Corporation (now known as Ascendium Education Group) (GLHEC) submit this brief in support of their motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to enforce Fed. R. Evid. 403 and 702 by precluding the plaintiff from offering the testimony of Mark Kantrowitz at trial.

## I.      INTRODUCTION

The two claims (based on a single theory of negligence) that remain unresolved after the Court's summary judgment decision are governed by Wisconsin law and, as with any tort claim, the plaintiff bears the burden to prove both liability and damages attributable to the defendants' actions.  (Summary Judgment Order, Dkt. 355, at 27 ("Claims for negligence and negligent misrepresentation, like all tort claims, require the plaintiff to prove that she was harmed by the defendant's conduct.").)  Thus, the primary issues left for the jury's consideration at trial are: (1) whether the defendants were negligent in deciding how to classify B-9 Forbearances (*id.* at 38); and (2) whether class members sustained any actual damages as a result and, if so, how much (*id.* at 28).

To meet her burden on these points, the plaintiff has submitted two reports from her expert witness, Mark Kantrowitz.  Yet all of Mr. Kantrowitz's opinions are inadmissible under Rule 403 and Rule 702, as explicated in *Daubert*.

Mr. Kantrowitz's first report—which preceded the defendants' summary judgment motion and has not been supplemented since—does not identify any

damages sustained by any class member (or by the class in the aggregate), only what

Mr. Kantrowitz describes as "capitalization impact." (December 3, 2019 Expert Report

by Mark Kantrowitz, Dkt. 367-1 (2019 Report), at 7–9, 12.) Nevertheless, the plaintiff

offers Mr. Kantrowitz's formulas as her common evidence of class members' alleged

damages. (*See, e.g.*, Pltf.'s Summary Judgment Response Brief, Dkt. 330, at 94–102.)

The Court's summary judgment decision stated that "the class members did

suffer harm in the form of interest that was incorrectly capitalized." (Summary

Judgment Order, Dkt. 355, at 27–28.) But the Court could not, and surely did not intend

to by that statement, relieve the plaintiff of her burden of proving damages.[1] On the

contrary, the Court concluded that it was "premature" to address whether the plaintiff's

evidence was sufficient to establish actual damages in the first instance. (*Id.* at 30

("Defendants raise other objections to Dawson's damages evidence, but none of them

are related to class certification, so they are premature."); *see also id.* at 31 ("But just as it

---

[1] Additionally, to the extent that the summary judgment order might be read to suggest that the defendants have "acknowledge[d]" that they "misappli[ed]" the Department's "regulations" or caused class members "harm," (*id.* at 28), the defendants respectfully disagree with such a characterization. The defendants have always disputed the allegation that GLELSI failed to exercise the standard of care required of a federal student loan servicer, although they did not move for summary judgment on that ground. While the complicated nature of the business required the Department to issue numerous clarifications regarding its non-regulation administrative guidance to its servicers over the years, none of the remaining issues in this case revolve around GLELSI violating the text of the regulations concerning B-9 Forbearances themselves (as opposed to the Department's administrative guidance). And the defendants have repeatedly challenged the plaintiff's standing and the existence of any damages sustained by class members caused by the capitalizations at issue. (*See, e.g.*, Answer, Dkt. 24, ¶¶103–105; Supplemental Answer, Dkt. 199, ¶35; Defs.' Summary Judgment Br., Dkt. 309, at 47–52.)

is premature to consider the adequacy of Dawson's damages evidence, it would be premature to hold as a matter of law that defendants haven't corrected the capitalization errors.").)

This brings us to the current question (with damages issues certified for class treatment) of whether the plaintiff has proffered any admissible evidence concerning the class's actual damages through her proposed expert.  She has not, under both Rule 702 and Rule 403.

Mr. Kantrowitz offers opinions on three topics: "capitalization impact," the legal question of negligence, and GLELSI's corporate knowledge.  None of his opinions are admissible.

First, Mr. Kantrowitz's opinions regarding "capitalization impact" should be excluded because they are unhelpful to the jury and are not the product of a reliable methodology under Rule 702, and because whatever minimal probative value they might offer is substantially outweighed under Rule 403 by risks of unfair prejudice, confusion of the issues, and misleading the jury.  Rather than quantify any recoverable monetary damages—measured under governing Wisconsin law by actual injuries sustained by class members—Mr. Kantrowitz's 2019 Report provides only a "theoretical analysis" of the total amount by which he believes class members' loan account balances were overstated at one point several years ago.  (Transcript of October 15, 2021 Deposition of Mark Kantrowitz, Dkt. 368 (Kantrowitz Dep.), at 142:16–143:4.)  Mr.

Kantrowitz admits that his methodology does not measure any actual overpayments or out-of-pocket losses. Moreover, he entirely ignores the effect of GLELSI's corrections to class members' account balances—which the Court explained are "pertinent to damages" (Summary Judgment Order, Dkt. 355, at 34)—despite his being aware of them at the time he prepared his 2019 Report.[2]

Second, Mr. Kantrowitz's legal opinions and conclusions are not proper expert testimony. This August Mr. Kantrowitz proffered a second report directed to the defendants' alleged negligence, which was not the subject of the summary judgment motion, so that the Court's decision did not resolve it. (August 16, 2021 Expert Report by Mark Kantrowitz, Dkt. 367-2 (2021 Report).) The 2021 Report addresses various statutes and regulations, as well as the contract between GLELSI and the Department of Education. Yet Mr. Kantrowitz's legal opinions and conclusions are not proper expert testimony. They encroach on the Court's role in instructing the jury and misidentify the relevant issues of law, and Mr. Kantrowitz lacks the relevant expertise to qualify him as an expert on such matters.

Third, the Court should exclude all Mr. Kantrowitz's speculation regarding what the defendants "knew or should have known" about interest capitalization at various

---

[2] In contrast, the expert witnesses retained by the defendants to review GLELSI's remediation work will testify at trial that GLELSI's remediation was properly designed and executed, thus leaving the class with no remaining overstatements of their loan balances attributable to the capitalizations at issue, although that is not the subject of this motion.

points in the past, given his lack of any basis for determining the defendants' corporate

knowledge.  Nor does he possess the qualifications required to opine on the

complicated business of student loan servicing, and none of Mr. Kantrowitz's opinions

are the product of any reliable methodology.

For these reasons, as more fully explained below, the defendants ask the Court to

preclude the plaintiff from offering Mr. Kantrowitz's testimony at trial.

