IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON,

                Plaintiff,

v.                                                OPINION and ORDER

GREAT LAKES EDUCATIONAL LOAN SERVICES,      15-cv-475-jdp
INC. and GREAT LAKES HIGHER EDUCATION
CORPORATION,

                Defendants.

---

Plaintiff Meredith D. Dawson is proceeding on behalf of a class alleging that defendants Great Lakes Educational Loan Services, Inc. and Great Lakes Higher Education Corporation, collectively "Great Lakes," improperly capitalized interest on the class's student loans that were in forbearance. Specifically, Dawson contends that, at the end of the forbearance period, defendants incorrectly capitalized interest that had accrued both before and during the forbearance period. Dawson is asserting state-law negligence claims.

The case is scheduled for trial in June 2022. Great Lakes now moves to exclude the opinions of Mark Kantrowitz, Dawson's expert on multiple issues. Dkt. 365. For the reasons discussed below, the court will grant the motion as it relates to Kantrowitz's legal opinions and his opinions on what defendants "knew or should have known." But the court will allow Kantrowitz to testify about the effect that Great Lakes' capitalization errors had on the class's loan balances and also about basic technical concepts that may help the jury understand the claims.

ANALYSIS

Kantrowitz submitted two expert reports, one in 2019 and one in 2021. Dkt. 367-1 and Dkt. 367-2. There is no dispute that both reports are timely.

The 2019 report has two sections. The first section provides background information on student loans and basic concepts relevant to this case, such as interest, forbearances, and capitalization. The second section provides an analysis and opinions on the effect that the improperly capitalized interest had on the class's loan balances.

The 2021 report is primarily a discussion of Kantrowitz's understanding of federal law regarding the capitalization of student loans. He also provides opinions that Great Lakes violated federal law and that they "knew or should have known" that.

A. Capitalization impact

Great Lakes devotes the bulk of its motion to Kantrowitz's opinion on the impact of the improper capitalizations on the class's loan balances. Great Lakes doesn't challenge Kantrowitz's qualifications to render that opinion. He has degrees in math and computer science, holds seven patents on statistical methods, and is the president of a company focused in part on statistical analysis. Dkt. 367-1, at 2–5. Great Lakes also doesn't challenge Kantrowitz's method for reaching his conclusions about the capitalization impact.

Great Lakes argues instead that Kantrowitz's opinion is irrelevant and unhelpful to the jury because the opinion shows only that the class's loan balances were inaccurate at some point in time. It doesn't show that any class members paid more than what they owed or that they have any other out-of-pocket losses. It also doesn't take into account Great Lakes' subsequent efforts to correct the capitalization errors by making adjustments to the class's loan balances. In other words, Great Lakes' position is that the class cannot recover damages without

proof that they have already sustained an out-of-pocket loss. And because Kantrowitz's opinion doesn't purport to show any out-of-pocket losses, it is irrelevant, unhelpful, unreliable, and likely to cause confusion.

Great Lakes made a similar argument at the class certification stage and again in their summary judgment motion, and the court rejected it both times. At the class certification stage, Great Lakes contended that Dawson didn't have an injury because she didn't have any out-of-pocket expenses. The court concluded that Dawson had adequately alleged an injury for the purpose of certifying a class action for damages:

> By capitalizing accrued interest and adding it to (growing) principal instead of keeping it in a segregated interest pool, Dawson has incurred increased interest charges, due to larger principal debt. Over time, this inflated the amount of total debt that both she and the Department believed she owed. This would be true even if capitalization were to occur anyway at some later date because, as Dawson rightly points out, "time is money" when it comes to interest and the earlier such capitalization is applied, the more powerful (or, for her, harmful) the compounding effect will be. In Dawson's case, the $819.65 of capitalized interest that was added to her principal account in November 2013 directly caused her to incur daily interest charges that will total approximately $51 per year, which as of the date she filed her renewed motion added up to approximately $150. This is not speculation, but arithmetic. That money constitutes an increasing debt that would not exist at all but for the capitalization of interest at the time and in the amount that occurred.

Dkt. 171, at 13–14 (citations omitted).

In its summary judgment motion, Great Lakes argued that Dawson hadn't proved damages because she failed to show that Great Lakes' remediation efforts were unsuccessful in correcting any errors. In response, Dawson contended that the class had been harmed by the increase in their loan balances and that it was Great Lakes' burden, not hers, to show that they had fully remediated the harm by correctly adjusting the class's loan balances. She cited *Wingad*

*v. John Deere & Co.*, 187 Wis. 2d 441, 452, 523 N.W.2d 274, 278 (Ct. App. 1994), for the proposition that "it is the defendant's burden to establish matters asserted in mitigation or reduction of the amount of plaintiff's damages." Great Lakes didn't respond to Dawson's argument, so the court concluded that Great Lakes had forfeited the point. The court also observed that it made sense to place the burden on Great Lakes to show that it had remediated the harm it caused. Dkt. 355, at 1, 27–28.

