## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEREDITH D. DAWSON, Individually and
On Behalf of All Others Similarly Situated,

                Plaintiff,                             Case No. 15-cv-475-jdp

    v.

GREAT LAKES EDUCATIONAL LOAN
SERVICES, INC., and GREAT LAKES
HIGHER EDUCATION CORPORATION,

                Defendants.

---

## OPENING BRIEF IN SUPPORT OF DAWSON'S MOTION FOR SUMMARY JUDGMENT CONCERNING CLASS-WIDE DAMAGES CALCULATIONS

---

        Pursuant to Fed. R. Civ. P. 56, Plaintiff Meredith Dawson and the Class move the Court to enter summary judgment concerning the proper manner for ascertaining each Class member's actual damages award, based on material facts and dollar amounts that are not genuinely disputed between the parties. Specifically, Dawson and the Class request that the Court order each Class member's actual damages award be given according to the following arithmetic formula, the two dollar-amount inputs of which are not genuinely disputed:

**Class member damages award =**

**original "capitalization impact" on Class member's actual loan balances**

**+**

**subsequent "remediation impact" on Class member's actual loan balances.**

The Court has jurisdiction over the Class's claims. Summary Judgment Order (Dkt. 355) at 12.

## I.      INTRODUCTION

Dawson and the Class are current or former borrowers of student loans currently or previously serviced by defendant Great Lakes Educational Loan Services, Inc.  *See* Class Certification Order (Dkt. 171) at 8 (defining the Class); Dawson's Proposed Findings of Fact ("DPFF"), ¶¶1-2.  Defendant Great Lakes Higher Education Corporation was the parent company of Great Lakes Educational Loan Services, Inc. (collectively, "Great Lakes") during the Class Period and during the pendency of this action. DPFF, ¶3.

Class members allege that from 2006, through the filing of this lawsuit in 2015, defendants negligently converted their accrued interest obligations into principal debt, in violation of federal loan-servicing rules and requirements.  Class Action Complaint (Dkt. 1). They allege that defendants' interest conversions, called "capitalization" transactions, caused their loan balances to increase over time. *Id.*, ¶¶57-58, 68.  They assert common law negligence claims for compensatory damages and other relief.  *Id.*, ¶¶89-96, Prayer for Relief.

At this point in the case, "the question isn't whether Dawson can prove liability."  First Summary Judgment Order (Dkt. 355) at 28; *see also id.* at 2 (explaining that "[d]efendants don't challenge Dawson's claims on the ground that she can't prove fraud or negligence").  Instead, "[t]he questions are the amount of damages that Dawson and the class have sustained[,] and whether defendants can show that they have already cured any harm they caused to class members."  *Id.* at 28.  Because there is no longer a "genuine dispute" of "material fact" concerning the answers to those two questions, Dawson and the Class are entitled to "judgment as a matter of law" on at least the elements of causation and damages.  Fed. R. Civ. P. 56(a).

## II.     STATEMENT OF FACTS

Dawson has presented evidence of the dollar amounts by which her and each Class member's actual loan balances were increased due to the wrongful capitalizations. DPFF, ¶¶4-12.  She has presented two large, Microsoft Excel spreadsheets ("Spreadsheets") created by Great Lakes during the pendency of this lawsuit.  *Id.*; *see also* Defendants' Admissions (Dkt. 336-2).  The Spreadsheets reflect Great Lakes' database records of the capitalizations at issue: including but not limited to each Class member's identity, loan identification number(s), the date and amount of each capitalization, and the interest rate on each affected loan.  *Id.*  Dawson retained an expert, Mark Kantrowitz, to analyze the Spreadsheets' loan data and calculate the dollar amounts of loan balance increases suffered by each Class member from Great Lakes' wrongful capitalizations (*i.e.,* the "capitalization impact" on Class members' loan balances).  *Id.*; Kantrowitz Report (Dkt. 294-2).  Based on the Spreadsheet data, Kantrowitz estimates that the Class suffered at least $28,771,315.92 in total loan balance increases due to the identified capitalizations.  Kantrowitz Report (Dkt. 294-2) (estimating the financial "impact" of the invalid capitalization transactions on Class loan balances).  The Court has overruled defendants' objections to the admissibility of Dawson's damages evidence.  *Daubert* Order (Dkt. 383) at 1-5.  The Court has also held that the Class's actual, reasonably estimated loan balance increases from the capitalizations constitute recoverable damages.  *Id.*

Like Kantrowitz, Defendants' rebuttal expert has estimated the "impact" of defendants' prior capitalizations on Class members' actual loan balances, and arrived at an estimate that is "*not . . . material[ly]*" different from Kantrowitz's $28,771,315.92 estimate. *See id.* at 2 (recognizing that "Great Lakes . . . doesn't challenge Kantrowitz's method"); *see also* Weadick Report (Dkt. 374) at 8 (estimating that the relevant capitalizations originally caused Class

members to suffer about $28,767,629.00 - $8,818.00 = $28,758,811 in actual loan balance increases).[1]  In sum, "the amount of damages" that Dawson and the Class originally sustained from defendants' capitalizations—approximately $28,771,315.92—is not subject to "genuine" or "material" dispute.  *Id.*; First Summary Judgment Order (Dkt. 355) at 28; Fed. R. Civ. P. 56(a).