## II.      FACTUAL SUMMARY

GLELSI is a student loan servicer and was (until it was acquired by Nelnet in

2018) the wholly owned subsidiary of GLHEC.  (Defs.' Replies in Support of Statement

of Proposed Findings of Fact, Dkt. 341 (PFOF), ¶¶17, 20, 25, 33.)  GLELSI contracted

with the Department in 2009 to start servicing accounts of borrowers who owe student

loan debt to the Department.  (*Id.* ¶¶34, 37, 51–53.)  Three accounts of the named

plaintiff, Meredith Dawson, were transferred to GLELSI from her previous servicer in

September 2010.  (*Id.* ¶¶185–86.)

A "forbearance" is a type of loan status during which the borrower's repayment

obligation is temporarily halted, although interest continues to accrue on the

outstanding principal balance.  (*Id.* ¶78.)  "Capitalization" refers to the conversion of

unpaid accrued interest into principal.  (*Id.* ¶80.)  In most cases, interest that accrues

during a forbearance is capitalized at the end of the forbearance.  (*Id.* ¶83.)  Two federal

regulations, 34 C.F.R. § 685.205(b)(9) and 34 C.F.R. § 682.211(f)(11), create administrative

forbearances (B-9 Forbearances) that are exceptions to this general rule, each providing that "Interest that accrues *during this period* is not capitalized."  (*Id.* ¶¶84–87 (emphasis added).)  Neither regulation, however, addresses whether interest that accrued before a B-9 Forbearance should be capitalized at its end.  (*Id.* ¶89.)

The Department issued two "Change Requests" to its servicers designed to standardize practices with respect to interest capitalization: Change Request 1492 in 2011 and a follow-up, Change Request 2785, in 2014.  (*Id.* ¶¶65–66, 96–97, 100–04, 115–121.)  Change Request 1492 specifically excluded B-9 Forbearances from its scope, and Change Request 2785 instructed servicers to "capitalize all outstanding, unpaid interest (excluding neg am and non-capping*) at the end of a capping deferment or forbearance period."  (*Id.* ¶¶103, 121.)  When this lawsuit was filed in 2015, GLELSI understood the Department to have instructed its servicers to capitalize interest that had accrued *before* the start of a B-9 Forbearance at the forbearance's conclusion, but not to capitalize the interest that accrued *during* the forbearance (the only time period stated in the text of the regulations).  (*Id.* ¶¶126–30.)

Shortly after the plaintiff filed this lawsuit, in the course of preparing its response to the complaint, GLELSI investigated its servicing systems relative to B-9 Forbearances and discovered two programming errors: one that caused B-9 Forbearances to run one day short (59 days, rather than 60) and another concerning the order in which payments made during a B-9 Forbearance were applied to different categories of accrued interest.

6

(*Id.* ¶¶135–38.)  GLELSI fixed the computer coding and developed a process for correcting affected borrowers' accounts accordingly (the First Remediation).  For the great majority of borrowers, this process consisted of simply backing off account transactions and associated interest, removing the capitalizations at issue, and reapplying the subsequent account transactions in the same order to arrive at a correct balance.  (*Id.* ¶144.)  For the small minority of borrowers who had paid off their accounts in full before the remediation, GLELSI caused the Treasury Department to issue refund checks to cover overpayments (if the overpayment exceeded the Department's standard $5.00 *de minimis* threshold).  (*Id.* ¶¶147–48.)  GLELSI completed the First Remediation by July 2016.  (*Id.* ¶147.)  The plaintiff does not contend that GLELSI was negligent with respect to these programming errors (Summary Judgment Order, Dkt. 355, at 38), so there necessarily are no damages issues remaining in the case with regard to them.

In August 2016, GLELSI contacted Department representatives to confirm its understanding of the Department's directives in Change Request 2785 with respect to capitalization of interest that had accrued before a B-9 Forbearance at the end of the forbearance.  (PFOF ¶158.)  The Department's response to that inquiry indicated that pre-forbearance accrued interest should be capitalized at the end of some B-9 Forbearances (that is, "back-to-back" ones that had been immediately preceded by another forbearance or deferment period) but not others (so-called "standalone" B-9

Forbearances).  (*Id.* ¶159.)  At the Department's direction, GLELSI then developed a

plan to correct borrowers' accounts by removing capitalizations that had occurred at the

end of standalone B-9 Forbearances (the Second Remediation).  GLELSI completed the

Second Remediation by August 2018, again both correcting account balances and

causing those borrowers who had overpaid to be reimbursed (with GLELSI paying off

out of its own pocket any resulting balances generated through the account

recalculation process).  (*Id.* ¶¶167–84.)

### III.    LEGAL STANDARDS

In carrying out its *Daubert* responsibilities, a district court serves "as a gatekeeper

to ensure that proffered expert testimony meets the requirements of Federal Rule of

Evidence 702."  *Rogers v. K2 Sports, LLC*, 348 F. Supp. 3d 892, 897 (W.D. Wis. 2018).

Courts acting in this role must ensure three things: (1) that the expert is qualified;

(2) that the expert's opinions are "based on reliable methods and reasoning"; and

(3) that the expert's opinions "will assist the jury in deciding a relevant issue."  *Id.*

(citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).  The party seeking to

introduce the expert's opinions bears the burden of establishing that they are

admissible.  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Similarly, a district court "may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  FED. R. EVID. 403; *see also Pittman v. Cty. of Madison*, 970 F.3d 823, 829–30 (7th Cir. 2020).  Rule 403 "overlays all other evidentiary rules," including Rule 702.  *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017).

## IV.   ARGUMENT

### A.   The Court Should Exclude Mr. Kantrowitz's Opinion(s) Regarding "Capitalization Impact."

As highlighted by the Court in its summary judgment opinion, the two primary damages questions remaining are: (1) the sufficiency of the plaintiff's evidence to prove "the amount of damages that [she] and the class have sustained"; and (2) "whether defendants can show that they have already cured any harm they caused to the class members."  (Summary Judgment Order, Dkt. 355, at 28.)  Only if the plaintiff meets her *prima facie* burden with respect to the first inquiry will the jury need to consider the second.  *Cf. United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) ("The plaintiff in a tort or contract suit has the burden of proving liability and damages; but if the defendant interposes a defense … the burden of proving the defense is on him."); *Maskrey v. Volkswagenwerk A.G.*, 125 Wis. 2d 145, 153–54, 370 N.W.2d 815, 819 (Ct. App. 1985) ("[T]he plaintiff has the burden of proof to show injury and damages caused by the negligence of the tortfeasors, but … it is the defendants' burden to allocate the damages from two or more impacts.").  Yet Mr. Kantrowitz's proffered opinions regarding "capitalization impact" do nothing to assist the jury in its resolution of either of these questions.