The court still isn't persuaded that Dawson must prove out-of-pocket expenses in order to recover damages in this case. If the court accepted Great Lakes' position, it would mean that a person in Dawson's position couldn't bring a claim until after she had paid off her loans, or at least until the payments she made exceeded the amount that she should have paid. But that could require a borrower to wait years or even decades before her claim accrued.

The case law that Great Lakes itself cites shows that a plaintiff doesn't have to wait until she incurs a cost to seek compensation. Specifically, Great Lakes cites *Bleecker v. Cahill*, which states: "Actual damage is harm that has already occurred or *is reasonably certain to occur in the future*. Actual damage is not the mere possibility of future harm." 2017 WI App 28, ¶ 8, 375 Wis. 2d 282, 895 N.W.2d 72 (emphasis added). That statement is consistent with a plaintiff's right to recover damages that extend into the future, such as loss of earning capacity, future pain and suffering, or future medical expenses, so long as those damages are reasonably certain. *See, e.g.*, *McCrossen v. Nekoosa Edwards Paper Co.*, 59 Wis. 2d 245, 262, 208 N.W.2d 148 (1973); *Ostreng v. Lowrey,* 37 Wis. 2d 556, 565, 155 N.W.2d 558 (1968); *Reyes v. Greatway Ins. Co.,* 220 Wis. 2d 285, 299, 582 N.W.2d 480, 485 (Ct. App. 1998).

In this case, Dawson has presented evidence in the form of expert testimony that Great Lakes' errors increased the class's loan balances, which will lead to overpayments in the future

if left uncorrected. Great Lakes doesn't challenge the sufficiency of Kantrowitz's testimony to show that it is reasonably certain that the errors would cause the class to suffer damages. Rather, Great Lakes contends that Dawson's expert was required to consider the potential mitigating effects of the adjustments that Great Lakes made after they discovered its errors. But the court has already determined that Great Lakes, not Dawson, has the burden to show that it fully remediated the adverse effects of its capitalization errors, so that argument fails. Great Lakes cites no authority for the view that a party has a duty to present evidence on an issue that she doesn't have the burden to prove.

Great Lakes also contends that it would be confusing for the jury and prejudicial for Great Lakes to allow Kantrowitz to testify about Great Lakes' capitalization errors because the jury "may mistakenly believe that class members actually overpaid on their accounts by that much, or they may be misled into thinking that [Great Lakes'] remediation work need not be accounted for in the damages calculus." Dkt. 366, at 26. But that is where Great Lakes comes in. It will be up to Great Lakes to cross examine Kantrowitz on the limits of his testimony and to persuade the jury that it has removed the effects of their capitalization errors through their remediation efforts. If Great Lakes believes that there is confusion at trial, they are free to propose a jury instruction on the issue.

Great Lakes hasn't shown that Kantrowitz's testimony about the impact of the capitalization errors is irrelevant, unreliable, or otherwise inadmissible. The court will deny this aspect of Great Lakes' motion to strike Kantrowitz's testimony.

B. Legal opinions

Much of Kantrowitz's 2021 report consists of his understanding of various laws, regulations, and guidance from the Department of Education, along with a conclusion that

5

Great Lakes violated some of the regulations. The general rule is that experts may not testify about the meaning of statutes or regulations. *U.S. v. Lupton*, 620 F.3d 790, 799–800 (7th Cir. 2010). "That's a subject for the court, not for testimonial experts." *U.S. v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008).

The court of appeals has recognized an exception to the general rule for "regulatory experts to testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework." *Antrim Pharm. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020). Dawson doesn't expressly invoke that exception, but even if she had, it wouldn't be appropriate to apply it here, for two reasons. First, the exception wouldn't apply to Kantrowitz's legal conclusions about whether Great Lakes violated the law. That is not part of the "broader framework" of Great Lakes' actions.

Second, Dawson hasn't shown that Kantrowitz is qualified to offer opinions about the meaning of statutes and regulations. Kantrowitz's export report identifies experience he has had with various issues related to financial aid and student loans. For example, he has published books for consumers on applying for financial aid and has written "policy analysis papers" on issues related to student loans. Dkt. 367-1, at 1–4. But Kantrowitz doesn't identify any legal expertise he has. He doesn't say that he has a law degree or any legal training.

Dawson hasn't met her burden under Federal Rule of Evidence 702 to show how Kantrowitz is qualified "by knowledge, skill, experience, training, or education" in interpreting the laws and regulations he discusses. The court will grant this aspect of Great Lakes' motion.

**C. What Great Lakes "knew or should have known"**

After concluding that Great Lakes violated federal regulations, Kantrowitz explains why he believes that Great Lakes "knew or should have known" that it was violating the law.