That material agreement by itself, however, does not conclude the damages analysis in this case.  This is because defendants claim to have "remediated" all Class members' loan balances.  DPFF, ¶17.  Specifically, defendants say they remediated Class members' loan balances by removing the relevant capitalizations from their transaction histories, and then (through complex database processes, and some manual processes) recalculating Class members' loan balances without including the relevant capitalizations in the calculation (hereinafter "Remediations").  DPFF, ¶18.  Defendants captured real-time "snapshots" of each Class member's actual loan balances immediately before and after their loan balance Remediations, and recorded the arithmetic differences between each Class member's "before-and-after" loan balances. DPFF, ¶19.  Those real-time, captured amounts of actual loan balance changes that defendants made via their Remediations ("Remediation impact") totaled about $22,176,289.38.  DPFF, ¶20.  That $22,176,289.38 worth of *actual* Remediation impact is not genuinely or materially disputed.[2]

---

[1] This is a Class-wide difference of about $12,504.92 between the parties' estimates, which amounts to a difference of about nine cents per Class member.

[2] The only exception is that Dawson maintains there is no admissible evidence of any "refunds [or] loan balance reductions" for two discrete sets of Class members: (1) transferred Class members and (2) out-of-pocket Class members.  *See generally* Plaintiff's Motion in Limine Nos. 5 and 6 (Dkt. 410; Dkt. 408) (regarding transferred Class members and out-of-pocket Class members, respectively).  As explained *infra*, once the Court resolves these discrete disputes regarding admissibility, there will be no remaining dispute concerning any Class member's actual "Remediation impact."

The reasons for the material discrepancy of at least $6,595,026.54—between the amount by which the capitalizations originally increased Class loan balances ($28,771,315.92), and the amount by which defendants' Remediations subsequently decreased or refunded Class loan balances ($22,176,289.38)—are discernable from the record.

When defendants recalculated Class loan balances without the wrongful capitalizations as part of the calculations, defendants also made "other," retroactive financial "adjustments" to the Class's loan accounts.  DPFF, ¶21.  Hence, defendants' loan balance Remediations did not merely recalculate Class loan balances without the wrongful capitalizations in place.  Instead, defendants' Remediations recalculated Class loan balances without the wrongful capitalizations in place, *and* with "other," retroactive financial transactions in place that were never included in the Class's pre-Remediation loan balance calculations.  *Id.*   Those "other," retroactive financial transactions included, among other things: (1) new, retroactive "capitalization transactions (unrelated to those at issue in the case)," which had not been executed against Class members historically; (2) new, retroactive capitalization transactions of less than $15.00 each, which had not been executed against Class members historically; and (3) retroactively reducing Class members' historical interest subsidies. DPFF, ¶¶22-24.

Taken together, defendants' "other adjustments" to Class members' transaction histories substantially impacted defendants' loan balance recalculations for some, if not all, Class members.  For example, defendants' Remediations left 15,246 Class members with balances that were higher *without* the wrongful capitalizations in place, than they had been *with* the wrongful capitalizations in place.  DPFF, ¶27; *see also* Dawson's Motion in Limine No. 4 (Dkt. 406).

Despite all of the above facts, defendants argue that their loan balance Remediations have undone all of the original harm that Class members suffered, leaving Dawson and the Class with

no recoverable damages.   Such a conclusion is contrary to settled law.  As explained herein, settled law requires that each Class member be awarded his or her compensatory damages according to the simple arithmetic formula set forth herein.

### III.   AS A MATTER OF LAW, THERE IS NO GENUINE DISPUTE OF MATERIAL FACT CONCERNING CLASS MEMBERS' ACTUAL DAMAGES

#### A.  Class members' actual, compensatory damages are lawfully measured by the <u>difference</u> between the original capitalization impact on Class members' loan balances, and the subsequent Remediation impact on each Class member's loan balances.

"The normal measure of damages in tort actions is compensatory." *Dumer v. St. Michael's Hospital*, 69 Wis. 2d 766, 773 (Wis. 1975) (quoting *Gleitman v. Cosgrove*, 49 N.J. 22 (1967)).  "Damages are measured by comparing the condition plaintiff would have been in, had the defendants not been negligent, with plaintiff's impaired condition as a result of the negligence." *Id.*; *see also Kim v. American Family Mut. Ins. Co.*, 176 Wis. 2d 890, 898-99 (Wis. 1993) ("The legal system attempts to place the injured party in as good a position as he or she would have been in had the tortious conduct not occurred . . . ."); *Hellenbrand v. Hilliard*, 275 Wis. 2d 741, 762 (Wis. Ct. App. 2004) (same).

In this case, "had the defendants not been negligent," there would have been no Class-wide Remediations. *Dumer*, 69 Wis. 2d at 773; DPFF, ¶¶17-28. Indeed, defendants' Class-wide Remediations and the loan balance changes they effected occurred largely because the wrongful capitalizations occurred in the first place. *Id.*; *see also* Kielhofer Declaration (Dkt. 66), ¶¶27-28, 33.  From that undisputable fact, it follows that any lawful measure of damages should place Class members back in same, actual financial condition they would have been in had neither defendants' negligent capitalizations nor defendants' corresponding Remediations occurred. There is only one mathematical formula that does this for each and every Class member:

**Individual Class member damages =**

**original "capitalization impact" on member's actual loan balances (Kantrowitz)**

**+**

**subsequent "remediation impact" on member's actual loan balances (real-time "snapshots").**

As "a matter of law" (Fed. R. Civ. P. 56), this formula is the only one that reasonably places Class members in approximately the same *actual financial positions* they would have been in "had the tortious conduct not occurred." *Kim*, 176 Wis. 2d at 898-99. Fed. R. Civ. P. 56.