9

As shown below, the formulas and figures proffered by Mr. Kantrowitz in his 2019 Report fail to demonstrate actual damages sustained by any members of the plaintiff class, much less all of them. Mr. Kantrowitz admits that he did not measure any overpayments or other out-of-pocket losses, but instead only tabulated what he believes to be the amount of interest that accrued upon improperly capitalized interest for a specified period of time between when the capitalizations occurred and when GLELSI removed them in its remediation work. Such a tabulation does nothing to quantify "the amount of damages that [Ms.] Dawson and the class have sustained." (Summary Judgment Order, Dkt. 355, at 28.) And Mr. Kantrowitz acknowledges that he has done nothing to analyze either of GLELSI's remediation projects, such that he cannot offer any admissible opinions regarding "whether defendants can show that they have already cured any harm they caused to the class members." (*Id.*) Offering the jury nothing of value, Mr. Kantrowitz's "capitalization impact" opinions should be excluded under both Rule 702 and Rule 403.

### 1. *Mr. Kantrowitz's Figures Concerning "Capitalization Impact" Should be Excluded Under Rule 702.*

Rule 702 provides that an expert's opinions are admissible only if they will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). This "helpfulness" condition primarily concerns the relevance of the expert's opinion, *Daubert*, 509 U.S. at 591, and whether the opinion assists "the jury in determining a fact at issue in the case." *Eurochem N. Am. Corp. v. Ganske*, No. 18-cv-16-

slc, 2020 WL 747008, at *12 (W.D. Wis. Feb. 14, 2020).  Likewise, a proponent of expert testimony bears the burden of demonstrating that it is the product of a reliable methodology.  *Daubert*, 509 U.S. at 592–94; *see also Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 736 (N.D. Ill. 2005).

Here, Mr. Kantrowitz's "capitalization impact" opinions are neither helpful to the jury (because they do not measure class members' actual damages) nor the product of a reliable methodology (because the methodology he employed has never been tested or used by anyone other than Mr. Kantrowitz), warranting their exclusion under Rule 702.

> ### a. Mr. Kantrowitz's "capitalization impact" opinions are not helpful to the jury.

The negligence and negligent misrepresentation claims remaining in this case both require proof of actual damages.  *See Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 523 (7th Cir. 2008) ("A negligence claim requires 'an actual loss or damage as a result of the injury.'") (quoting *Avery v. Diedrich*, 301 Wis. 2d 693, 734 N.W.2d 159, 164 (2007)); *Widemshek v. Fale*, 17 Wis. 2d 337, 343, 117 N.W.2d 275, 276, 278 (1962) ("[E]ven if defendant was found negligent or fraudulent…[,] plaintiff could not maintain his causes of action against him, for plaintiff cannot show… that he sustained any actual damage.").

Actual damage means "harm that has already occurred or is reasonably certain to occur in the future.  Actual damage is not the mere possibility of future harm."

11

*Hennekens v. Hoerl*, 160 Wis. 2d 144, 153, 465 N.W.2d 812, 816 (1991); *see also Cent. Brown Cty. Water Auth. v. Consoer, Townsend, Envirodyne*, No. 09-C-0131, 2013 WL 501419, at *9 (E.D. Wis. Feb. 11, 2013) (to establish actual damages "the plaintiff must do more than 'merely show that something might or might not exist or might or might not occur in the future'") (quoting *Wis. Nat'l Gas v. Ford, Bacon, & Davis Constr. Corp.*, 96 Wis. 2d 314, 335, 291 N.W.2d 825 (1980)).  A plaintiff may prove actual damages by establishing either "a contemporaneous monetary loss" or an "injury to a legal interest or loss of a legal right." *Bleecker v. Cahill*, 375 Wis. 2d 282, 289, 895 N.W.2d 72, 75 (Ct. App. 2017); *see also Cent. Brown Cty.*, 2013 WL 501419, at *8 ("For actions in tort…, the measure of damages is actual harm to the plaintiff's person, property or interests.").

Mr. Kantrowitz has not calculated actual damages to any class members in his 2019 Report.  Indeed, he does not purport to have done so:

> **Q:** Can you talk to me a little bit about what your assignment was in preparing your 2019 report?
>
> **A:** It was to establish a floor on the potential damages to the class.
>
> **Q:** So do you view your expert report that you prepared in 2019 to be a damages report?
>
> **A:** Not specifically damages.  More identifying what the harm was to the class in terms of the capitalization of non-capping interest and what were the direct and indirect consequences of that.  And I suppose that might be considered a damages report.

(Kantrowitz Dep. at 101:4–16.)

Instead of calculating actual damages incurred (such as class member overpayments or other out-of-pocket losses), Mr. Kantrowitz explains the purpose of his formulas for "capitalization impact" as follows: "[T]hese formulas are focused on … how much was the interest that was charged on the improperly capitalized interest over a specified period of time until the 2016 or 2018 … remediation events." (Kantrowitz Dep. at 149:5–9.)[3] His 2019 Report only offers a "theoretical analysis," designed to provide "a lower bound on the interest that was charged on interest." (Kantrowitz Dep. at 142:20–143:1.) In other words, Mr. Kantrowitz's 2019 Report attempts to identify by how much, in aggregate, he believes class members' account balances were overstated at one point in time years ago, nothing more.

Yet the fact that a defendant displayed an inaccurate loan balance for a period of time in the past—without causing an overpayment or some other form of out-of-pocket financial loss—does not constitute an actual damage sufficient to sustain a claim. *See Footville State Bank v. Harvell*, 146 Wis. 2d 524, 535, 432 N.W.2d 122, 128 (Ct. App. 1988) (no actual damages where plaintiff failed to present evidence that "he has in fact paid interest" at an incorrectly computed rate); *see also Friend v. CACH, LLC*, No. 4:19-CV-6, 2021 WL 4245069, at *2 (N.D. Ind. Sept. 17, 2021) (plaintiff failed to identify an injury-in-

---

[3] As Mr. Kantrowitz explained during his deposition, references in his 2019 Report to "financial damages," the "financial impact," or the "capitalization impact" of the transactions at issue address only the "interest on interest" caused by such transactions. (Kantrowitz Dep. at 121:1–8, 137:5–22, 138:20–139:20.)

fact caused by defendant's reporting of an inaccurate loan balance to a credit bureau and therefore lacked standing); *Robinson v. Tucker*, No. 12-2200-JTM, 2012 WL 5499439, at *3 (D. Kan. Nov. 13, 2012) (plaintiff failed to allege an injury-in-fact based on usurious loan charges due to failure to plead payment); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008) (possibility that plaintiffs might, in the future, pay more on their mortgage than the total amount owed not sufficient "to establish a concrete financial injury"). Here, Mr. Kantrowitz readily admits that he never attempted to calculate any class member's actual out-of-pocket losses:

> **Q:** Did you do anything to attempt to calculate any class member's actual out-of-pocket loss in connection with the capitalization transactions at issue?
>
> **A:** No. As I said before, I don't have data on the actual payments made by the borrowers, so I can't calculate that.
>
> **Q:** Are you aware of you or counsel ever asking for such data?
>
> **A:** I was not asked to do that. I was asked to calculate the floor on the potential damages.