6

Dkt. 367-2, at 11–15. This section of the report consists primarily of two types of analysis. First, Kantrowitz discusses various legal authorities and communications from the Department of Education that he says gave notice to Great Lakes. Second, he discusses some of Great Lakes' internal communications, which he says demonstrate that it knew it was capitalizing interest incorrectly.

Dawson acknowledges that Kantrowitz can't testify about what Great Lakes actually knew. Dkt. 369, at 26. That's what the internal communications are about, so the court won't allow Kantrowitz to testify about those. That is factual evidence that Dawson can present through fact witnesses.

This leaves Kantrowitz's opinions about the legal guidance that gave notice to Great Lakes that it was violating the law. Those opinions are inadmissible for two reasons. First, they are more legal opinions, and Dawson hasn't shown that Kantrowitz is a legal or regulatory expert. Second, Kantrowitz doesn't describe the method he used to determine that Great Lakes should have known it was violating the law. When an expert offers an opinion relevant to applying a legal standard, the expert's role is limited to describing "sound professional standards and identifying departures from them." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). Kantrowitz didn't identify a professional standard he was applying or explain how Great Lakes departed from it. He simply stated his conclusion that certain legal authorities gave Great Lakes notice that it was incorrectly capitalizing interest. Such conclusory testimony is not helpful to the jury, so the court will grant this aspect of Great Lakes' motion to strike.

**D. Background issues**

Kantrowitz's 2019 report includes background information about the type of student loans at issue in this case, forbearances, interest capitalization, and how those concepts relate

to Dawson's claims. Great Lakes didn't discuss that aspect of the report in its motion to strike. But when Dawson brought the issue up in her opposition brief, Great Lakes objected in its reply brief. Great Lakes doesn't challenge Kantrowitz's qualifications to testify about those basic issues, and his experience studying and writing about student loans and the repayment process suggest that he is qualified. Great Lakes argues instead that "there is no need for expert testimony" on those issues because the "parties can introduce them by stipulation, or the Court can instruct the jury about them at the appropriate time." Dkt. 380, at 15.

Great Lakes may be correct that expert testimony isn't "needed," but that isn't the standard. The question under Rule 702 is whether the testimony "will help the trier of fact to understand the evidence." Kantrowitz's proposed testimony meets that standard. And because many of the concepts in this case are likely to be unfamiliar to the jury, a witness who can provide them with a basic understanding of the primary concepts could be helpful. If the parties agree to submit this information by stipulation, the court would likely agree to that approach. Otherwise, the court will allow Kantrowitz to offer testimony on the background information summarized in his 2019 report, with the exception of any testimony about his understanding of federal law.

## CONCLUSION

The court will allow Kantrowitz to testify as described above, but Great Lakes' motion raises an important question about Dawson's trial strategy. Great Lakes has submitted reports from two experts who will offer opinions that Great Lakes has fully remediated the capitalization errors at issue in this case. *See* Dkt. 376 and Dkt. 378. Dawson isn't moving to strike the testimony of either expert, and she hasn't offered her own expert report to rebut their

opinions. So it isn't clear what evidence, if any, Dawson intends to submit about the adequacy of the remediation.

As the court has explained, it is Great Lakes' burden to prove that the remediation successfully cured any harm. But that burden will have little practical significance at trial if Great Lakes offers unrefuted evidence to support its position. If Dawson doesn't challenge Great Lakes' evidence of remediation, then the jury will have little choice but to find that the class has no compensable harm, and without compensable harm, there is no case.

As both sides know well, this case has been proceeding since 2015 and has now generated nearly 700 docket entries. But for all that time and effort, it's far from clear what genuine issues remain to be tried. So before the court requires a jury to sit for what is likely to be a dry and technical trial, the court will direct Dawson to clarify how she intends to try her case. She need not provide intricate details of trial strategy, but she should provide a clear explanation for how she intends to oppose Great Lakes' inevitable motion for judgment as a matter of law on the issue of damages. If her only strategy is to hope that Great Lakes blunders its presentation or the jury is otherwise confused, the court will consider striking the trial date to allow the parties to move for summary judgment on damages.

ORDER

IT IS ORDERED that:

1. Defendants' motion to strike the testimony of Mark Kantrowitz, Dkt. 365, is GRANTED in part and DENIED in part. The court will exclude Kantrowitz's legal

9

opinions and his opinions on what defendants knew or should have known. The motion is otherwise denied.

2. Plaintiff may have until March 15, 2022, to provide the court with an explanation regarding how she plans to refute defendants' evidence of remediation. If the court needs input from Great Lakes, the court will ask for it.

Entered March 1, 2022.

                               BY THE COURT:

                               /s/

                               _____
                               JAMES D. PETERSON
                               District Judge