For example, if defendants' negligent capitalizations first increased a Class member's loan balance by $50 before the Remediations (because "the tortious conduct . . . occurred"), and then defendants' corresponding Remediations reduced the loan balance by $40 (*also* because "the tortious conduct . . . occurred"), then the Class member's lawful damages are $10. *Id.*

**$50 + (-$40) = $10.**

Indeed, "had the defendants not been negligent," then there would have been no $50 increase in the Class member's balance from the relevant capitalization *and* no $40 decrease in the Class member's balance from defendants' efforts to Remediate the relevant capitalization. *Dumer*, 69 Wis. 2d at 773. Hence, the truth is that "had the defendants not been negligent," the Class member's actual financial position "would have been" $10 better than it is today. *Id.*

On the other hand, if defendants' negligent capitalizations increased a Class member's loan balance by $50 before the Remediations, and defendants' ensuing Remediations reduced the loan balance by $50, then that Class member's lawful damages are $0.00. *Id.*

**$50 + (-$50) = $0.00.**[3]

---

[3] If a Class member's lawful damages formula yields a "negative damages" number, such as **$50 + (-$75) = -$25**, then such a Class member's lawful damages award simply reverts to **$0.00**. There is, of course, no legal basis for the Court to make any Class member pay for any windfall they might have obtained from defendants' Remediations. If any person

In addition to being the only lawful damages formula based on the evidence, the above formula has real-dollar inputs that are materially undisputed between the parties for every Class member. This is true for two reasons.

*First*, as a matter of law, damages calculations "need not be exact." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36 (2013); *see also BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011) (holding that a plaintiff has a "more relaxed" burden of proof at the damages phase); *Howard Indus., Inc. v. Rae Corp.*, 293 F.2d 116, 118-19 (7th Cir. 1961) (damages in tort only require evidence "sufficient to enable the court or jury to make a fair and reasonable approximation"); *BE & K Const. Co. v. Will & Grundy Counties Building Trade Council*, 156 F.3d 756, 770 (7th Cir. 1998) ("While damages cannot be based on pure speculation or guesswork, they also need not be proven with the certainty of calculus.").

Here, defendants' rebuttal expert, Mark Weadick, agrees that Kantrowitz's "capitalization impact" method for estimating Class members' actual, pre-Remediation loan balance increases due to the capitalizations is "reasonable." DPFF, ¶29; Weadick Deposition (Dkt. 372) at at 52:3-53:10. In fact, Weadick reproduced Kantrowitz's method himself, and arrived at his own "capitalization impact" estimate, which differed by only a few thousand dollars from Kantrowitz's $28,771,315.92 estimate. *See* Weadick Rebuttal Report (Dkt. 374) at 8. Weadick admits that the difference between his own capitalization impact estimate and Kantrowitz's capitalization impact estimate is "not . . . material." Weadick Report (Dkt. 374) at 8. Thus, the real dollar-amount effects that defendants' capitalizations had on Class members' loan balances ("capitalization impact") is genuinely and materially undisputed.

---

were damaged by such windfalls, it would be third-party lenders and not the defendants. Moreover, the liable party for such windfall-damages would be Great Lakes, not the Class members who had nothing to do with bringing about the windfall.

*Second*, defendants admit that the real dollar-amount impact their capitalization-*Remediations* had on Class loan balance(s) was just about $22,176,289.38.  DPFF, ¶¶13, 30; *see also* Great Lakes' Answers to Dawson's Interrogatory Nos. 21 and 22 (Dkt. 236-37) (admitting that all "Class member refunds and . . . loan balance reductions" from the Remediations totaled just $22,176,289.38).  Those actual "Class member refunds and . . . loan balance reductions" totaling $22,176,289.38 are the real dollar amounts by which defendants' Remediations decreased each Class member's *inflated* pre-Remediation loan balances (*i.e.,* "Remediation impact").  *Id.*   Like Kantrowitz's "capitalization impact" calculations, defendants' actual "Remediation impact" calculations are undisputed between the parties.  DPFF, ¶¶13, 30.

Hence, both dollar-amount inputs into Dawson's lawful damages formula, *supra*, are subject to material agreement between the parties for every Class member.  The only exception to this is for transferred Class members and out-of-pocket Class members, whom defendants relied upon third-party lenders and servicers to compensate.  *See generally* Dawson's Motion in Limine No. 5 (Dkt. 410) (arguing that there is no admissible Remediation impact evidence for 15,701 transferred Class members); Dawson's Motion in Limine No. 6 (Dkt. 408) (arguing that there is no admissible Remediation evidence for 14,859 out-of-pocket Class members).  Once the Court resolves these admissibility disputes, there will be no genuine or material damages disputes remaining between the parties at all.

It is easy to see why.  If the Court disagrees with Dawson's discrete admissibility arguments, then the damages formula set forth herein will stand pat, as the only lawful damages formula for all Class members.  If, however, the Court excludes defendants' Remediation evidence for transferred Class members and/or out-of-pocket Class members (as Dawson requests), then such Class members' lawful damages awards will simply be given by the original,

undisputed "capitalization impact" on their loan balances. This is because it is defendants' burden to prove any "remediation" of the original harm to Class members. *See Daubert* Order (Dkt. 383) at 2-5. If the Court finds defendants' Remediation evidence inadmissible for some Class members, then there can be no reduction made to those Class members' *prima facie*, "capitalization impact" damages as calculated by Dawson and Kantrowitz. *Id. Accord* Summary Judgment Order (Dkt. 355) at 35 ("There may be a set of legal issues that the court must decide before or after . . . damages [are determined], but the parties have identified only a small number of these, and there is no indication that individual issues will overwhelm the proceedings.").