(Kantrowitz Dep. at 134:18–135:5; *see also id.* 136:7–13, 139:21–140:1.)

Similarly, Mr. Kantrowitz acknowledges that the formulas presented in his 2019 Report do not measure any potential overpayments by class members or any potential increase in the size of their monthly loan payments:

> **Q:** [N]othing in this section tries to figure out the out-of-pocket costs for a particular borrower or the amount of any overpayments made by a particular borrower?

**A:** No.

\* \* \*

**Q:** And does anything in this section try to calculate the increase in monthly loan payments by any particular borrower?

**A:** No.

(Kantrowitz Dep. at 139:21–140:11.)

Mr. Kantrowitz's analysis ignores class members' actual payment histories and instead merely seeks to calculate an aggregate amount of interest that accrued on class members' accounts for a particular period of time:

**Q:** And what do you mean here when you say, assess the financial damages?

**A:** … So I was asked to evaluate how much interest was charged on that improperly capitalizable interest over a particular time period.

**Q:** So your assignment, if you will, was to try and calculate the interest on interest.  Am I understanding that right?

**A:** That's correct.

(Kantrowitz Dep. at 120:18–121:8.)

At the same time, Mr. Kantrowitz acknowledges that he knew when he did his work that GLELSI had carried out two remediation projects to correct class members' account balances and remove inappropriately capitalized interest.  (Kantrowitz Dep. at 122:19–123:9.)  He even used the dates of GLELSI's remediation work (both of which had been completed well before he wrote his 2019 Report) to determine the "end date"

15

for the time period used in his "capitalization impact" calculations.  (2019 Report at 11;

Kantrowitz Dep. at 152:22–156:4.)  Yet Mr. Kantrowitz's "capitalization impact" analysis

does not otherwise account for GLELSI's remediation work:

> **Q:** Have you done any analysis of either of GLELSI's remediation
> projects in this case?
>
> **A:** No.
>
> **Q:** Were you asked to do that?
>
> **A:** No.
>
> **Q:** And have you done any testing or review of individual
> borrower's payment histories in connection with this case?
>
> **A:** No.

(Kantrowitz Dep. at 160:10–18.)

Although the Court's summary judgment decision held that the defendants

would bear the burden to prove any reduction in damages associated with GLELSI's

remediation projects (Summary Judgment Order, Dkt. 355, at 28), this did not relieve

the plaintiff and class members of their burden to prove that they sustained actual

damages in the first instance.  (*Id.* at 27 ("Claims for negligence and negligent

misrepresentation, like all tort claims, require the plaintiff to prove that she was harmed

by the defendant's conduct."); *see also Hoida, Inc. v. M&I Midstate Bank*, 291 Wis. 2d 283,

304, 717 N.W.2d 17, 27 (2006) (listing "actual loss or damage" as an element of a

plaintiff's negligence claim); *Crawford v. Am. Home Mortg. Servicing, Inc.*, No. 10-cv-198-

wmc, 2012 WL 12995303, at *14 (W.D. Wis. Mar. 19, 2012) (granting a defendant

summary judgment on claim for negligent loan servicing because the plaintiff failed to submit evidence of his actual loss or damages).  Mr. Kantrowitz's 2019 Report does not even attempt to do that, as demonstrated by his own testimony quoted above.

This case is distinguishable from the authority previously relied upon by the plaintiff.  In *Wingad v. John Deere & Co.*, 187 Wis. 2d 441, 452, 523 N.W.2d 274, 278 (Ct. App. 1994), there was no dispute about the plaintiff having sustained actual damages: "he was injured while operating [a tractor that] violently tipped, causing him severe and permanent damage."  *Id.* at 446.  Instead, the issue addressed by the court of appeals was whether "the trial court erred by awarding damages for future loss of earning capacity in the absence of expert evidence regarding the effects of inflation and reduction for present value."  *Id.* at 447.  The court reasoned that because the impact of present valuation evidence would be to reduce a plaintiff's award, the burden of introducing such evidence is borne by the defendant because "it would be in the best interest of the defendant to introduce such evidence."  *Id.* at 452.  Yet the court reiterated that "[t]he plaintiff, of course, has the ultimate burden of proof upon the quantum of damages," requiring him to establish "a prima facie case for recovery" illustrating actual damages (in the *Wingad* case, "evidence of … projected wage loss, fringe benefits to be lost in the future and life expectancy").  *Id.*

Here by contrast, the "capitalization impact" figures in Mr. Kantrowitz's 2019 Report are not helpful to the jury because they fail to assist it in determining whether

the plaintiff can establish her *prima facie* burden in this negligence case—actual damages sustained as a result of the capitalizations.  By Mr. Kantrowitz's admission, his formulas cannot be used to determine any overpayments made by class members, or any other out-of-pocket losses that they might possibly have incurred.  (Kantrowitz Dep. at 134:18–24.)  Instead, Mr. Kantrowitz describes what he was asked to calculate as "the potential damages" that class members *could* have incurred, not damages that they sustained.  (Kantrowitz Dep. at 162:11–12.)  Because Mr. Kantrowitz's opinion(s) on "capitalization impact" are not helpful to the jury in its consideration of what actual damages the plaintiff or other class members sustained, they should be excluded under Rule 702.

> ### b.    Mr. Kantrowitz's "capitalization impact" opinions
> ### are not the product of a reliable methodology.

For related reasons, Mr. Kantrowitz's "capitalization impact" formulas are not a reliable methodology for calculating class members' actual damages.  Courts must look to several factors in assessing the reliability of an expert's methodology, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Daubert*, 509 U.S. at 593–94.