In either event, once the Court resolves those discrete admissibility issues concerning defendants' Remediation evidence, each Class member's lawful, compensatory damages award is subject to "ministerial determination," by plugging undisputed dollar amounts into the simple arithmetic problem set forth herein. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015). There is certainly no reason to convene a jury to conduct over 100,000 simple arithmetic problems, with materially undisputed dollar amounts as the inputs.

For all of the above reasons, based on the evidentiary record before the Court, the Court should enter summary judgment on the issue of damages, holding that each Class member's actual, compensatory damages award be given by the following arithmetic calculation:

**Individual Class member damages =**

**"capitalization impact" on member's actual loan balances (Kantrowitz)**

**+**

**<u>admissible</u> "remediation impact" on member's actual loan balances (defendants' "snapshots").**

**B. Defendants' negligent interest capitalizations were clearly a "substantial factor" in bringing about the Remediation impact to Class members' loan balances.**

With respect to damages and remediation issues, this Court previously stated, without deciding anything at the time:

> [I]t seems to me there's a difference between a loan balance changing as a result of the remediation and a loan balance changing after the remediation. I don't think those two things are the same thing. So to me, the devil is in the details on this.

Transcript of May 11, 2021 Hearing (Dkt. 364) at 13:24 – 14:3. The Court did not elaborate beyond that. *Id.* But the Court seemed to (perhaps) be suggesting that so long as the wrongful capitalizations were excluded from defendants' loan balance recalculations, the alleged harm to the borrower was necessarily eliminated, and any "other," retroactive financial adjustments that defendants made as part of the Remediations (DPFF, ¶¶21-28) are not properly before the Court.

It is true that the *legality or illegality* of "other adjustments" defendants made with their Remediations (DPFF, ¶¶21-28) is not properly before the Court. First Summary Judgment Order (Dkt. 355) at 34 ("Whether defendants made other *errors* in [re]calculating the balance on a borrower's account is not properly before the court."). However, the remainder of the Court's suggestion (if the Court was making it) would ultimately prove contrary to settled law based on the record here. There may be a conceptual "difference between a loan balance changing as a result of the remediation [or capitalization removal] and a loan balance changing after the remediation [or capitalization removal]." *Id.* But there is no *legal* difference between those two things under the settled laws of causation and damages, as applied to the undisputed facts here.[4]

---

[4] It is worth noting that the Court's informal statement was made at a time when the evidentiary record was much less clear than it is today. *See* First Summary Judgment Order (Dkt. 355) at 31 ("Defendants offer little more than conclusory statements from lay witnesses to support their allegation that they erased the effect of the improper capitalizations. They haven't submitted a report from an expert *or any other evidence* to establish that the remediation is complete and correct. The court cannot simply take defendants' word that all is well now.").

As explained above, "damages are measured by comparing *the condition plaintiff would have been in, had the defendants not been negligent*, with plaintiff's *impaired condition as a result of the negligence*." *Dumer*, 69 Wis. 2d at 773; *see also Kim*, 176 Wis. 2d at 898-99 ("The legal system attempts to place the injured party in as good a position as he or she would have been in *had the tortious conduct not occurred . . . .*").

Here, the material and indisputable fact is that "had the defendants not been negligent" in the first place, there would have been no Class-wide Remediations. *Dumer*, 69 Wis. 2d at 773. Indeed, defendants' Class-wide Remediations occurred *because the negligence itself occurred*. DPFF, ¶¶17-28. So the damages question here is not merely whether the Remediations removed the original capitalizations from Class members' loan balances. As a matter of law, the damages question is whether the Remediations placed each Class member back in the financial position they would have been in had both the negligent capitalizations—and the resultant loan balance recalculations—***not occurred***. Quite clearly, defendants' Remediations failed to do that.

It is undisputed that from the dates when the capitalizations were first executed, to the approximate dates of the Remediations, Class members' actual loan balances wrongly increased by about $28,771,315.92 (or $28,598,511.00, an immaterial difference). *See* Kantrowitz Report (Dkt. 294-2); Weadick Report (Dkt. 374) at 8. *See also* Certification Order (Dkt. 171) at 13 ("[A]s Dawson rightly points out, ***'time is money'*** when it comes to interest[,] and the earlier such capitalization is applied [or the later it's Remediated], ***the more powerful (or, for her, harmful) the compounding effect will be***."). Later, at the ***times*** those capitalizations were removed from the ***inflated-by-$28,771,315.92*** loan balances, the inflated balances were (rightly or wrongly) reduced by just ***$22,176,289.38***. Thus, as a matter of actual history—not a revised transaction "history" or revised transaction records—Class members' balances first increased by

12

roughly $28,771,315.92 from the capitalizations, and then decreased by roughly $22,176,289.38 from the capitalization Remediations.  As a matter of undisputed fact, then, Dawson's and the Class's "impaired condition[s]" sum to approximately:

**$28,771,315.92 (original "capitalization impacts") +**

**-$22,176,289.38 (subsequent "Remediation impacts")**

**= $6,595,026.54**.

The only remaining question then becomes whether that actual, "impaired condition" of Class members is legally a "result of the negligence." *Dumer*, 69 Wis. 2d at 773.  In other words, the legal question is whether that "impaired condition" was "naturally and proximately caused by [the alleged] tort." *Hellenbrand*, 275 Wis. 2d at 762 (quoting *Kim*, 176 Wis. 2d at 898-99).  That legal question is readily answered, in the affirmative, by the "substantial factor" test.