Mr. Kantrowitz calculated "capitalization impact" by multiplying the dollar value of the capitalizations by the number of days between when they occurred and when Mr. Kantrowitz estimated that GLELSI removed them, by a daily interest rate. (2019 Report at 9, 11–12.)[4]  He acknowledges that he "derived" this simple formula himself "from first principles" (Kantrowitz Dep. at 107:2–6, 107:23–108:7), and despite never having developed a damages formula before this case (Kantrowitz Dep. at 98:22–99:5), Mr. Kantrowitz admits that he did not ask anyone else to review or test his formulas in any way.  (Kantrowitz Dep. at 108:8–11.)  Nor did Mr. Kantrowitz conduct any investigation into what Wisconsin precedent teaches about recoverable damages in a negligence action.  (Kantrowitz Dep. at 137:23–138:3.)  And he did not consider GLELSI's remediation efforts or the impact of other events (like subsequent proper capitalizations on class members' accounts), while making several assumptions as part of his analysis.  (2019 Report at 11, 14–16.)

As a result, the formulas developed by Mr. Kantrowitz to quantify "capitalization impact" are not a reliable methodology for determining class members' actual damages, warranting their exclusion under Rule 702.  *See Hartman v. EBSCO*

---

[4] While page 8 of Mr. Kantrowitz's 2019 Report details much more complex mathematical formulas that he asserts could be used to ascertain the net present value of the impact of the capitalizations on a series of borrower payments, he admits that he did not run any data through those formulas in order to arrive at his $28 million plus figures for "capitalization impact."  (Kantrowitz Dep. at 140:12–143:25, 148:15–150:8.)

*Indus., Inc.*, 758 F.3d 810, 818–19 (7th Cir. 2014) (excluding expert presenting a

methodology that "had not been tested, or subjected to peer review or publication");

*Haley v. Kolbe & Kolbe Millwork Co.*, No. 14-cv-99-bbc, 2016 WL 1180203, at *6 (W.D. Wis.

Mar. 25, 2016) (excluding testimony from an expert who "developed his own

methodology").

> ### 2.    *Mr. Kantrowitz's "Capitalization Impact" Figures Should Be Excluded Under Rule 403.*

The risks associated with permitting Mr. Kantrowitz to testify regarding his $28

million plus "capitalization impact" figures are clear.  Jurors may mistakenly believe

that class members actually overpaid on their accounts by that much, or they may be

misled into thinking that GLELSI's remediation work need not be accounted for in the

damages calculus (given that Mr. Kantrowitz did not even attempt to do so in his 2019

Report).  Allowing Mr. Kantrowitz to testify regarding mathematical formulas—

including formulas that he did not actually use and presented as merely "theoretical"

(Kantrowitz Dep. at 142:7–19)—risks misleading the jury into attributing more weight

to the simple acts of multiplication that Mr. Kantrowitz performed in order to arrive at

his "capitalization impact" figures than they are due.  *See Tyger Constr. Co. v. Pensacola

Constr. Co.*, 29 F.3d 137, 145 (4th Cir. 1994) ("Scrutiny of expert testimony is especially

proper where it consists of 'an array of figures conveying a delusive impression of

exactness in an area where a jury's common sense is less available than usual to protect

it.'") (quoting *Eastern Auto. Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329, 338 (4th

Cir. 1986); *see also Daubert*, 509 U.S. at 595 (recognizing that expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it"); Paul F. Rothstein, *Rule 702: Testimony by Expert Witnesses*, FED. R. OF EVID. (3d ed. 2021) ("The problem with certain expert (perhaps mainly 'scientific') evidence is the tendency of the fact-finder to be 'snowed,' *i.e.*, overly impressed by the evidence regardless of anything the other side or the judge may do.").

Similarly, it is not clear what purpose is served by presenting Mr. Kantrowitz's opinions on "capitalization impact"—jurors will not be asked to decide whether class members sustained an "impact" from the capitalization transactions, but instead whether they suffered actual damages. *Cf. United States v. Kokenis*, 662 F.3d 919, 928 (7th Cir. 2011) (affirming exclusion of expert's testimony under Rules 403 and 702 because it "wouldn't have been helpful to the jury, and presenting it would have been confusing and a waste of time").

Again, Mr. Kantrowitz's opinions regarding the amount by which borrower accounts may have been overstated during the time between the capitalizations and the dates when GLELSI fixed the accounts does nothing to help the jury determine whether class members suffered any monetary loss. Without evidence that class members actually overpaid *any* amount, the mere fact that their account balances were inaccurately stated for a time does not establish actual damages. *See Footville State Bank*, 146 Wis. 2d at 535 (holding that because the plaintiff had not paid "interest computed"

21

at an incorrect rate he had "suffered no actual damages"). At best, it establishes that, for a while, there existed "the mere possibility of future harm," *Hennekens*, 465 N.W.2d at 816, which would have materialized only if a class member had paid off his or her account while the balance remained overstated (and, of course, if the overpayment were not subsequently repaid).

In this regard, all that Mr. Kantrowitz's opinions regarding "capitalization impact" do is to invite the jury to speculate about the amount by which class members *would eventually have* overpaid if their account balances had not been corrected. Speculation will not, of course, assist the jury in determining actual damages. *See Eurochem*, 2020 WL 747008, at *13 (excluding as irrelevant expert's flawed damages model that would "invite the jury to engage in speculation and provide it with no reasoned basis on which to award damages"). Permitting such testimony from Mr. Kantrowitz would therefore unfairly prejudice the defendants and risk confusing or misleading the jury. *See Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 723–24 (7th Cir. 2000) (affirming district court's exclusion of expert testimony under Rule 403 based on finding that the expert's opinions "could confuse or mislead the jury").

### B.    Mr. Kantrowitz's Legal Opinions Are Not Admissible.

Mr. Kantrowitz's reports—particularly his 2021 Report—are filled with references to and recitations of statutes, regulations, and contractual provisions, along with his own interpretations of those materials and his opinions regarding the legal

conclusions that should be drawn from them.  Examples of Mr. Kantrowitz's legal

opinions and conclusions include:

- His interpretation of the definitive meaning of 34 C.F.R. § 682.211(f)(11)
  and 34 C.F.R. § 685.205(b)(9), the two regulations at the heart of this case.
  (2019 Report at 7 ("[T]he so-called B-9 forbearances (described in 34 CFR
  682.211(f)(11) and 34 CFR 685.205(b)(9)), standing alone, do not allow for
  the capitalization of interest.").)

- His conclusion that the defendants violated these regulations.  (2021
  Report at 4 ("[Great Lakes] incorrectly capitalized the interest that accrued
  before and during F-11 and B-9 forbearances.").)

- His opinions about the meaning of the Department's guidance to its
  servicers with respect to capitalization of pre-forbearance accrued interest
  at the conclusion of B-9 Forbearances.  (2021 Report at 10.)

- His view that GLHEC is subject to a "heightened responsibility" to
  understand the Department's regulatory guidance as a loan guarantor.
  (2021 Report at 8.)