The "test for determining causation is whether the conduct at issue was a substantial factor in producing the plaintiff's harm." *World Wide Prosthetic Supply v. Mikulsky*, 246 Wis. 2d 461, 474 (Wis. Ct. App. 2001) (citing *Estate of Cavanaugh v. Andrade* , 202 Wis.2d 290, 306 (1996)). "The defendant's conduct is a substantial factor in producing the harm if it leads the trier of fact, as a reasonable person, to regard it as a cause, using that word [cause] in the popular sense." *Id.* (citing *Ehlinger v. Sipes* , 155 Wis.2d 1, 12  (1990)).  Importantly for purposes of this case, ***"[t]here may be more than one cause of an injury."*** *Id.* (citing *Ehlinger v. Sipes* , 155 Wis.2d 1, 13 (1990)).

Here, negligence was a "substantial factor" in bringing about both the original "capitalization impacts" to Class members' loan balances, and the subsequent "Remediation impacts" to Class members' loan balances.  That legal truth is self-evident, as defendants admittedly conducted their Class-wide Remediations ***because they incorrectly capitalized***

*interest*. DPFF, ¶¶21-28.  Moreover, to the extent that the capitalization Remediations included "other," retroactive financial adjustments, defendants admit that ***even those "other adjustments"*** (whether lawful or not) ***would not have been necessary*** had defendants not needed to go back and remove the capitalization transactions at issue from Class members' account records.  *Id.* So while defendants' "other," retroactive Remediation "adjustments" are part of the reason for Class members' "impaired condition[s]" today, there is no denying that defendants' *need to Remediate in the first place* (*i.e.,* defendants' negligence) is part of the reason for defendants' "other" Remediation "adjustments" to Class loan balances: and thus part of the reason for Class members' "impaired condition[s]" today.

For these reasons, any "reasonable person" would have to find that the negligent capitalizations at issue in this case were a "substantial factor" in bringing about *both* the original "capitalization impacts" to Class members' loan balances *and* the subsequent "Remediation impacts" to Class members' loan balances.  *World Wide Prosthetic Supply*, 246 Wis. 2d at 474. The damages formula set forth herein lawfully places each Class member back "in as good a [financial] position as he or she would have been in *had the tortious conduct not occurred*," and lawfully awards each Class member all (not merely some) of the "damages naturally and proximately caused by [defendants'] tort."  *Hellenbrand*, 275 Wis. 2d at 762 (quoting *Kim*, 176 Wis. 2d at 898-99).

None of this is seriously debatable as a matter of law or fact.

**C. Defendants' <u>multi-factor</u> loan balance "Remediations" cannot serve as a complete offset of Class members' original damages, as such a result would violate Class members' procedural due process rights.**

The Fifth Amendment provides that no person may "be deprived of life, liberty, or property, without due process of law."  U.S. Const., Amend. V; *see also* U.S. Const., Amend.

XIV (same).  The Supreme Court has held that "a cause of action is a species of property" protected by the Due Process Clauses.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-29 (1982) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Martinez v. California*, 444 U.S. 277, 281-82 (1980)).  "The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees."  *Nelson v. Adam USA*, *Inc.*, 529 U.S. 460, 465 (2000).

Here, Dawson and the Class assert "cause[s] of action" for damages, alleging that defendants negligently serviced their loans by capitalizing interest, which caused their loan balances to increase.  *Logan*, 455 U.S. 422, 428-29.  As the Court has held, Dawson can present admissible evidence that Class members suffered at least $28,771,315.92 in recoverable damages, due to Great Lakes' negligence.  *See Daubert* Order (Dkt. 383) at 2-5; *see also* 2019 Kantrowitz Report (Dkt. 367-1) at 9 (asserting that his damages calculation "provides a likely lower bound on the actual amount overpaid by or overcharged to the borrower"); *id.* at 7 (asserting that his damages calculation represents "a slight underestimate of the actual financial impact").  The Court has correctly observed that "Great Lakes doesn't challenge Kantrowitz's method" for calculating damages.  *Daubert* Order (Dkt. 383) at 2-5; *see also* Weadick Deposition (Dkt. 372) at at 52:3-53:10 (admitting that Kantrowitz's damages methodology is "reasonable"); Weadick Report (Dkt. 374) at 8 (conceding that his own calculation of loan balance increases suffered by Class members differs by about $8,818.00, an amount that is "not . . . material").  Furthermore, as the Court has already recognized, "Dawson can prove [negligence] liability." Dkt. 355 at 28; *id.* at 2 ("Defendants don't challenge Dawson's claims on the ground that she can't prove fraud or negligence.").