- His interpretation of regulations concerning the appropriate order of
  borrower payment application.  (2019 Report at 8.)

Beyond these legal opinions and conclusions, many sections of the 2021 Report

provide little more than recitations of various texts.  By way of example, Mr. Kantrowitz

devotes a section entitled "Statutory Requirements" to quoting a number of provisions

of the United States Code and explaining his opinions regarding their application to

certain categories of federal student loans.  (2021 Report at 4–5.)  His section concerning

"Regulatory Requirements" takes a similar approach, quoting the regulatory language

that he believes to be relevant.  (2021 Report at 5–6.)  And Mr. Kantrowitz devotes

another section to quoting selected excerpts from GLELSI's servicing contract with the Department and opining on their legal effect. (2021 Report at 6–7.)

The legal opinions and conclusions proffered by Mr. Kantrowitz are improper on several levels, and they should be excluded from trial.

### 1.   *Experts Are Not Permitted To Opine On Legal Matters.*

Expert witness testimony proffering legal opinions and conclusions is both unnecessary and inadmissible under Rule 702. *See United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge."). This rule applies equally to an expert's interpretation of federal regulations and to outcome-determinative legal conclusions to be drawn from the facts of the case. *See Ziegler v. Wisconsin Central, Ltd.*, No. 13-CV-996, 2015 WL 1898240, at *3 (E.D. Wis. Apr. 27, 2015) ("[N]ot only is an expert witness not required to explain and interpret federal regulations, but such testimony consistently has been excluded under Rule 702."); *see also Kucharski v. Orbis Corp.*, No. 14-cv-05574, 2017 WL 1806581, at *6 (N.D. Ill. May 5, 2017) ("It is well established in the Seventh Circuit that expert witnesses are not permitted to give testimony 'as to legal conclusions that will determine the outcome of the case.'") (quoting *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)).

It is the Court's function to provide instructions to the jury regarding the appropriate use of and legal interpretation to be given to the sort of primary legal

materials discussed by Mr. Kantrowitz in his reports.  *United States v. Lupton*, 620 F.3d 790, 799–800 (7th Cir. 2010) ("The court was correct in noting that the meaning of statutes, regulations, and contract terms is 'a subject for the court, not for testimonial experts.  The only legal expert in a federal courtroom is the judge.'") (quoting *Caputo*, 517 F.3d at 942); *see also Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir. 2012) (an expert's "opinion as to Wisconsin property law amounts to legal arguments that should be presented to the court in counsel's analysis, not expert opinion testimony").  Simply put, Mr. Kantrowitz's legal opinions are improper and raise the threat of jury confusion. *See Grove US LLC v. Sany America Inc*., No. 13-C-677, 2019 WL 969814, at *6 (E.D. Wis. Feb. 28, 2019) (excluding an expert opinion because it "encroache[d] upon the court's authority to instruct the jury on the law to be applied to the facts of the case"); *see also Bednarz v. Lovald*, No. 15-C-0458, 2016 WL 6304705, at *2 (E.D. Wis. Oct. 27, 2016) ("Put simply, experts cannot testify about legal issues on which the judge will instruct the jury.").

### 2. Mr. Kantrowitz's Legal Opinions Would Not Be Helpful To The Jury.

Beyond being inadmissible on their face, Mr. Kantrowitz offers no "specialized knowledge" in rendering his legal opinions, making them unhelpful to the jury.  FED. R. EVID. 702(a) (noting that an expert's opinion is admissible only if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue").  Mr. Kantrowitz is not a lawyer (although even

lawyers may not testify as experts on the law), and he has no other specialized training with respect to the interpretation of federal statutes or regulations. (Kantrowitz Dep. at 32:14–21.) He has never attended any training sessions put on by the Department focusing on capitalization of interest by student loan servicers or about B-9 Forbearances. (Kantrowitz Dep. at 35:15–36:11.) And he has never worked with the Department or loan servicers on designing or implementing a change request issued by the Department. (Kantrowitz Dep. at 60:18–61:15.)

Without such expertise, there is nothing that suggests Mr. Kantrowitz's legal opinions would be helpful to the jury in evaluating this case. *See Stevens v. Stryker Corp.*, 12-cv-63-bbc, 2013 WL 4758948, at *4 (W.D. Wis. Sept. 4, 2013) ("[The expert's] report consists of nothing but a list of regulations and conclusions that defendant violated them, along with a narrative of historical facts that does not require an expert to interpret. I agree with defendants that nothing in [the expert's] report suggests that he is a regulatory expert (he is a biomedical engineer), but even if he were, plaintiff has not shown how his testimony would be helpful to the jury."); *see also Redmond v. Sirius Int'l Ins. Corp.*, No. 12-CV-587, 2014 WL 197909, at *19 (E.D. Wis. Jan. 15, 2014) ("On this topic, [the expert's] conclusions read more like a legal brief than the opinions of an expert. … An expert is supposed to assist the trier of fact and [the expert's] opinion on these phrases is not at all helpful.").

Mr. Kantrowitz now acknowledges that, with respect to the primary legal materials discussed in his 2021 Report, he "[j]ust read the documents," selected excerpts, and added in his own "interpretation of those … excerpts."  (Kantrowitz Dep. at 184:10–22.)  He readily admits that he applied no type of formal methodology or analysis beyond reading the text of the documents:

> **Q:** So you're looking at kind of primary materials, which would be, you know, the regulations, change requests, contracts, excerpting from there and then adding to that your interpretation of those documents?
>
> **A:** Yes.
>
> **Q:** Okay.  Anything beyond that in terms of your methodology?
>
> **A:** No.

(Kantrowitz Dep. at 184:23–185:7.)

Without some specialized knowledge that would support his opinions, they are not helpful to the jury and should be excluded under Rule 702.

### 3. *Mr. Kantrowitz's Legal Opinions Are Irrelevant To The Issues.*

Moreover, Mr. Kantrowitz's reports miss the mark with respect to the issues of law that remain at stake here.  This is unsurprising given that Mr. Kantrowitz admits he did not perform any legal research, did not review the pleadings in the case, and was not even aware of the nature of the claims being pursued by the plaintiff on behalf of the class.  (Kantrowitz Dep. at 36:16–37:4, 137:23–138:19.)