For constitutional purposes, then, this Court has held that Dawson can properly plead and prove—under the Federal Rules of Civil Procedure—all elements of her and the Class's "cause[s] of action" for damages. *Logan*, 455 U.S. 422, 428-29. In other words, Dawson can properly plead and prove every Class member's *prima facie* entitlement, under the law of negligence, to an award of $28,771,315.92 in damages. Because Dawson and the Class may decidedly make that *prima facie* showing to the Court or a jury, they have properly asserted constitutionally guarded "property" rights to an award of $28,771,315.92 in total damages. *Id.*

Defendants, however, ask this Court to leave Class members with a recovery of just $22,176,289.38 in "Class member refunds and . . . loan balance reductions." *See* Great Lakes' Answers to Plaintiff's Interrogatory Nos. 21 and 22 (Dkt. 236-37) at docket-page 6 of 9. Importantly, the stated reason why defendants believe Class members are entitled to $6,595,026.54 less than their proven, *prima facie* entitlements is that third-party lenders have "other" legal or contractual rights, against Class members, to retroactively *increase* their loan balances. *See* DPFF, ¶¶21-28; Lapham Declaration (Dkt. 342), ¶10. Those "other," purported legal rights include, without limitation:

(1) the right to make retroactive changes to Class members' transaction histories, based on newly issued Change Requests from the government;

(2) the right to retroactively impose on Class members "certain interest capitalization transactions (unrelated to those at issue in the case)";

(3) the right to retroactively impose on Class members interest capitalization transactions of less than $15.00 each (*see id.*, ¶10(d)); and

(4) the right to retroactively reduce Class members' historical interest subsidies, by more than the reduction in their historical interest accruals (*see id.*, ¶10(e)).

*See* DPFF, ¶¶21-28; Lapham Declaration (Dkt. 342), ¶10 (asserting that defendants and the government have all of these "other" rights against Class members).

The due process problem here is that defendants have not pleaded, proven, or otherwise demonstrated the existence of those "other" legal rights under the Federal Rules of Civil Procedure. *See generally* Dkt. 24 (defendants' Answer); Dkt. 199 (defendants' Supplemental Answer). In fact, the Court has quite permissibly held that defendants need not plead or prove lenders' "other" legal rights at all in this case. *See* First Summary Judgment Order (Dkt. 355) at 35 (holding that defendants "will not have to show that other adjustments [they] made are correct"). While that holding is entirely correct standing alone, the necessary, *constitutional* consequence of that holding is that this Court may not allow those "other adjustments"—those assertions of "other" legal rights by the defendants—to be used to "deprive" Dawson and the Class of their "property" rights to a full $28,771,315.92 in financial relief, which they ***have*** properly proven under the Federal Rules of Civil Procedure. U.S. Const., Amend. V; U.S. Const., Amend. XIV; *Nelson*, 529 U.S. at 465.

To permit such a damages reduction based on the record here would be to deprive Dawson and the Class of their "property" rights to complete financial relief on their causes of action: based primarily on defendants' "other," unproven rights to *increase* Class loan balances for reasons "unrelated to those at issue in this case." Lapham Declaration (Dkt. 342), ¶10(c). It would be to deprive the Class of their full damages entitlements, without "the due process of law that the Constitution guarantees." *Nelson*, 529 U.S. at 465. If defendants wanted to constitutionally reduce their own *prima facie* liability—*i.e.,* the Class's proven property rights to a full $28,771,315.92 in financial relief—then defendants should have properly pleaded, proven, and *notified* Dawson and the Class of whatever "other" legal rights they believe lenders

have that justify a reduction to Class members' proven rights to relief in this case. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("[T]he essential requirements of due process . . . are notice and an opportunity to respond.").

Defendants have not done that. All they have done is declared to the Court that Class members should receive materially less than their proven entitlements to relief, *for "other" reasons that the Court and the Class need not concern themselves with*. That is hardly a constitutional basis for "depriv[ing]" Class members of any portion of their pleaded and proven "property" rights to damages, on their negligence "cause[s] of action." U.S. Const., Amend. V; U.S. Const., Amend. XIV; *Logan*, 455 U.S. 422, 428-29; *Mullane*, 339 U.S. 306.

Dawson and the Class need not file another lawsuit about "other" student loan issues, which defendants flippantly "declared" into the record mid-stream (Dkt. 342, ¶10), in order to be placed by this Court "in as good a position as [they] would have been in had the tortious conduct not occurred." *Kim*, 176 Wis. 2d at 898-99; *Hellenbrand*, 275 Wis. 2d at 762; *cf. Fuentes v. Shevin*, 407 U.S. 67 (1972) (explaining that "no later hearing and no damage award can undo the fact that the arbitrary taking [of property] that was subject to the right of procedural due process has occurred"). As a matter of due process, ***defendants***—not Dawson or any Class member—needed to file their own lawsuit or Counterclaim to justify their refusal to fully compensate Class members for the actual damages they suffered from defendants' negligence.

Based on the undisputed record before this Court, it would clearly violate the Due Process Clauses for the Court or a jury to find that "the class has no compensable harm." Dkt. 383 at 9. The Court should avoid the glaring due process problems created by defendants' *ipse dixit* Remediation defenses (*see* Dkt. 342, ¶10), by declining to find that Dawson and the Class have no recoverable damages.

*The simple damages formula proposed by Dawson herein solves the constitutional problems created by defendants' Remediation defenses*.  It does this by declining to reduce Class members' undisputed, *prima facie* financial entitlements: based on nothing but third-party lenders' "other" purported rights, which defendants have not pleaded, proven, or notified the Class of.  Such a result would be totally indefensible as a matter of constitutional law.

### D. Defendants' <u>multi-factor</u> loan balance "Remediations" cannot serve as a complete offset of Class members' damages, as this would lead to absurd and unprecedented results.

Great Lakes attempts to write off at least $6,595,026.54 of its own liability—*i.e.,* write off the $6,595,026.54 discrepancy between Class members' proven damages and proven Remediation benefits—by asserting that the government required Great Lakes to make "other," balance inflating "adjustments" to Class members' transaction histories while reversing the relevant capitalization transactions.  DPFF, ¶¶21-28; Lapham Declaration (Dkt. 342), ¶10.