The relevant legal determinations to be made are whether the defendants acted negligently and, if so, whether class members sustained any consequent recoverable damages, which are matters of Wisconsin common law.  *See Hatleberg v. Norwest Bank Wis.*, 283 Wis. 2d 234, 255–56, 700 N.W.2d 15, 26 (2005) (listing the four elements of a negligent misrepresentation claim as (1) a duty of care, (2) a breach of that duty, (3) a causal link between the conduct and the injury, and (4) actual loss or damage as a result of the injury); *see also Coffee v. Barber*, No. 20-cv-965-jdp, 2021 WL 2134921, at *2 (W.D. Wis. May 26, 2021) (reciting the elements of a negligence claim under Wisconsin law as "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages"). The jury need not decide whether the defendants violated any federal statutes or regulations, nor need it consider whether the defendants breached any contracts with the Department.

As this Court explained in *Stevens v. Stryker Corp.*, No. 12-cv-63-bbc, 2013 WL 4758948 (W.D. Wis. Sept. 4, 2013):

> [T]he question in this case is not whether defendants violated federal regulations, but whether they were negligent under Wisconsin law.  Thus, the testimony of a standard of care expert for either side should address what a reasonable manufacturer would do.  That determination may be informed in part by federal regulations, but the focus should be on the underlying safety reasons for recommending a particular course of action, not on the regulations.  Allowing the experts to debate obscure terms of complex regulations

> would serve no purpose but to confuse the jury and waste
> time on issues that are not central to the case.

*Id.* at *4.

Allowing Mr. Kantrowitz to testify about his legal opinions regarding interpretation of statutes, regulations, and contracts—rather than the appropriate standard of care for a federal student loan servicer[5]—risks jury confusion and wasting trial time.  *See Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (excluding evidence, under Rule 403, regarding a government agency's internal procedures because they had "little or no bearing on whether the [defendant] breached his duty of care" and "would have led to unnecessary and detrimental jury confusion").  Mr. Kantrowitz's testimony should, therefore, be excluded under Rule 403.  *See, e.g., Lupton*, 620 F.3d 800 (holding that an expert witness's testimony regarding statutes that "were tangential to the crucial questions the factfinder had to answer" was inappropriate because it "would have been of limited value at best and unduly confusing at worst").

### C.   The Court Should Exclude Mr. Kantrowitz's Testimony About What The Defendants "Knew or Should Have Known."

With his 2021 Report, Mr. Kantrowitz also opines on what he thinks the defendants "knew or should have known" about capitalizing interest in connection with B-9 Forbearances.  (2021 Report at 11–15; *see also id.* at 9 ("An expert should have

---

[5] As discussed below in Part IV.C.2, Mr. Kantrowitz lacks the qualifications necessary to opine on that subject as well.

been aware of the statutory and regulatory requirements for capitalizing interest before and during B-9 and F-11 forbearances.").)  His opinions on this subject are inadmissible and should be excluded as well.

### 1. Expert Testimony About What A Defendant "Knew or Should Have Known" Is Facially Improper.

As a threshold matter, expert testimony regarding a party's subjective knowledge or intent is nothing more than third-party speculation about an issue reserved for the jury's determination.  *See Klaczak v. Consol. Med. Transp. Inc.*, No. 96-C-6502, 2005 WL 1564981, at *8 (N.D. Ill. May 26, 2005) ("[P]recedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury, which is equally if not much better suited to make these assessments than the parties' competing paid experts.").  An expert witness retained by a party's adversary lacks direct knowledge about what the party "knew and when they knew it," such that the expert "may not testify as to what a particular company knew or should have known … because he lacks sufficient foundation to do so."  *Krik v. Crane Co.*, 71 F. Supp. 3d 784, 788 (N.D. Ill. 2014) (noting, in addition, that "the prejudicial effect of such testimony would far outweigh its probative value, given its highly speculative nature").

Mr. Kantrowitz admits that he has no firsthand knowledge regarding any of the factual background of this case.  (Kantrowitz Dep. at 7:13–8:4.)  He never worked for either defendant nor for any other student loan servicer (Kantrowitz Dep. at 57:23–58:2, 59:2–21), meaning that he lacks any basis to opine about what the defendants "knew or

should have known" or when they "knew or should have known" it.  (2021 Report at

11.)  He did not interview employees of either defendant in preparing his expert

reports, nor did he even review their witnesses' earlier deposition testimony.

(Kantrowitz Dep. at 186:5–20.)  The only basis that he gives for his opinions are statutes,

regulations, and documentary evidence, which "do not require reiteration by an

expert."  *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 405 F. Supp. 3d 981, 1013 (D. Kan. 2019)

("The court finds that the plaintiff's experts may not testify about what defendants

should have known, or render expert opinions about defendants' knowledge.").

### 2.    *Mr. Kantrowitz Lacks Requisite Qualifications.*

District courts presented with expert testimony must evaluate whether the expert

possesses qualifications demonstrating that they "can offer special knowledge to the

jury."  *Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir. 1998) (quoting *United States v. Vitek*

*Supply Corp.*, 144 F.3d 476, 486 (7th Cir. 1998)).  Without qualifications providing "some

special skill, knowledge, or experience" from which the jury may benefit, an expert's

opinion is simply not helpful to the factfinder.  FED. R. EVID. 702.

Here, nothing in Mr. Kantrowitz's education, employment experience, or other

work or educational background qualifies him as an expert regarding the knowledge or

intent of student loan servicers generally, let alone GLELSI specifically.  Again, Mr.

Kantrowitz has never worked for any student loan servicer, or for the Department.

(Kantrowitz Dep. at 57:23–58:2, 59:2–21.)  He has never taught on the subject in an

academic institution or published his theories.  (Kantrowitz Dep. at 32:4–17.)  His primary qualification as a proffered expert comes from his experience as a website blogger.  (2019 Report at 2.)  His educational background consists of pre-doctoral degrees in mathematics, philosophy, and computer science.  (2019 Report at 5.)  Notably, Mr. Kantrowitz has never designed a student loan servicing system.  (Kantrowitz Dep. at 61:16–20.)

Mr. Kantrowitz has been writing articles, blogging, and speaking about college admissions, student financial aid, and scholarships (2019 Report at 2–5), and he takes an expansive view of his own qualifications:

> **Q:** Is there any aspect of the student lending industry that you do not consider yourself an expert on?
>
> **A:** Not to my knowledge.
>
> **Q:** Okay.  So you're an expert on everything student loans related?
>
> **A:** Everything and anything dealing with planning and paying for college, including financial aid, including student loans, including all aspects of student loans.  I've devoted decades to this.

(Kantrowitz Dep. at 99:16–100:2.)

Yet, as the Seventh Circuit has recognized, the qualification analysis under *Daubert* is content specific, comparing the expert's qualifications to the precise nature of the specific opinions proffered:

> The question we must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a

> foundation for him to answer a specific question.' … [W]e
> must look at each of the conclusions he draws individually to
> see if he has the adequate education, skill, and training to
> reach them.

*Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit*, 25

F.3d 1342, 1351 (6th Cir. 1994)).

Nothing in either of Mr. Kantrowitz's reports demonstrates a foundation for his

opinions regarding what a student loan servicer "should have known" or how a

servicer should have interpreted regulatory guidance from the Department.  *See Estate*

*of Robinson ex rel. Irwin v. City of Madison*, No. 15-cv-502-jdp, 2017 WL 564682, at *8

(W.D. Wis. Feb. 13, 2017) ("As for qualifications, the question is not whether the expert

is generally qualified in his or her field, but whether the expert has the necessary

education and training to draw the conclusions he or she offers in the case at hand.")

(citing *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016)); *cf. Solfest v. Arctic Cat Inc.*, No.

07–cv–427–slc, 2008 WL 4615447, at *3 (W.D. Wis. Apr. 18, 2008) ("[H]aving a general

background in mechanical engineering does not qualify a witness to testify as an expert

regarding everything within the field of mechanical engineering.").

Mr. Kantrowitz cannot reliably offer an opinion on what a student loan servicer

"should have known" or how it should have interpreted particular regulations.  Again,

Mr. Kantrowitz himself has never worked for a student loan servicer, has never

provided consulting services to any such entity, and has never been employed or

retained by the Department.  *Cf. United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019)

(affirming the exclusion of a forensic psychologist because he lacked "relevant experience" with the particular subject matter at hand). He blogs about student loans. That simply is not enough to qualify him to offer the opinions expressed in his reports.

### 3. Mr. Kantrowitz's Opinions Are Not The Product Of Any Reliable Methodology.

Finally, Mr. Kantrowitz's opinions regarding what the defendants "knew or should have known" should be excluded because they were not developed through the use of any reliable methodology or data. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873–74 (7th Cir. 2021) ("We have underscored that even a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.").

With his 2021 Report, Mr. Kantrowitz merely summarizes a handful of documents—which were hand-selected by the plaintiff's counsel (Kantrowitz Dep. at 187:2–20)—and offers his bottom-line conclusions, which is not permitted. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("[An expert must] explain the 'methodologies and principles' that support his opinion; he cannot simply assert a bottom line."); *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) ("[T]he opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.'") (quoting *United States v. Vitek Supply Corp.*, 144 F.3d 476, 486 (7th Cir. 1998)); *Eurochem N. Am.*,

2020 WL 747008, at *9 ("The expert must explain his or her methodology and cannot 'simply assert a bottom line.'").

Nothing in the 2021 Report describes any methodology or analytical framework used in reaching the opinions that Mr. Kantrowitz proffers. This, in itself, precludes admitting his testimony. *See Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) ("[The expert] cited no medical standards or principles in support of that conclusion. Given [his] failure to explain his methodology, the district court could conclude that the report offered 'nothing of value to the judicial process.'"); *Rogers*, 348 F. Supp. 3d at 898 ("Rule 702 places the responsibility on the expert to explain how his methodologies support his opinions.").

At his deposition, Mr. Kantrowitz explained that his process in preparing his 2021 Report consisted of simply reviewing statutes, regulations, GLELSI's contract with the Department, and the defendants' websites, and looking at a "[h]alf dozen to a dozen" documents sent to him by the plaintiff's counsel. (Kantrowitz Dep. at 183:6–184:2, 187:2–20.) He acknowledged that he did not conduct any investigation into the design or coding of GLELSI's student loan servicing system and that the vast majority of documentary evidence that has been produced in this case was not made available to him for review. (Kantrowitz Dep. at 187:2–20, 190:16–191:9.) In other words, Mr. Kantrowitz failed to apply any scientific or technical methodologies that would assist the jury in understanding the evidence. *See Rivera v. Heck*, No. 16-cv-673-wmc, 2018 WL

4354949, at *4 (W.D. Wis. Sept. 12, 2018) ("[The expert's] entire report does little more than summarize the evidence and offer an opinion about what the jury should ultimately decide, thereby impermissibly inviting the jurors to substitute their own independent judgment with that of an expert's conclusion.").

Mr. Kantrowitz's proffered testimony here is similar to that rejected by Judge Adelman in *United States v. Lupton*, a decision later affirmed by the Seventh Circuit. 620 F.3d 790 (7th Cir. 2010). The defendant in *Lupton* proffered expert testimony from a "real estate broker, attorney, professor, author and former Wisconsin bureaucrat," *id.* at 797, who "offered his interpretations of various Wisconsin statutes" and the defendant's contract with a third party. *Id.* at 799. The expert in *Lupton* explained to the judge that his methodology consisted of reading a statute to conclude that the defendant's conduct was legal, *id.*, much as Mr. Kantrowitz reads a compilation of statutes, regulations, and Department guidance to render GLELSI's capitalizations "incorrect." (2021 Report at 4.) On appeal, the Seventh Circuit affirmed the exclusion of the expert's testimony, explaining as follows:

> [The expert's] lack of methodology—he simply read the statutes and discussed how he thought they might apply—as well as the absence of any data—such as how Wisconsin courts have applied the statutes, or how often situations such as [the defendant's] arise—support the district court's second Rule 702 finding that [the expert's] testimony was insufficiently reliable to be admitted.

*Id.*

36

The Court should reach the same result here.  The opinions proffered in Mr. Kantrowitz's 2021 Report regarding what the defendants "knew or should have known" are not the product of any reliable methodology; they instead "are simply conclusions that are not tied to any data," which "renders his opinions inadmissible." *Milligan v. Rock on the River, Inc.*, No. 16-cv-498-jdp, 2017 WL 6734190, at *5 (W.D. Wis. Dec. 29, 2017).

* * *

The defendants ask that the Court preclude the plaintiff from calling Mark Kantrowitz as an expert witness at trial.  While no *Daubert* hearing seems necessary, given the serious deficiencies in Mr. Kantrowitz's two reports and his lack of qualifications to render the opinions set forth in them, the defendants would welcome the opportunity to present additional evidence or oral argument, if the Court thinks that would benefit its consideration of this motion.

Dated this 29th day of October, 2021,

s/ Thomas L. Shriner, Jr.

Thomas L. Shriner, Jr.
Eric G. Pearson
Aaron R. Wegrzyn
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306
(414) 271-2400 Telephone
(414) 297-4900 Facsimile
Email:  tshriner@foley.com

Email:  epearson@foley.com
Email:  awegrzyn@foley.com

*Attorneys for Defendants Great Lakes*
*Educational Loan Services, Inc. and Great Lakes*
*Higher Education Corporation*