Much like the law of due process, the law of damages does not allow a defendant to offset their own *prima facie* liability, simply by stating that a plaintiff owes the defendant or a third-party money for "other" reasons having nothing to do with the dispute being litigated.  *But see* Lapham Declaration (Dkt. 342), ¶10 (stating that).  As a matter of law, any individual or class damages award must be calculated solely from the theory of liability in the case.  *See generally Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  It is therefore axiomatic that any legal offset (or "remedy") for damages must also be derived solely from the theory of liability. *Id.*  Defendants can no more *reduce* their own *liability* by saying that Dawson owes them money for "other," unpleaded and unproven reasons, than Dawson could *increase* her own damages *entitlement* by saying that defendants owe her money for "other," unpleaded and unproven reasons.

In its first summary judgment order, this Court correctly observed that Great Lakes was not "required" to simply "ignore" the "other adjustments it believed were necessary." Dkt. 355 at 35. The Court also concluded that because those other adjustments "have nothing to do with this case," Great Lakes "will not have to show that other adjustments it made were correct." *Id.* at 34-35. Those statements by the Court were and are legally correct, but only as far as they go.

Great Lakes is of course free, as a loan servicer, to make whatever unpleaded loan balance "adjustments" that it believes are proper at any time. In fact, Great Lakes is even free to make loan balance adjustments that it knows or believes to be improper.[5] Great Lakes need not justify *in this case* its various decisions or actions as a servicer that have "nothing to do" with the company's allegedly unlawful conduct here. *Accord id.* at 34-35.

This Court, however, neither stated nor held that Great Lakes could use whatever "other adjustments" it might want to make to reduce its own *prima facie* liability for the capitalizations in question. Indeed, the Court could never fairly or lawfully arrive at such a holding. If the Court would allow Great Lakes to reduce or eliminate its own *prima facie* liability ($28,771,315.92) by simply asserting that Class members owe significant, new money—for "other" reasons outside the scope of this case (Dkt. 342, ¶10)—then the Court would effectively be making Great Lakes the sole arbiter of its own liability. *Id.* at 34-35.

That is particularly true since, as the Court rightly held, defendants need not justify the "other adjustments" they made to Class members' loan balances. If the Court's limited holding (*id.*) were combined with such a ridiculous rule, then defendants could simply assert—without any pleading, evidence or argument—that when they reversed the negligent capitalizations in

---

[5] That is why this action arose in the first place. *See generally* Dkt. 1 (Complaint); Summary Judgment Order (Dkt. 355) (finding no real dispute that Dawson can "prove fraud").

question, they had to make "other," upward "adjustments" to Class members' principal and interest balances: *in dollar amounts equal and opposite to the dollar amounts of the capitalization-related "adjustments."* Under such a rule, *Class members would never have even needed to obtain $22,176,289.38 (or even $20.00) of aggregate financial compensation for defendants' negligence*. Defendants could have left all of the Class loan balances completely unchanged (*i.e.,* given Class members zero financial relief), and called all Class members *"net-undamaged"* by the loan-balance increases at issue, on the one hand, and whatever "other" loan-balance *decreases* defendants contend should not have occurred historically, on the other hand (without any pleading, legal argument, or proof concerning those purported decreases).[6]

The absurdity of such an unprecedented, *"net-undamaged"* argument is especially palpable for out-of-pocket Class members like attorney Elizabeth Mosser. *See generally* DPFF, ¶¶31-52; Mosser Declaration (Dkt. 232). In 2016 and 2017, Mosser fully paid off loan balances which defendants admit they wrongly increased at the time of her payoff. *Id.* Nevertheless, defendants have refused to pay her one cent because, they say, she owed *new* money on the admittedly paid-in-full loans for "other" reasons "having nothing to do with this case." *Id.* Does Mosser need to bring a new lawsuit about the "new money" defendants accused her of owing, in order to recover her "old money" that she admittedly overpaid due to defendants' negligence? Of course not; the old money is recoverable based on this lawsuit about the old money. If defendants want to recover new money from Mosser for new reasons—or withhold her old money for new reasons—then defendants must bring a new lawsuit against Mosser.[7]

---

[6] *See* Defendants' Answer (Dkt. 24); Defendants' Supplemental Answer (Dkt. 199) (no allegations regarding defendants' purported rights to make "other" loan balance changes, apart from undoing the capitalizations at issue).

[7] This should not be a difficult concept. Nevertheless, defendants seek to label Mosser and approximately 17,858 other Class members *"net-undamaged,"* based on no pleaded

Notably, defendants don't even contend that Class members owe *them* money for reasons outside the scope of the case.  Defendants instead assert without pleading, evidence, or argument, that Class members owe *third-party lenders* new debts for "other" reasons outside the scope of this case.  What Great Lakes is trying to do here is assert *lenders'* purported rights to receive payments from the Class having "nothing to do with this case," and then use *lenders'* purported rights to receive those "other" payments as (somehow) a legal reason for *Great Lakes* to not compensate Class members for the proven financial harm caused by its own conduct *in this case*.

The bottom line is: the legal floor on Class members' recoverable damages is nowhere near $0.00.  Class members admittedly incurred or paid about $28,771,315.92 in actual debt from defendants' negligence, and Great Lakes itself admits that it only refunded or credited Class members back about $22,176,289.38.  The Class doesn't somehow break even as a matter of law, just because some defendant says some Class members already owed millions of dollars, for reasons having "nothing to do" with the issues presented in this case.

There is no precedent for such an absurd result, and such an absurd result is by no means effected or even implied by this Court's limited "Remediation" holdings to date.  Dawson's simple damages formulation discussed *supra* avoids such an absurd result, consistent with settled law and with all of this Court's holdings to date.

## IV.   ONCE CLASS-WIDE DAMAGES ARE SUMMARILY RESOLVED, THERE IS NO NEED FOR A TRIAL ON WHETHER DEFENDANTS NEGLIGENTLY CAPITALIZED INTEREST IN THE FIRST PLACE

Once the Court decides that the simple arithmetic formula set forth herein is the lawful measure of each Class member's compensatory damages, all that will remain is for the parties to

---

factual allegations, no admissible evidence, and no cited legal authority.  DPFF, ¶¶53-54. *But see* Fed. R. Civ. P. 11(b).

do simple arithmetic calculations for each Class member—using their undisputed "capitalization impact" numbers, and their undisputed, real-time Remediation "snapshot" numbers—and then add up the individual results to calculate defendants' total laibaility. This is all subject to "ministerial determination" on both individual and Class-wide bases. *McMahon*, 807 F.3d at 876. Once that basic number crunching is done, there is no serious reason to have a jury trial on whether defendants' negligently capitalized interest in the first place.[8]

The elements of the Class's negligence claims are: (1) a duty of care, (2) breached by the defendant, which (3) causes (4) harm to the plaintiff. *E.g., Zastrow v. Journal Communications, Inc.*, 286 Wis. 2d 416, 434 (Wis. Ct. App. 2005). Here, defendants had a duty not to capitalize the accrued interest obligations on Class members' loans. DPFF, ¶¶55-69. It is undisputed, however, that defendants *did* execute and sustain the capitalizations at issue for several consecutive years. *Id.* It was clearly "foreseeable" that such capitalizations would financially harm Class members by increasing their total debt obligations over time. *E.g., Green v. Smith & Nephew AHP, Inc.*, 245 Wis. 2d 772, 811 (Wis. 2001) ("The duty of care of a defendant is established when we can state that it was foreseeable that the defendant's acts or omission could harm or injure another person."). Moreover, there is overwhelming evidence that defendants had actual—or at worst, constructive—knowledge that they were executing unauthorized interest capitalizations against their serviced borrowers. *See, e.g.,* DPFF, ¶¶55-69; *see also* First Summary Judgment Order (Dkt. 355) at 28 (recognizing that "the question isn't whether Dawson can prove liability").

---

[8] The Court did not specifically grant Dawson leave to move for summary judgment on the question of Great Lakes' negligence, but the Court has tremendous flexibility to grant summary judgment on certain issues, even without a motion being filed regarding those specific issues. *See* Fed. R. Civ. P. 56(f) (providing for summary judgment independent of the motion). It should exercise just flexibility here. Fed. R. Civ. P. 1.

For those reasons—and the voluminous reasons Dawson presented in opposition to defendants' renewed motion for summary judgment (*see generally* Dkt. 330 at 32-65)—no "reasonable factfinder could return a verdict for" Great Lakes on the negligence elements of duty and breach. *Manning v. Moore Business Forms, Inc.*, 91-C-707-S, 1992 WL 160604, at *1 (W.D. Wis. Mar. 31, 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Therefore, once the Court grants Dawson's instant motion, and affords her a reasonable time for the "ministerial determination" of each Class member's individual damages, there will be no "genuine" reason to convene a jury to decide the (obvious) fact that defendants negligently capitalized Class members' interest obligations during the Class Period. Fed. R. Civ. P. 56(a).[9]

## V.    CONCLUSION

At long last, the Court can and should finally dispose of this case. The Court, however, should do so in favor of Dawson and the Class (not the defendants) as set forth herein.

Dawson's proposed damages formulation set forth herein is based on the undisputed evidentiary record. It is consistent with each of the Court's prior holdings in this case. It is consistent with the settled laws of causation and damages. It is consistent with Class members' constitutional rights to procedural due process. It is economically and financially sensible. It is grounded in truth and fairness.

---

[9] Pursuant to the Court's Protective Orders, Kantrowitz does not currently have access to Class members' personally identifying information ("PII"). Thus, he is currently unable to match his existing capitalization impact calculations, or defendants' Remediation-impact "snapshots," to any Class member identities at this time. It should, however, be relatively easy for him to match individual Class members' identities to their respective damages awards (if any), once the Court and the defendants give him the ability to map particular capitalizations and Remediation "snapshots" to the individually identified Class members.

For each of the foregoing reasons, Dawson respectfully requests that the Court enter an order pursuant to Fed. R. Civ. P. 56, that each Class member's compensatory damages award (if any) be given, calculated, and ascertained according to the following simple arithmetic formula:

**Individual Class member damages =**

**"capitalization impact" on member's actual loan balances (Kantrowitz)**
**+**
**<u>admissible</u> "remediation impact" on member's actual loan balances (defendants' "snapshots").**

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

Dated: April 5, 2022                    By:   s/ David J. Harris, Jr.
                                              David J. Harris, Jr., Esq.

                                              Jeffrey R. Krinsk, Esq.
                                              501 West Broadway, Suite 1260
                                              San Diego, California 92101-3579
                                              Telephone: (619) 238-1333
                                              Facsimile:  (619) 238-5425

                                              *Counsel for Plaintiff and the Class*